IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

VS.                                                  Criminal No. 25-cr-20032-JTF

SANJEEV KUMAR,

        Defendant.

---

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS 1-4 OF THE SUPERSEDING INDICTMENT**

---

      Defendant Sanjeev Kumar performed unnecessary hysteroscopies on women with adulterated devices. A hysteroscopy is a painful and invasive gynecological medical procedure where a hysteroscope is inserted all the way into the vagina and pushed through the cervix to allow a healthcare professional to examine the inside of the uterus. Kumar performed these procedures on unsuspecting women under the guise of medical necessity and assumed use of sterile equipment. In this way, he sexually penetrated these women, raping them under Tennessee state law. For each of the four women charged in Counts 1 through 4, Kumar persuaded, induced, enticed, and coerced them to return to his office in Memphis from their homes in Arkansas and Mississippi for the purpose of raping them by conducting unnecessary hysteroscopies with adulterated devices. Defendant now moves to dismiss these counts, asking the Court to usurp the role of the jury, disregard factual disputes, and find as a matter of law that conduct which squarely meets the elements of rape in Tennessee does not constitute "sexual activity for which any person can be charged with a criminal offense."

1

## STATEMENT OF FACTS

Since opening Poplar Avenue Clinic in September of 2019, Kumar conducted extensive, invasive procedures on nearly every patient whether their medical history or past appointments indicated necessity or not. Of the twenty-three medical records reviewed by Gynecologic Oncologist expert Dr. Matt McDonald, all of the patients experienced medically unnecessary procedures. Kumar's practice was that every single patient receive a pap smear, abdominal ultrasound, intravaginal ultrasound, and hysteroscopy biopsy procedure at the first visit. Kumar would routinely perform repeat hysteroscopies when they were not medically indicated, as often as every two weeks for some patients.

In addition to the procedures being medically unnecessary, Kumar also ordered his staff to re-use single use medical devices as well as reusable medical devices that required sterilization or high-level disinfection to be safely reprocessed. The single use devices simply were not cleared for reprocessing, could not be correctly reprocessed, and were contaminated when reused on multiple patients. To correctly disinfect the devices cleared for reprocessing, Kumar had to strictly follow manufacturer instructions. At best, Kumar attempted to subject the devices to a cleaning process in the evenings. But he failed to subject the devices to this process at all between patients. The single use devices, even if they had been correctly reprocessed (they were not), had to be labeled as reprocessed single use devices and Kumar did not so label them.

The female victims alleged in Counts 1 through 4 placed their trust in Kumar and the providers under his supervision and allowed them to do the unnecessary medical procedures because Kumar fraudulently convinced them it was necessary for their health. The women felt immense pain and discomfort and all questioned why they received so many procedures.

Victim-1 began seeing Kumar at Poplar Avenue Clinic (PAC) in January 2023 after her gynecologist at East Arkansas Health Clinic suggested she visit for abdominal pain. She lived in Arkansas the entire time she was seen at PAC. Between January and March 2023, Kumar performed four hysteroscopies. Dr. McDonald opined that the three after the initial were not necessary. Those were performed at two-week intervals before Victim-1 agreed to a hysterectomy (a surgery that removes the uterus) to avoid having to continue the repeated hysteroscopies. Victim-1 felt violated the first time Kumar performed a hysteroscopy. She has not slept in a bed nor allowed her husband to touch her in a sexual manner since the first hysteroscopy in January 2023 due to the trauma. The only reason she returned for subsequent appointments was that Kumar told her to come back and for necessary procedures.

Victim-2 began seeing Kumar at PAC in November 2019 after she had experienced abnormal uterine bleeding and pelvic pain and found the clinic on Google. She is a nurse who works in a nursing home. She lived in Mississippi during the time she was a patient at PAC. Kumar performed seven hysteroscopies between November of 2019 and May of 2021. Dr. McDonald opined that five were not necessary and one was of questionable indication. Victim-2 returned at regular intervals as determined by Kumar. She stopped seeing Kumar because of the repeated hysteroscopies and care that was not aligned with her fertility goals. Kumar kept recommending a hysterectomy when Victim-2 desired to expand her family.

Victim-3 began seeing Kumar at Poplar Avenue Clinic on June 15, 2020, after she was diagnosed with Paget's disease of the vulva. Her gynecologist wanted her to see an oncologist to make sure the disease did not progress to cancer. She drove from her home in Arkansas to the clinic for each appointment. Victim-3 was post-menopausal and never had any bleeding, but her PAC record falsely reflected that her main concern was post-menopausal bleeding. Kumar, or

another provider under his supervision at PAC, would tell her that she needed procedures and then they would perform the procedures. This included eight hysteroscopies. Expert Dr. McDonald opined that four of the eight, from January 2021 through November of 2022, were not indicated. But that opinion was based on her recorded symptom of post-menopausal bleeding, which was not an actual symptom she was experiencing. If she had not experienced post-menopausal bleeding, Dr. McDonald opined that none of her hysteroscopies were medically indicated. Kumar directed all of Victim-3's return appointments.

Victim-4 began seeing Kumar in 2022 after being referred by another doctor for pain and cysts on her ovaries. She lived in Arkansas the entire time she was a patient of Kumar's. On her first visit, Kumar performed a hysteroscopy on her without telling her what he was doing. She felt violated. She had five hysteroscopies that expert Dr. McDonald deemed not medically necessary, from May 5, 2022 (4 weeks after initial sampling) through June 17, 2024. Kumar told her they were necessary to check for cancer and she consented due to fear and a family history of cancer. If Victim-4 reported pain in her abdomen and cysts on her ovaries, but not abnormal bleeding as noted in her PAC record, Dr. McDonald did not believe there would be a medical necessity as to any of the hysteroscopies performed at PAC. Kumar directed all of Victim-4's return appointments.

**LAW AND ARGUMENT**

According to Kumar, the government must allege and prove, beyond a reasonable doubt, that he derived sexual gratification or pleasure from the criminal sexual activity he intended for the patients to engage in when he persuaded, induced, enticed, and coerced them to cross state lines. But the statute is not framed in the terms he contends: it mentions nothing about sexual gratification. Defendant's motion should therefore be denied.

I. **Sexual gratification is not an element of 18 U.S.C. § 2422(a)**

Defendant erroneously asserts "libidinal gratification" is an "essential element" of 18 U.S.C. § 2422(a). The elements of 18 U.S.C. § 2422(a) are: (1) the defendant knowingly persuaded, induced, enticed, or coerced the person identified in the indictment to travel in interstate commerce to engage in sexual activity; and (2) the defendant could have been charged with a criminal offense as charged in the indictment for the sexual activity. Pattern Crim. Jury Instr. 7th Cir. 2422(a) (2023). "Sexual activity" is not fully defined by statute. *See* 18 U.S.C. § 2427.

A. ***United States v. Nagarwala* is not binding**

"A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011) *citing* 18 J. Moore et al., Moore's Federal Practice section 134.02[1][d], p. 134-26 (3d ed. 2011).

B. ***United States v. Nagarwala* was incorrectly decided**

In support of his position, Defendant cites to *United States v. Nagarwala*, No. 17-CR-20274, 2018 WL 405122 (E.D. Mich. Jan. 14, 2018). However, that case was incorrectly decided. The district court in *Nagarwala* adopted a Sixth Circuit analysis that had been used to determine whether non-penetrative offenses that were not overtly sexual should be considered "sexual abuse."

*United States v. Nagarwala*'s reliance on *United States v. Mateen*, 806 F.3d 857 (6th Cir. 2015) is misplaced. *Mateen* merely determined whether the elements of the Ohio crime of gross sexual imposition were sufficient, at sentencing, to "relate to" sexual abuse, and did not establish the definition for sexual abuse, criminal sexual activity, or what would be necessary proof in

other cases. *See United States v. O'Neal*, 835 Fed.Appx. 70 (6th Cir. 2020). And *Mateen*, which applied the categorical approach to Ohio's criminal statute, is factually different than this case because the determination was whether the touching of *non-genital* areas was "sexually motivated" such that it qualified as "sexual abuse" under Ohio's statute. 806 F.3d at 863. *Mateen* did not define "sexual activity" under § 2422(a). And it did not hold that genital penetration required a libidinal motivation in order to be "criminal sexual activity."

In general, sexual crimes involving the penetration of the genitals do not require that the government prove that the defendant sought or obtained sexual arousal or gratification. *See* 18 U.S.C. § 2241; 10 U.S.C. § 920; Mich. Comp. Laws Ann. § 750.520b(1); Ohio Rev. Code Ann. § 2907.02; Ky. Rev. Stat. Ann. § 510.040[1]; and Tenn. Code Ann. § 39-13-503. This is common sense for at least two reasons. First, evidence of the defendant's arousal or gratification will frequently be unavailable. Additionally, the victim suffers harm regardless of whether the defendant derived sexual gratification. It is the touching and penetration of the genital or anal openings that matter. Second, when an object is inserted into the sex organs, that conduct is inherently sexual. The Sixth Circuit has held that "[o]f course" statutory rape of a 15-year-old by someone 21 or older constitutes "sexual abuse." *United States v. Armes*, 953 F.3d 875, 879-80 (6th Cir. 2020). "To state the obvious, 'sexual intercourse' is 'sexual.'" *Id*. at 880.

There is a circuit split regarding whether physical contact is necessary to a finding of "sexual activity," but not regarding whether it is sufficient for such a finding. It is well established that contact offenses, like penetration of the genitalia, qualify as criminal sexual activity. *See United States v. Taylor*, 640 F.3d 255 (7th Cir. 2011) (stating that, under 18 U.S.C.

---

[1] Kentucky does not require sexual arousal or gratification, but does provide an exception for penetration of the sex organ during generally recognized health-care practices. *See* Ky. Rev. Stat. Ann. § 510.010.

§ 2422(b), "sexual activity" means that defendants must engage in physical activity); *United States v. Fugit*, 703 F.3d 248 (4th Cir. 2012) (holding no requirement for physical touching to qualify as "sexual activity" in 18 U.S.C. § 2422(b)); and *United States* v. *Dominguez*, 997 F.3d 1121 (11th Cir. 2021) (explaining that a circuit split exists regarding whether "sexual activity" requires interpersonal contact). The Sixth Circuit expressly endorsed that "sexual activity for which any person can be charged with a criminal offense" was a broader category than "sexual act" as defined by § 2246. *United States v. Lawrence*, 187 F.3d 638 (6th Cir. 1999).

### II.    Rape is "sexual activity for which any person can be charged with a crime"

It is alleged that Kumar knowingly persuaded, induced, enticed, and coerced four individuals to travel in interstate commerce to Memphis, Tennessee with the intention that he would engage in one or more sex acts with these four victims in violation of Tennessee Code Annotated § 39-13-503, Rape. The elements of Rape are:

> (a)    Rape is unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances:
> (1)    Force or coercion is used to accomplish the act;
> (2)    The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent;
> (3)    The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated, physically helpless, or a vulnerable adult, as defined in section 39-13-501; or
> (4)    The sexual penetration is accomplished by fraud.

As defined by the Tennessee legislature, "[s]exual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or ***any other intrusion, however slight***, of any part of a person's body or ***of any object into the genital or anal openings of the victim's***, the defendant's

or any other person's body, but emission of semen is not required. TCA § 39-13-501(7) (emphasis added).

The Sixth Circuit has already determined that Tennessee statutory rape is sexual abuse. As codified in TCA § 39-13-506, statutory rape requires proof of "unlawful sexual penetration" of a minor victim, plus a defined age gap, but does not require proof of sexual gratification. *United States v. Sykes*, 65 F.4th 867, 888 (6th Cir. 2023). At the time of Sykes's prior offenses in 1997 and 2012, Tennessee's definition of "sexual penetration" was identical to the current definition. *See* TCA § 39-13-501(7).

A hysteroscope is inserted into a woman's vagina during a hysteroscopy, and Kumar is alleged to have conducted repeated unnecessary procedures using adulterated single use hysteroscopes and adulterated reusable hysteroscopes on the victims identified in the Indictment. Kumar told victims that the procedure was medically necessary when it was not. Kumar concealed from the victims that the procedures were being done with filthy hysteroscopes that were reused on multiple patients within the same day and continued to be reused for as long as possible. All of this was done so that Kumar could perpetuate his fraud on the victims and the health care programs from which he profited immensely. This meets each element of rape, under the statute, as the state of Tennessee contemplated. Kumar raped vulnerable victims who believed their doctor was performing the hysteroscopies in their best interest and under the guise of checking them for cancer.

Sexual penetration is undoubtedly "sexual activity," and when it is done with an attendant circumstance (i.e. to a minor, by fraud, or without consent), it is sexual activity for which the defendant could have been charged with a crime.

### III. Even if the law requires an element of libidinal gratification, dismissal is not appropriate

In his motion to dismiss, defendant relies on Federal Rule of Criminal Procedure 12. (Def. Motion, R. 74, PgID 595-596). But Rule 12 does not authorize the relief that defendant requests. Defendant ignores that there are significant factual disputes that must be resolved by a jury. Dismissal under Rule 12 is appropriate only where the undisputed facts establish that the offense charged cannot be proven as a matter of law. *United States v. Levin*, 973 F.2d 463, 470 (6th Cir. 1992). "[I]f a defendant's pretrial motion requires the court to find facts that make up the elements of the case which would normally be reserved to the jury on trial of the general issue, the motion should be denied." *United States v. Cumberland Wood and Chair Corp.*, 1992 WL 317175, at *3 (6th Cir. Oct. 27, 1992). "[C]ourts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) *citing Costello v. United States*, 350 U.S. 359, 362-63 (1956)); see also 41 Am. Jur. 2d Indictments and Informations.

In this case, the government has alleged that Kumar enticed and induced four women across state lines to commit an illegal sexual activity. That illegal sexual activity is rape under Tennessee law. Though there is no element of libidinal gratification, if such an element existed, it would be up to the jury to determine if Kumar sought libidinal gratification from his actions.

### IV. The rule of lenity has no application here

Defendant claims that because he can conjure up a restrictive interpretation of the statute charged in Counts 1 through 4, those counts must be dismissed under the rule of lenity. This is wrong. As the Supreme Court has made clear, "the simple existence of some statutory ambiguity" is not enough to require application of the rule. *Muscarello v. United States*, 524 U.S. 125, 138 (1998); *see also Smith v. United States*, 508 U.S. 223 (1993) ("The mere possibility of

9

articulating a narrower construction . . . does not by itself make the rule of lenity applicable."). Instead, the principle of lenity has force only when, having considered every source of insight into Congressional intent, the court remains unable to do more than guess as to what Congress intended. *United States v. Wells*, 519 U.S. 482, 499 (1997).

Here, there is no need to guess what Congress intended. Congress intended as broad a reach as possible to protect victims from sexual abuse. Section 2422(a) is understood without invocation of the rule of lenity and Defendant's effort to create ambiguity does not suffice to warrant application of the doctrine.

### V.     Conclusion

Defendant's motion to dismiss Counts 1 through 4 should be denied.

Respectfully submitted,

By:     /s/ Lynn Crum
        LYNN CRUM
        Assistant United States Attorney
        167 N. Main St., Suite 800
        Memphis, TN 38103
        Telephone: (901) 544-4231

## CERTIFICATE OF SERVICE

I, Lynn Crum, Assistant United States Attorney, do hereby certify that a copy of the foregoing pleading was forwarded by electronic means via the Court's electronic filing system, and via email to the attorneys for the defendant.

This 11th day of July, 2025.

                                                     /s/ Lynn Crum  
                                                   Assistant United States Attorney