IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

VS.                                             Criminal No. 25-cr-20032-SHL

SANJEEV KUMAR,

        Defendant.

---

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE USE OF THE TERMS "RAPE," "RAPED," "SEXUAL ASSAULT," "SEXUALLY ASSAULTED," "SEXUALLY ABUSED," "VICTIM" AND ANY MENTION OF A "RAPE CRISIS CENTER"**

---

The United States of America submits this response in opposition. The government, while not required, has agreed not to use the terms "rape," "raped," "assaulted," "sexually assaulted," "abused," or "victim" in its opening statement. Completely precluding such terms from being uttered by witnesses, and especially limiting the phrase "Rape Crisis Center," will cause unnecessary confusion for the jury and the witnesses throughout the trial.

    I.      Background

    Defendant Sanjeev Kumar performed unnecessary hysteroscopies on women with adulterated devices. A hysteroscopy is a painful and invasive gynecological medical procedure where a hysteroscope is inserted all the way into the vagina and pushed through the cervix to allow a healthcare professional to examine the inside of the uterus. At defendant's women's health clinic, hysteroscopies were usually also performed while taking an endometrial biopsy

1

sampling during the procedure, which requires the removal of cells from the endometrial lining of the uterus. Defendant performed these procedures on unsuspecting women under the guise of medical necessity and assumed use of sterile equipment.

The female victims alleged in the health care fraud counts and others placed their trust in defendant and the providers under his supervision and allowed them to do the unnecessary medical procedures because defendant fraudulently convinced them it was necessary for their health. The women felt immense pain and discomfort, and many questioned why they received so many procedures. None of the victims knew that the hysteroscopes pushed into their vagina and uterus were either single use devices that were being reused or improperly reprocessed reusable devices.

II. Law and Argument

Allowing the victim-witnesses to testify truthfully about their own experiences as patients of defendant is both deeply relevant and probative of the charged conduct. The government also has a legal duty to allow those victims to participate in the judicial process, and they should be permitted to use whatever term they choose to describe their own experiences. The government is required to make its best efforts to ensure that each victim is "reasonably protected from the accused" and "treated with fairness and with respect for [their] dignity and privacy." 18 U.S.C. § 3711(c)(1). The Crime Victims' Rights Act ("CVRA") defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." *Id.* § 3771(e)(2)(a). In cases that involve minors, relatives of the minor victim may assume the victim's rights under the CVRA. *Id.* at § 3771(e)(2)(B). The term "victim" applies to each of the victims identified in the Government's Motion to Use Pseudonyms. *See* ECF 132. "The CVRA

2

was designed to protect victims and guarantee them some involvement in the criminal justice process." *United States v. Moussaoui*, 483 F.3d 220, 234 (4th Cir. 2007) (internal citations omitted). These rights and protections, however, do not attach only upon the finding of guilt. 18 U.S.C. § 3771.

For instance, the CVRA affords victims the right to "timely notice," to not be excluded, and to be "reasonably heard" at any public court proceeding including those proceedings that occur before final adjudication. *Id.* §§ 3771(a)(2), (3), and (4). Victims are also afforded the right to be informed of plea bargaining and deferred prosecution agreements—each of which occur before conviction. *Id.* § 3771(a)(10). Each of the ten victims clearly constitute "victims" as that term is legally defined. Moreover, there is no element of any offense and no jury instruction that requires the jury to determine whether any of the nine charged victims and one uncharged victim was a "victim." That is not the question before the jury and indeed is not enough to satisfy a single element of any of the forty-six offenses Kumar is charged with. Finally, both sides are free to argue whether the evidence supports that Victim-1, Victim-2, Victim-3, Victim-4, Victim-5, Victim-6, Victim-7, Victim-8, Victim-9, and Victim-10[1] are victims, or not. This is, of course, consistent with what happens in nearly every trial where a victim is involved.

Using the term victim is legally accurate and not problematic. Defense has not proposed an alternative, merely suggesting that the Court completely restrict the victims from describing their experiences in the way they experienced them. These women[2] were identified because of a

---

[1] The identifying numbers used herein correspond to those used in the Superseding Indictment. The identities of the Victims are already known to the defendant, and, already identified by pseudonyms in the Second Superseding Indictment.

[2] All of the victims are currently adults, so they will collectively be deemed women. However, as discussed in the Government's Motion to Use Pseudonyms, Victim-5 in the Superseding

multi-agency effort to determine whether defendant had simply committed health care fraud by billing for procedures not performed, or whether he had committed health care fraud by performing unnecessary procedures with dirty instruments on the women. The women are coming to Court because they are subpoenaed to be there. The last thing any one of them wants to do is get up in front of a room full of strangers and speak openly about the most deeply personal and, in some cases, traumatic moments of their lives. And, although defense refuses to acknowledge, each is more than a "witness" and not by virtue of anything the government has done to help them seek resources they may be entitled to. They did not simply observe someone else being harmed. They themselves were harmed. And to imply otherwise does not treat them with the dignity the CVRA commands.

    As stated above, the government has agreed not to use the terms "rape," "raped," "assaulted," "sexually assaulted," "abused," or "victim" in its opening statement, and told defense counsel as much prior to their filing of the instant motion in limine. However, precluding such terms, and especially limiting "Rape Crisis Center," will cause unnecessary confusion for the jury and the witnesses throughout the trial. Some of the women feel that they were raped and have described their experience as rape. While Defendant baldly argues that the government played a role in these witnesses' description of their treatment as rape, there is no such evidence present in the record. Moreover, allowing the witnesses to clarify their impressions and timing of any such feelings through their own testimony and in their own words will allow the jury to draw their own conclusions, give these victims the dignity they are required under the law, and mitigate any perceived prejudice for the defendant.

---

Indictment was a child at the time of her hysteroscopy with biopsy.

The anticipated witness testimony in this case is not analogous to any of the cases cited by defense that found rape to be unfairly prejudicial. In this case, some, but not all, women describe either one or all the hysteroscopies performed by defendant and the providers under his supervision as rape. This is *not* a robbery case where a defendant could face undue prejudice by evidence being presented about a separate rape committed by the defendant. This is a description of the exact charged conduct by the very people who experienced the procedures.

To put it more plainly, this is not a typical health care fraud case. This is a health care fraud case where the fraud involved the defendant and those under his supervision penetrating the vagina, cervix, and into the uterus unnecessarily and with reused single use devices that were not labeled and improperly reprocessed reusable devices. There are special rape protections under Tennessee law for these sensitive and vulnerable areas of the body exactly because this conduct is different from other kinds of medical treatment. Based on the conduct alleged, the Rape Crisis Center has deemed defendant's patients to be eligible for their services. If the defendant were an Ear, Nose and Throat surgeon alleged to have introduced adulterated equipment into the ear canal of patients in performing medically unnecessary procedures, that conduct would not be described as rape. It is exactly because of the sensitive and vulnerable areas of these women's bodies that makes this testimony relevant. It further goes to explaining how or why these victims may have "consented" to these procedures despite being unnecessary.

The government acknowledges the prejudicial nature of the words "rape," "sexual assault," and "sexually abused," but asserts that that prejudice is not unfair in the context of this case. The terms are not more offensive and certainly not unfairly prejudicial when compared to the actual conduct by the defendant. Introduction of these words does not "alter the tone and tenor of the

5

trial" and is not unfairly prejudicial. *United States v. Mandoka*, 869 F.3d 448, 456 (6th Cir. 2017) (permitting Rule 413 evidence that was inherently prejudicial). What these women experienced was, as this Court noted, "reprehensible if proven."[3] (ECF 124, PageID 1042.) The women should be permitted to describe their experiences without restriction as to how they describe what happened to them. Additionally, they should be permitted to testify about the Rape Crisis Center if it is relevant. There is nothing prejudicial about describing a location of services received or the employer of people they have received services when compared to the conduct by defendant that led them to those services.

The purpose of permitting the victims to testify to their experience "is to put the charges in the appropriate context." *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015). It would be exceedingly difficult for the women who are victims in this case to relay a story without using the language that they naturally use to describe what happened to them. "[D]efendants are not entitled to a 'sanitized' recounting of the facts, and prosecutors are not restricted to proving only discrete elements of a crime in such way that they would be unable to offer the jury a natural narrative of events." *Id.* (internal citations omitted).

CONCLUSION

This Court should deny Defendant's Motion in Limine to preclude the use of the terms "rape," "raped," "sexual assault," "sexually assaulted," "sexually abused," and "victim," because the terms are legally accurate, consistent with both state law and common usage, and victims are

---

[3] The government is cognizant that this Court's order (ECF 124) held that the alleged conduct did not meet the description of "sexual activity" under the Travel Act. To the government's understanding, no ruling has been made as to whether the alleged conduct meets the definition of rape under Tennessee statute or any other meaning of "rape" more broadly.

statutorily required to be treated with "dignity." Moreover, both sides are free to argue that the evidence does not support or supports that the women were victims, raped, sexually assaulted, or sexually abused, and the terms do not presuppose elements of the offense, lower the Government's burden of proof, or violate Defendant's due process rights. To limit the Government or witnesses from using such terms would confuse the jury and turn the trial into a needless cumbersome exercise in how to avoid getting found in contempt, or a possible mistrial, for using prohibited language.

Respectfully submitted,

D. MICHAEL DUNAVANT
United States Attorney
Western District of Tennessee

By:    /s/ Lynn Crum
LYNN CRUM
Assistant United States Attorney
167 N. Main St., Suite 800
Memphis, TN 38103
Telephone: (901) 544-4231

**CERTIFICATE OF SERVICE**

I, Lynn Crum, Assistant United States Attorney, do hereby certify that a copy of the foregoing pleading was forwarded by electronic means via the Court's electronic filing system to the attorneys for the defendant.

This 6th day of November, 2025.

 /s/ Lynn Crum
Assistant United States Attorney