IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**UNITED STATES OF AMERICA,**

        **Plaintiff,**　　　　　　　　　　　Cr. No. 2:25cr20032-SHL

**v.**

**SANJEEV KUMAR,**

        **Defendant.**

---

**DEFENDANT'S MOTION TO DISMISS COUNTS 1–36 FOR FAILURE
TO STATE OFFENSE**

---

Defendant Dr. Sanjeev Kumar moves, under Federal Rule of Criminal Procedure 12(b), to dismiss Counts 1–36 of the Second Superseding Indictment for *failure to state an offense*.

**INTRODUCTION**

On October 17, 2025, this Court dismissed Counts 5–9, 12–13, 16–18, 21–22, and 25, stating, "[i]n this case, where 16,000 acts of adulterating and misbranding are alleged, the Government has the discretion to present to the jury any factual circumstances it chooses. But it must do through properly charged counts." (ECF No. 124, PgID 1049).

The Court rejected Dr. Kumar's argument that Counts 5-36 were insufficient because they were vague and, more specifically, that the term "held for sale" should not be so broadly construed. (*Id.* at PgID 1050). In rejecting the Defense argument, the Court relied on the Government's representation that the Indictment is not vague in its description of devices "held for sale," because "a physician's use of a consumable, single-use device on a paying patient satisfies the 'held for

1

sale' element." (ECF No. 108 at PgID 914 (quoting *United States v. Kaplan*, *836 F.3d 1199*, 1211 (9th Cir. 2016))).

In dismissing counts 5-9, 12-13, 16-18, 21-22, and 25, the Court stated that Counts 10-11, 14-15, 19-20, 23-24, and 26 were properly pled because they allege single instances of adulterating or misbranding. (*Id.* at 1049). This left four counts of misbranding and five counts of adulteration. On October 30, 2025, the Government superseded the indictment with 27 counts of adulterating and misbranding devices recovered during the execution of the search warrant. (ECF No. 135, PgID 1182-86).

## ARGUMENT

### I. The Law Related to Misbranding and Adulteration and Sufficiency

Under Rule 7(c)(1), an indictment "*must* be a plain, concise, and definite written statement of the *essential facts* constituting the offense charged." Fed. R. Crim. P. 7(c)(1) (emphasis added). An indictment is sufficient only if it (1) contains the elements of the offense, (2) fairly informs the defendant of the charge against which he must defend, and (3) enables him to plead an acquittal or conviction as a bar to future prosecution for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974).

Simply parroting the words of a statute is not, by itself, always enough: the statutory language "*must be accompanied with such a statement of the facts and circumstances* as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id*. 117–18 (emphasis added). In other words, if the statute defines an offense in generic terms, the indictment must *descend to particulars* in alleging what the defendant actually did. This requirement protects the accused's Fifth and Sixth Amendment rights to know the nature of the accusation and to have the grand jury pass on the actual conduct charged.

The Supreme Court's decision in *Russell v. United States*, 369 U.S. 749 (1962), is directly on point. There, the Court reversed convictions because the indictments failed to specify the subject of a congressional inquiry that the defendants refused to answer questions about. Merely alleging the questions were "pertinent to the question under inquiry" (tracking the statute) was insufficient—omitting the actual subject of the investigation left the defendants uninformed of the core of the charge. *Id.* at 780. The *Russell* Court emphasized that the omission deprived the defendants of one of the significant protections which the guaranty of a grand jury indictment was intended to confer—*i.e.*, that they failed adequately to apprise the defendants of what they must be prepared to meet. *Id.* at 764. It also noted such indictments were also insufficient to serve the corollary purpose of enabling the court to determine whether the facts alleged were sufficient in law to support a conviction. *Id.* at 768. Likewise here, the indictment's failure to specify any adulterating act leaves Dr. Kumar (and the Court) guessing at what he must defend against, or whether the alleged facts would even amount to a crime if proved.

The Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, "was designed primarily to protect consumers from dangerous products." *United States v. Sullivan*, 332 U.S. 689, 696 (1948); *see also United States v. Dotterweich*, 320 U.S. 277, 280 (1943); *United States v. Dianovin Pharm., Inc.*, 475 F.2d 100, 103 (1st Cir. 1973). Accordingly, the FDCA regulates the marketing and sale of drugs and medical devices into interstate commerce and also sets forth criminal penalties for violations of the Act.

Section 301 of the Act prohibits the "adulteration" or "misbranding" of any food, drug, device, tobacco product, or cosmetic into interstate commerce, as well as the introduction or receipt of any such adulterated or misbranded article into interstate commerce. 21 U.S.C. § 331(a-c). The crime of adulteration or misbranding is, in its misdemeanor form, a strict liability

3

offense, see 21 U.S.C. § 333(a)(1); *Dotterweich*, 320 U.S. at 281. But the offense is a felony if committed "with the intent to defraud or mislead," *United States v. Orrego-Martinez*, 575 F.3d 1, 4 (1st Cir. 2009) (quoting 21 U.S.C. § 333(a)(2)). To convict a defendant under the felony provisions of the Act, the Government must prove not only the defendant's knowledge of the adulteration or misbranding, but also that the defendant had a "specific intent to mislead or defraud" that was "connected to the misbranding." *United States v. Mitcheltree*, 940 F.2d 1329, 1351 (10th Cir. 1991). In that case, the court found that the Defendants had the requisite knowledge but not the intent to mislead as defined, leaving the felonies unproven.

   21 U.S.C. § 331(k) prohibits the following:

> The alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other <u>act</u> with respect to, a food, drug, device, tobacco product, or cosmetic, if <u>such act</u> is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded.

## II. Counts 1 Through 36 of the Indictment are Insufficiently Pled Because the Government Failed to Allege the Specific Act

The Second Superseding Indictment alleges: "Between in and around September 2019 and in and around April 2024, Kumar obtained and caused to be obtained . . . single use hysteroscopy medical devices . . . Many of the hysteroscopy procedures during this time were accomplished by reusing the single use medical devices on multiple patients." (ECF No. 135, PgID 1180-81).

The Indictment incorporates paragraph 56 into these counts and further alleges that on or about April 16, 2024, Dr. Kumar adulterated devices and lists 16 devices along with where the devices were found during the search warrant. *Id.* at 1182-83. Previously, the Government argued that one count per device type was sufficient and did not constitute "separate offenses." That

4

argument was rejected. (ECF No. 12, PgID 1045-46). In response, the Government included the date of the search warrant on the indictment and re-filed its charges.

The question for the court is, whether violations of 21 U.S.C § 331(k) are separate offenses when the indictment does not specify the act, date, or patient where the alleged act of "adulteration" or "misbranding" occurred.

Put more succinctly, is a violation of 21 U.S.C § 331(k) committed when the item is "held for sale" or when the item is adulterated or misbranded?

This Court should dismiss Counts 1-16 because under 21 U.S.C § 331, the "act" is the offense and "held for sale" is merely the jurisdictional component that brings the act within the jurisdiction of the FDCA. The Government did not specify in the Indictment the dates of the acts, the number of acts that occurred, and only pins their allegations to the date that the device was purportedly "held for sale."

This Court has already determined that "held for sale" under 21 U.S.C § 331(k) means a physician's use of a single-use device in treating patients. *Kaplan*, 836 F.3d at 1211 (9th Cir. 2016); *see also United States v. Jackson*, 126 F.4th 847, 858–59 (4th Cir. 2025). This Court has also already determined that a "continuing course of conduct theory does not resolve duplicity concerns." By implication, to have a valid indictment, the Government must specify, at a minimum, that each device was used in treating multiple patients. The indictment does not do that.

The Second Superseding Indictment is a restatement of the same flawed indictment already dismissed by this court because it does not specify that each device was used in treating patients, and it does not specify the date or the patient. Distinct separate events charged in one count "are

5

not mere 'multiple factual predicates' but rather are entirely separate offenses." *United States v. Dedman*, 527 F.3d 577, 600, n.10 (6th Cir. 2008).

The Court was concerned that the prior indictment contained counts that stretched over years, sweeping up 16,000 acts of adulteration and misbranding. The error was not cured. To quote this Court, "however, for thousands of violations against thousands of victims over the course of years, a continuing course of conduct theory cannot overcome the specter of duplicity." (ECF No. 124, PgID 1047). Counts 1-36 charge Dr. Kumar with felony adulteration and misbranding of medical devices, 21 U.S.C. § 331(k), enhanced under 21 U.S.C. § 333(a)(2).

Dr. Kumar is also left to guess the *date* that any one of the acts was committed on, the patient who was the "*victim*" and whether he *defrauded* or *misled* the patient, the insurer, the government, or someone else. Additionally, the Indictment does not specify if Dr. Kumar is being prosecuted for the acts of another employee who adulterated devices, and Dr. Kumar simply permitted it, or if he committed the act personally. If so, the Government deprives Dr. Kumar of the ability to know who that person is. *See United States v. Park*, 421 U.S. 658, 676 (1975) (allowing a corporate officer to be liable under the FDCA).

Perhaps the Government's most fatal flaw is assuming that the date a device was found in cleaning solution is the date of the "act." It is not, the FDCA requires the commission of any act. The Court seems to agree, "In this case, where 16,000 acts of adulterating and misbranding are alleged, the Government has the discretion to present to the jury any factual circumstance it chooses." (ECF No. 124, PgID 1049). There were not 16,000 devices at issue in this case, meaning that the "act" at issue is the procedure in which the device was "reused".

The Government may respond that paragraphs 1-59 add context to the allegation. This is incorrect; the paragraphs about counts 1-16 do not constrain paragraphs 60 and 6. In fact, they

expand the allegations. Perhaps this is why the Government expects this trial to go longer than two weeks. This Indictment is in search of a crime, and such a barebones pleading is legally deficient.

The Indictment fails to allege when, how, or even if the specific device was reused or rendered insanitary, and it omits any patient or procedure linked to an adulteration. Because such omissions deprive Dr. Kumar of fair notice and do not charge an offense under § 331(k), the Court should dismiss Counts 1–16 *with prejudice*. Given the history of this prosecution—including nearly identical counts previously dismissed by this Court for duplicity and lack of specificity—no further leave to amend is warranted. Dr. Kumar requests oral argument on this motion.

If the Indictment doesn't say which of these (if any) Dr. Kumar allegedly did, he is left to prepare a defense to every conceivable theory. Such a "guess-what-theory" Indictment is precisely what the Fifth and Sixth Amendments forbid. *See Russell*, 369 U.S. at 770 (indictment must not force courts "to make a subsequent guess as to what was in the minds of the grand jury") (internal quotation omitted); *id.* at 768 (defendant must be informed of what to meet). The Government's hide-and-seek approach to charging this case will also prolong what is already an unnecessarily long trial.

In *Salerno*, the government charged a pharmacist with a single count covering 250,952 instances of misbranding over five years. The court found the count duplicitous (for combining separate offenses) but declined to dismiss *in that case* only because all violations were packaged in one count that actually benefited the defendant by limiting his penalties to a single count. *See United States v. Salerno*, No. 3:10-CR-301, 2011 WL 6141017, at *6-7 (M.D. Pa. Dec. 9, 2011). Crucially, however, *Salerno* reaffirmed that § 331(k) does not create a continuing offense—each distinct adulterating act is a crime of its own. The Second Superseding Indictment ostensibly heeds that principle by charging 16 counts. But charging separate counts is meaningless if the counts

themselves are empty of content about the act. *Salerno* and the cases it synthesized teach that prosecutors must tie each count to a particular proscribed act. Here, we have 16 counts unmoored to any identified acts.

By contrast, in Dr. Kumar's indictment, the Government provides almost no specific factual narrative for these counts, just a table of devices found in various rooms and general allegations of adulteration.

The Sixth Circuit has likewise cautioned that where an indictment permits multiple theories or incidents, it must be crafted to avoid uncertainty about what the jury must unanimously find. If each count here is so vague that jurors could convict for completely different acts (one juror thinking the act was reusing a device on Patient X, another thinking it was leaving a device on a countertop too long), that raises unanimity problems.

In *Dedman*, the Sixth Circuit noted that charging multiple false statements in one count was problematic because the statements were "entirely separate offenses." 527 F.3d at 600, n.10. Although *Dedman* dealt with duplicity, the underlying concern is the same: an indictment must not be so open-ended that it encompasses "separate offenses" without clarity. Here, each count is ostensibly one offense, but *what offense*? Without specifying the act, a count could implicitly sweep in any number of distinct wrongful acts (any prior reuse of that device, or any unsanitary handling of it). That ambiguity offends basic pleading standards.

In sum, Counts 1–36 do not state offenses under § 331(k) because they omit a fundamental element: the defendant's adulterating and misbranding conduct. The Court cannot salvage those counts without usurping the grand jury's role of alleging the essential facts. Just as in *Russell*, the omission "could not "have been cured by a bill of particulars" after the fact, because the grand jury

8

itself must specify the factual basis of the charge in the indictment. 369 U.S. at 770–71. The proper remedy is dismissal.

### III.    The Indictment Lacks Specificity, Impairing Dr. Kumar's Ability to Defend and Risking Double Jeopardy

Even if one assumed the Second Superseding Indictment technically tracked the statute's elements, it is still so devoid of detail that it violates Dr. Kumar's Fifth and Sixth Amendment rights.

An indictment must provide enough particularity to inform the defense of the specific conduct at issue and to protect against double jeopardy. Counts 1–16 fall far short of this standard.

As outlined above, the Second Superseding Indictment does not identify any victim or date of an alleged reuse. This lack of particularity hampers Dr. Kumar's defense preparations. For example, if he knew Count One concerned an *Endosee* cannula allegedly reused on Patient A in January 2024, he could gather medical records, testimony, or expert evidence to refute that specific allegation (or show it was properly cleaned or disposed of).

But with only a device name and a location on April 16, he is left to speculate which patient (if any) is associated with that device. This is precisely the scenario that the *Russell* Court warned against, where a defendant must guess at the factual basis of the charges in order to prepare for a defense. *See Russell*, 369 U.S. at 766–67.

Furthermore, the lack of allegations tying devices to particular procedures raises *double jeopardy* concerns. If these counts were somehow tried and resulted in acquittals or convictions, what exactly would Dr. Kumar have been acquitted or convicted of? The record would not clearly show, because the Indictment itself is unspecific. This Court noted the same issue when it dismissed the prior indictment's counts: without clarity, neither the defendant nor the court can ensure that a jury verdict corresponds to a particular offense.

A future prosecutor could attempt to recharge Dr. Kumar for reusing a device on a certain patient, and it would be impossible to tell if that incident was already encompassed by the nebulous April 16, 2024 charges. Thus, the Indictment's vagueness creates a risk of double jeopardy—another hallmark of an insufficient indictment.

It is no answer for the Government to say that discovery or trial evidence will fill in the blanks. First, that's simply impossible—the Government has not been able to prove re-use. Second, the Constitution requires the *indictment* to inform the defendant of the charge, not a trial-by-ambush or an after-the-fact guess. *Hamling*, 418 U.S. at 117–18; *Russell*, 369 U.S. at 770 (an indictment's deficiencies cannot be cured by a bill of particulars or other means after grand jury presentment).

Here, Dr. Kumar did move for a Bill of Particulars earlier in the case, precisely because the charging documents lacked key details. In that motion, he pointed out that the Indictment provides no specific dates for when any adulteration occurred and no identification of what adulterated device was used on any patient. (ECF No. 100, PgID 776). The Court's prior dismissal of the superseding indictment mooted that motion, but the Second Superseding Indictment demonstrates the same problems. The Government, despite being ordered to particularize its charges by virtue of the dismissal, has merely anchored its timeline into pieces without injecting any new factual substance. Counts 1–16 remain too vague to permit the preparation of a defense. *Russell*, 369 U.S. at 765. They should not be permitted to go to a jury in this form.

**IV.    Dismissal With Prejudice is Warranted**

This is now the third iteration of the indictment (original, superseding, and second superseding). The Court explicitly flagged the deficiencies of the prior indictment in its Order of October 17, 2025. The Government has had ample opportunity to narrow and clarify its allegations.

Yet Counts 1–36 of the current Indictment still do not state a cognizable offense or provide the requisite detail. Under these circumstances, dismissal *with prejudice* is appropriate. The Court is not required to give the prosecution endless bites at the apple, especially when the core problem is the absence of evidence to support a specific offense. Here, the Government's inability to allege any concrete adulteration act strongly suggests it lacks evidence of any. Dismissal with prejudice will prevent further prejudice to Dr. Kumar from speculative, unsupported charges and will uphold the grand jury clause's purpose of preventing prosecutorial overreach. Finally, Dr. Kumar requests that the Court hear oral argument on this motion pursuant to Local Rule and in light of the significant factual and legal issues involved. Oral argument may assist the Court in probing the government's theory (if any) of how these counts satisfy basic pleading requirements.

## CONCLUSION

For the foregoing reasons, Dr. Kumar respectfully asks that the Court dismiss Counts 1–36 of the Second Superseding Indictment with prejudice for failure to state an offense (Fed. R. Crim. P. 12(b)(3)(B)(v), 7(c)(1)). These counts lack the essential factual allegations required to charge a violation of 21 U.S.C. § 331(k), and proceeding to trial on such vague charges would violate Dr. Kumar's rights to due process and grand jury indictment. The Court should end this baseless portion of the case now, rather than permit a jury proceeding on an indictment so fundamentally deficient.

Dated: November 6, 2025

        Respectfully submitted,

        *s/ Ronald W. Chapman, II*
        Ronald Chapman, II (*pro hac vice*)
        (Mich. Bar No. P73179)
        THE CHAPMAN FIRM
        1300 Broadway, FL7
        Detroit, MI 48226
        (346) 242-7626
        ron@chapmanandassociates.com

        Maritsa Flaherty (*pro hac vice*)
        (Cal. Bar No. 327638)
        CHAPMAN LAW GROUP
        1441 W. Long Lake Rd., Suite 310
        Troy, Michigan 48098
        (248) 644-6323
        mflaherty@chapmanlawgroup.com

        Lawrence J. Laurenzi (TN BPR No. 9529)
        Elena R. Mosby (TN BPR No. 40562)
        BURCH, PORTER & JOHNSON, PLLC
        130 North Court Avenue
        Memphis, TN 38103
        901-524-5000
        llaurenzi@bpjlaw.com
        emosby@bpjlaw.com

        *Attorneys for Dr. Sanjeev Kumar*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been filed using the Court's CM/ECF system which will automatically send a copy of the filing to the United States this 6th day of November, 2025.

*s/ Ronald W. Chapman II*
Ronald W. Chapman II
