IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

      **Plaintiff,**

v.                                                            Cr. No. 2:25cr20032-SHL

SANJEEV KUMAR,

      **Defendant.**

---

**DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S FIRST MOTION IN LIMINE TO EXCLUDE UNTIMELY, IRRELEVANT, CUMULATIVE AND IMPROPER EXPERT TESTIMONY FROM AMY GARCIA, THAHIR FARZAN, RAMZY RIMAWI, CHRISTOPHER PALENIK, SEAN WEISS, JEFFREY SEIDMAN, JORDAN JOHNSON, AND RYAN VAUGHN**

---

At the outset, the Government's First Motion *in Limine* should be dismissed pursuant to Local Criminal Rule 12.1, for failing to consult with counsel for Defendant prior to filing the instant motion. LCrR 12.1. Substantively, the Government's Motion should likewise be dismissed as it is vague, improperly applies the Rules of Evidence, and is not based on law. The Government's Motion appears to be nothing more than an attempt to prevent the Defendant from defending himself, by seeking exclusion of each and every one of the Defendant's proposed experts.

## BACKGROUND

Consistent with Criminal Rule 16, the Local Rules, and the Court's Order dated October 14, 2025, Defendant has provided disclosures of all expert witnesses it anticipates calling to testify at trial. (ECF Nos. 121, 122, 123, 125, 126, 128 and 129.) On October 14, 2025, the Government filed three additional expert disclosures. (ECF No. 115–117.)  Moreover, three days later, the Government filed additional discovery, the same date Defendant's disclosures were due and provided to the Government. The Government filed a Second Superseding Indictment on October

1

30, 2025. (ECF No. 135.) Supplemental disclosures for three experts were produced on November 3, 2025. (ECF Nos. 145–147.)

On November 3, 2025, the Government filed its first *Motion in Limine to Exclude Untimely, Irrelevant, Cumulative and Improper Expert Testimony From Amy Garcia, Thahir Farzan, Ramzy Rimawi, Christopher Palenik, Sean Weiss, Jeffrey Seidman, Jordan Johnson, and Ryan Vaughn* (ECF No. 139.) The Government seeks to exclude "five categories" of testimony which it views as: "(1) untimely and unsupported evidence; (2) irrelevant evidence; (3) confusing and cumulative evidence; (4) testimony for which the expert has no basis to testify; and (5) testimony regarding defendant's mental state . . . ." (*Id.* at 1.) Noticeably absent from the Government's filing is a notice of consultation, pursuant to Local Criminal Rule 12.1.

## STANDARD

The Federal Rules of Evidence permit opinion testimony in limited circumstances. For non-designated experts, opinion testimony "is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Even if designated as an expert, there are limitations on opinion testimony. Expert testimony must: "(a) . . . help the trier of fact to understand the evidence or to determine a fact in issue; (b) . . . [be] based on sufficient facts or data; (c) . . . [be] the product of reliable principles and methods; and (d) . . ."reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Such limited opinion testimony may be based on "facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

2

Evidence remains subject to Rules 401, 403 and 404(b), in that it must still be relevant, its probative value must outweigh its unfair prejudicial value, and it must not be improper character evidence. "Evidence is relevant if . . . it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401. To be relevant, evidence must, at least, be "a step on one evidentiary route to the ultimate fact" at issue. *Old Chief v. United States*, 519 U.S. 172, 179 (1997). "Rule 401 is not a standalone rule. Rule 402 says that the general admissibility of relevant evidence must yield to other Rules." *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020).

## LAW AND ARGUMENT

The Government's attempt at preventing Dr. Kumar from presenting his defense through the use of his designated experts should be denied. Dr. Kumar timely and appropriately disclosed his experts. The disclosures thoroughly outline the qualifications and anticipated testimony of each expert witness in compliance with Federal Rule of Criminal Procedure 16. To the extent the Government has an issue with any specific portion of the expert's qualifications, or the basis for the expert's opinions, it can cross-examine each witness at trial. Moving to exclude the expert's testimony before trial is inappropriate and not based on law.

### A. The Government's Failure to Consult with Defense Prior to Filing Their Motion Requires Dismissal and Prejudiced the Defendant.

Though the Government failed to consult with defense counsel on both of their *Motions in Limine*, contrary to Local Criminal Rule 12.1(a) and warranting dismissal, their failure in this Motion is more significant.

Local Criminal Rule 12.1 states:

> All non-substantive motions, including discovery motions, shall include a certificate of counsel affirming that, after consultation between the parties to the controversy, they are unable to reach an accord as to all issues or that all other

>  parties are in agreement with the action requested by the motion. Failure to attach such certification may be deemed **good grounds for denying** the motion.

LCrR 12.1(a). (emphasis added.)

Presumably, Local Criminal Rule 12.1 was designed to encourage the parties to resolve evidentiary issues through cooperation to prevent wasting the Court's time with unnecessary motions.

Here, several of the issues raised in the Government's motion could have easily been resolved through simple consultation. For example, the Government alleges several experts' testimony is irrelevant. If given the opportunity, counsel could have explained the relevance without having to involve the Court. Instead, the Government waited until the last minute and now files this request to exclude the evidence.

Additionally, counsel for Dr. Kumar agrees with the exclusion of certain testimony which they were not intending on eliciting from their experts. Specifically, counsel for Dr. Kumar will not elicit the following testimony:

- Dr. Farzan's statement that "no one can deny . . . .;"[1] and
- Dr. Seidman's statements regarding the clinical treatment of patients for records he did not review.

Again, this could have been resolved through consultation. The Government should be held accountable for failing to confer in good faith with counsel and the motion should be denied. While the Court is not mandated to deny the motion, good cause exists to do so in this case. The Government will not be prejudiced in any way by such ruling. At trial, the Government will still

---

[1] The entire statement at issue is Dr. Farzan's opinion that "no one can deny the fact that this provider's approach is within the limits of the standard of care." Counsel agrees not to elicit "no one can deny," but believes the remainder of the statement is admissible. *See* Section D.

be permitted to vigorously cross-examine witnesses and object to specific evidence they believe is inadmissible. However, the Government's premature motion should be denied.

### B. Experts were timely disclosed consistent with Criminal Rule 16, the Local Rules, and the Court's Order.

On October 14, 2025, the Court ordered Dr. Kumar to produce his expert disclosures within three days.[2] Up until that Order, counsel relied in good faith upon the Local Rules which permitted expert disclosures up to twenty-eight (28) days prior to trial. LCrR 16.1(c)(2).[3] Dr. Kumar complied with the Court's Order and disclosed seven (7) expert witnesses on October 17, 2025. At the time of disclosure, most of the expert reports were complete. Due to the expedited deadline, and other factors, a few reports noted they may need to be supplemented. Counsel agreed to provide such supplemental disclosures no later than twenty-eight (28) days before trial.

On November 3, 2025, Dr. Kumar provided supplemental disclosures for three (3) of the seven (7) experts. The supplemental disclosures are limited in nature, and appropriate given the circumstances. Further, the Government cannot show they suffered any harm or prejudice from the supplemental disclosures provided twenty-eight (28) days before trial, and only four (4) days after they filed their Second Superseding Indictment.

---

[2] The Government appears to argue that this Court set a deadline at the Scheduling Conference on August 12, 2025, for the Parties to complete their expert disclosures. (*See* Government's Motion, ECF No. 139, at 3.) That is not correct. (*See* Order Denying as Moot Joint Motion for Amended Scheduling Order, ECF No. 105; Minute Entry for Scheduling Conference, ECF No. 96; Scheduling Order, ECF No. 97.)

[3] Local Criminal Rule 16.1(c)(2) provides:

> If the defendant intends to call an expert witness at trial, the defendant shall notify the United States Attorney in writing at least 28 days before trial of the existence of the expert witness and shall provide a copy of the expert witness's report or a summary of the expert witness's anticipated testimony.

5

Here, Dr. Kumar complied with the Court Ordered deadline of October 17, 2025, in disclosing each and every one of the seven (7) experts he intends to call at trial. Additionally, to the extent that limited supplemental disclosures were necessary, it was completed in accordance with the Local Rules. Such disclosures were timely and appropriate.

Specifically, the Government takes issue with timeliness of the following:

- Dr. Christopher Palenik's request to supplement his report, if needed;
- Jordan Johnson and Ryan Vaughn's disclosure of specific insurance data relating to all gynecologists in Tennessee; and
- Dr. Garcia's report.

(*See* Government's Motion, ECF No. 139, at 3–4.)  Each concern is easily disregarded.

First, no supplemental disclosures were garnered, nor produced regarding Dr. Palenik, thus that request is moot. Likewise, the concern regarding the data contained in Mr. Johnson's and Mr. Vaughn's report was promptly produced upon undersigned counsel learning that the Government did not receive it because it was inadvertently not included in Defendant's discovery production. The Government filed their Motion on November 3, 2025, and the data was turned over on November 7, 2025, just four days after learning it was inadvertently not included with the initial discovery.[4] Both of these issues could have been resolved by consultation. Yet, the Government opted to move the Court to exclude such evidence.

---

[4] Additional data was disclosed on November 7, 2025, which was in direct response to the Second Superseding Indictment filed on October 30, 2025. Because that information was not known to Dr. Kumar until the Government filed the Second Superseding Indictment, such information was timely disclosed to the Government.

6

The third issue raised by the Government is the timeliness of Dr. Garcia's report. Up until the Court ordered expert disclosures produced by October 17, 2025, counsel relied on the Local Rules for disclosures. That deadline was November 3, 2025. In good faith, counsel relied on the Local Rules absent other deadlines. As soon as the Court ordered the earlier deadline, counsel complied, disclosing a summary of Dr. Garcia's testimony on October 17, 2025. She was unable to complete her report before the Court's deadline, because part of her review hinged upon her tour of Poplar Avenue Clinic, which occurred on Monday, October 13, 2025. Further, Dr. Garcia had prearranged travel from October 15, 2025, through October 20, 2025. Upon her return, Dr. Garcia completed her report, which was provided to the Government on November 3, 2025.

All experts were disclosed by October 17, 2025, to the fullest extent possible.[5] There were several areas of the experts' testimony that could not be produced within three (3) days of the Court's order. Those supplements (for Dr. Farzan, Dr. Garcia, and Jordan Johnson and/or Ryan Vaughn) were produced by November 3, 2025, which is 28 days before trial. *See* L.Cr.R. 16.1(c)(3).

Dr. Kumar has done his best to keep step with the Government's evolving theories of prosecution. The Government has repeatedly altered their strategy, by superseding on two occasions, changing the underlying data (upon which some of our experts relied), and altered their theory of the case.

The Government has failed to articulate any prejudice it suffers from the disclosures made on November 3, 2025. Nothing in the disclosures on October 17, 2025, nor the limited

---

[5] It should not be overlooked that the Government disclosed three (3) experts on October 14, 2025, and superseded for the second time on October 30, 2025.

7

supplemental disclosures on November 3, 2025, prejudice the Government. Such disclosures were timely, in accordance with the rules, and the Court's Order.

### C. The Proposed Expert Testimony is Supported by Each Witness's Education, Training, Experience and Specialized Knowledge.

The Government next argues that the following statements by Dr. Kumar's experts are unsupported opinions:

- Dr. Thahir Farzan's statement that "no patient has died from an endometrial biopsy";

- Dr. Farzan's statement that "restricting the ability to do endometrial biopsies will certainly harm patients"; and

- Dr. Ramzy Rimawi's statement that the hysteroscopes were disinfected according to standards for semi-critical devices.

Each statement is permissible opinion testimony based on the expert's education, training, experience and specialized knowledge.

Dr. Farzan's statement regarding the risk of death for a patient undergoing an endometrial biopsy is permissible opinion testimony based upon his medical training and experience. Dr. Farzan can certainly testify based on his knowledge, experience and training as to whether he is aware of any patient ever dying from an endometrial biopsy. A medical doctor is aware of the potential risks of a medical procedure which he, himself, performs. Here, he is opining based on his own experience, that no one has died from an endometrial biopsy. The Government has the right to cross-examine him and challenge his opinion. Likewise, he can testify that, in his opinion, restricting the ability to do biopsies will harm patients. The Government again can cross-examine him if they disagree. Opinion testimony is just that. Dr. Farzan should be permitted to give his opinions if a sufficient foundation is laid for such opinion, consistent with the Rules of Evidence.

Dr. Rimawi's opinion that hysteroscopes were disinfected according to standards for semi-critical devices is permissible opinion testimony. The first part of his opinion relates to the standard of care related to the cleaning or reprocessing of hysteroscopes, which he opines are "semi-critical devices." The second part of his opinion relates to the disinfection standards applied to such devices. The basis for his opinion stems from his training, experience, knowledge, and the materials he reviewed.[6] The Government again has the right to challenge the basis for his opinion through vigorous cross-examination.

### D. The Proposed Testimony is Relevant.

The Government vaguely argues certain proposed expert testimony is irrelevant. Specifically, the Government argues the following is irrelevant:

- Dr. Farzan's testimony that Dr. Kumar's "approach is within the limits of the standard of care;"

- Centers for Medicare & Medicaid Services ("CMS") rules and procedures;

- The difference in cost of an in-office hysteroscopy vs. in a hospital;

- Dr. Garcia's tour of the Poplar Avenue Clinic in 2025;

- Dr. Seidman's testimony as a gynecological pathologist; and

- Dr. Palenik's testing on a sealed Uro-V Cystoscope Diagnostic Cannula.

"Evidence is relevant if . . . it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401. To be relevant, evidence

---

[6] The Government states in its Motion that Dr. Rimawi reviewed "several documents . . . that were not disclosed to the government." ECF No. 139, at 5. However, they do not articulate which documents they believe they are missing, despite Dr. Rimawi listing out the exact records he reviewed. A majority, if not all, documents were produced to Dr. Rimawi directly from the Government's discovery. Again, had the Government consulted on this matter, it likely could be resolved short of the involvement of the Court.

must, at least, be "a step on one evidentiary route to the ultimate fact" at issue. *Old Chief*, 519 U.S. at 179 (1997).

Here, a majority of the testimony the Government claims is "irrelevant" is precisely the core of the charged counts. Specifically, the health care fraud charges contained in Counts 37-46 put at issue the medical necessity of hysteroscopy biopsy procedures performed at Poplar Avenue Clinic and require the Government to prove beyond a reasonable doubt that Dr. Kumar had the intent to defraud Medicare and/or Medicaid in billing for such alleged unnecessary procedures. Therefore, Dr. Farzan's testimony regarding the "standard of care" is precisely what Counts 37-46 are about—medical necessity.[7] If a procedure is within the standard of care, then it makes it more likely that such procedure was medically necessary. In other words, such evidence is relevant.

Likewise, evidence related to CMS's rules is relevant to Counts 37-46. The crux of the health care fraud charges is whether Dr. Kumar knowingly and willfully defrauded CMS or Medicaid by submitting false or fraudulent claims. The fact that CMS provides no limitations on the number of hysteroscopy claims per patient (i.e. the lack of NCDs and LCDs), is relevant to whether Dr. Kumar intended to defraud CMS. Likewise relevant to evidence of intent to defraud, is the fact that the cost of an in-office hysteroscopy is significantly cheaper than the cost of the same procedure in a hospital. The cost savings applies to both the insurer, such as Medicare and Medicaid, as well as the patient who is responsible for co-pays. Therefore, it tends to make it less likely that Dr. Kumar had the intent to defraud when he performed hysteroscopies in-office, and is therefore relevant.

---

[7] As noted in Section I, counsel agrees with the exclusion of generalizations such as "no one."

Dr. Garcia's tour of Poplar Avenue Clinic in 2025 is relevant to disproving the Government's adulteration and misbranding allegations. While Dr. Garcia toured the clinic in 2025, after the Clinic was closed. The Clinic was relatively untouched since the time of closure. The equipment and supplies on site were present at the Clinic on the day of the search warrant, as is evidenced by photographs produced by the Government in discovery. Her on-site view provided context to the photographs and documents recovered from the search warrant that she reviewed. Further, it provided her the opportunity to see firsthand whether the Clinic had the equipment necessary to properly reprocess the hysteroscopy devices. Again, equipment that was at the Clinic on the day of the search warrant. To exclude such evidence outright is inappropriate. The Government seeks to admit evidence over a five-year time period. Certainly, not all of that evidence is relevant. Here, Dr. Garcia is testifying only to what she observed, in accordance with what she observed from photographs of the Clinic at the time. Such observations are relevant. The Government can certainly raise their concerns over the passage of time on cross-examination.

Dr. Seidman's testimony as a gynecological pathologist is also relevant expert testimony. Surgeons, such as Dr. Kumar, and pathologists frequently work hand-in-hand in managing patient care. Pathologists routinely advise clinicians regarding their observations of the tissue. This advise can directly impact patient care. The Government's own expert relies on the results of pathology to form his opinion as to whether he believes additional procedures are necessary. Dr. Seidman's testimony provides further insight into the processes of performance of the pathology, which includes "a complete analysis of what is present in that tissue and writes a report describing exactly what was found." (*Dr. Seidman's Expert Disclosure,* ECF No. 121, at ¶ 2.) For the Government to allege this interpretation is only relevant to their expert only further illustrates their intent to prevent Dr. Kumar from presenting his defense. The pathology report, to which their expert relies

11

on, is completed by a pathologist. Dr. Seidman provides context to how those reports are created, the relevance those reports may have on clinical decision-making, and the inherent flaws with pathology review. (*Id.* at ¶¶ 2–3.) The crux of this case is whether Dr. Kumar intended to defraud Medicare and/or Medicaid. Information about the inherent flaws with the pathology processes, thus the potential need to repeat a biopsy, make it less likely he formed that intent to defraud. Therefore, such evidence is relevant and admissible.

Finally, Dr. Palenik's testing on a sealed Uro-V Cystoscope Diagnostic Cannula is relevant and admissible evidence. At the outset, the Government obtained an identical item which it used as control in their own testing. To match the Government's analysis, it was necessary to provide the same controls to Dr. Palenik. Additionally, in Dr. Palenik's testing of the sealed Uro-V Cystoscope Diagnostic Cannula, he observed a fiber. This is relevant as it makes it more likely that the sealed devices are not without "debris" as the Government's expert argues. Again, if the Government has specific concerns or questions related to Dr. Palenik's exam of the Uro-V Cystoscope Cannula those are best addressed through cross-examination.

### E. The Defendant is Not Required to Rely on the Government's Witnesses to Present his Case, thus Defendant's Experts are Not Cumulative.

The Government argues that two Defense experts are cumulative and the Defendant should rely on the Government's experts. (ECF No. 139, at 8–9.) For example, they argue "the government's expert will describe the undisputed process" on in-office hysteroscopies. (*Id.* at 8.) Additionally, they later argue, "[t]he government has an expert who will testify" to a myriad of information related to Medicare billing. (*Id.* at 9.) According to the Government, Defendant should rely on the Government's witnesses to present his case, and they attempt to prevent his use of experts as "cumulative." (*Id.*) Such argument is so preposterous, it is barely worthy of debate. Nowhere in the Constitution, the Rules of Evidence, or case law is a Defendant required to rely

solely on the Government's witnesses and presentation of evidence to defend himself. Instead, cases regarding cumulative evidence focus on one party's presentation of multiple witnesses who testify to the same thing. In those distinct cases, courts are permitted to limit cumulative evidence, including the number of experts who testify at trial. *Coal Resources, Inc. v. Gulf & Western Industries, Inc.,* 865 F.2d 761, 769 (6th Cir. 1989) (citing *Aetna Casualty & Sur. Co. v. Guynes*, 713 F.2d 1187, 1193 (5th Cir. 1983)). But courts should not do so "because of mere number," which would be an abuse of discretion. *Id*. (citing *Padovani v. Bruchhausen*, 293 F.2d 546, 550 (2d Cir. 1961)). For example, in *Pridemore-Turner v. Universal Health Systems,* 2021 U.S. Dist. LEXIS 249951 (E.D.T.N. Oct. 13, 2021), the Court denied Plaintiff's request pre-trial to limit the Defendants' designation of four expert witnesses as cumulative. Certainly, if the Court can deny such request in a civil case, the Court can do so in a criminal case where the stakes are much higher.

However, nothing in the Rules prohibits a Defendant from presenting an expert that contradicts a Government expert. Regardless, the Defendant's seven experts each offer distinct testimony related to their area of specialty. Jordan Johnson and Ryan Vaughn are testifying to data analysis; Dr. Thahir Farzan is testifying to the medical necessity of hysteroscopy biopsies; Dr. Christopher Palenik is testifying to the microscopy, microchemistry, and microanalysis of the seized devices; Dr. Jeffrey Seidman is testifying to gynecological pathology; Dr. Ramzy Rimawi, an infectious disease specialist, is testifying to standards of care for cleaning and disinfection and the prevention of the transmission of diseases; Sean Weiss is testifying to the Medicare and Medicaid rules, regulations, and processes; and Dr. Amy Garcia is testifying to the in-office process of hysteroscopies and cleaning or sterilization of devices. None are cumulative. And to the

extent that any of the Defendant's experts relate to the same field of testimony as a Government witness, the Defendant is not required to rely on their experts to present his defense.

### F. The Defendant's Proposed Experts are Competent to Testify, and Such Proposed Testimony is Within Their Scope of Expertise.

The Government also attempts to argue that Dr. Kumar's experts are not qualified, and such proposed testimony is outside the witness's expertise. Specifically, the Government argues the following:

- Dr. Garcia's testimony regarding "reprocessing or sterilization";
- Sean Weiss's testimony regarding the Medicare rules surrounding the use of scribes;
- Dr. Seidman's testimony regarding clinical treatment, proposed hypotheticals, and interpretation of pathology reports;
- Dr. Palenik's testimony regarding non-functional device(s).

Contrary to the Government's assertions, these experts will testify to information squarely within his/her area of expertise.

Dr. Garcia is an expert qualified to testify to "reprocessing or sterilization." As the Government notes in its Motion, "[a] medical doctor is generally competent to testify regarding matters within his or *her own professional experience." In re Aredia & Zometa Prods. Liab. Litig.*, 754 F. Supp. 2d 934, 936 (M.D. Tenn. 2010) (citing *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009)) (emphasis added). Here, Dr. Garcia is testifying, as a medical doctor, to matters within her own professional experience. She is testifying to the cleaning and sterilization processes of in-office hysteroscopy and biopsy medical devices, of which she has personally used or has knowledge of. Her CV, as well as her disclosure and supplemental disclosure, outline her qualifications. She has presented specifically on the topic of cleaning and sterilization of hysteroscopy devices in-office settings. Additionally, she can base her testimony on her own

14

experience, specialized knowledge and training. She reprocesses and sterilizes medical devices in her office, similar to the devices at issue in this case. If the Government has any other concerns regarding her qualifications, such issue can be raised at trial if counsel for Defendant fails to lay the proper foundation.

Likewise, Sean Weiss can testify to the Medicare rules, the same as Dr. McDonald. Dr. McDonald's opines that "scribes should be present" in the room while procedures are being performed. While Dr. McDonald does not lay the basis for that opinion, such opinion is only that, his opinion. With no foundational background, there is nothing that prevents Mr. Weiss from testifying to the Medicare rules to rebut Dr. McDonald's testimony when the Medicare rules specifically do not require scribes to be present. This opinion does not require medical training or expertise. Instead, it requires a knowledge of the Medicare rules, which Mr. Weiss possesses.

While the Defense agrees that Dr. Seidman will not present testimony regarding clinical treatment of patients, he can present testimony regarding the interpretation of pathology slides. That is precisely his area of expertise. As a gynecological pathologist, his medical training, experience, and specialized knowledge comes from reviewing the pathology and documenting such review in a report. Dr. Seidman is not presenting testimony on whether a biopsy is indicated in a given patient, to which he does not have the experience, but instead he is testifying distinctly to the process of pathology and interpretation of such review. It is difficult to understand how the Government rationalizes Dr. Seidman lacks the qualifications to complete such review.

Finally, the Government seeks to limit Dr. Palenik from testifying to the functionality of certain devices they seized from the Poplar Avenue Clinic. Non-functional devices do not require an expert to make that determination. Evidence seized in the Government's production is broken, bent, and in some cases completely separated. On their own, the Jury could see that such devices

are non-functional. Dr. Palenik purely notes what is otherwise obvious, a broken device cannot function. That is not expert opinion testimony, it is relevant, and it is therefore admissible.

### G.  Dr. Farzan Does Not Opine as to Dr. Kumar's Mental State.

Again, this is an argument that could have been resolved by consultation. Defendant agrees (and in fact identified the same argument in their expert's report) that mental state of a criminal defendant is not admissible. Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone").  However, the statement at issue is not related to Dr. Kumar's mental state or condition that constitutes an element of the crime charged or of a defense. Specifically, Dr. Farzan stated, "[k]nowing [Dr. Kumar's] interest [in studying endometrial cancer] it is likely that he is influenced by his own work and would go an extra mile in investigating high-risk patients for endometrial carcinoma to diagnose pre-cancerous lesion early enough to prevent an endometrial carcinoma." (*Farzan Disclosure*, ECF No. 125, at ¶ 3.) Nothing in this statement opines or presumes whether Dr. Kumar knowingly or willfully caused false claims to be submitted to governmental health care programs. Instead, Dr. Farzan merely makes the statement that Dr. Kumar's background, training and fellowship work was in the area of early detection of endometrial cancer, which could influence his work going forward. The statement does *not* opine that Dr. Kumar had the requisite knowledge to commit health care fraud, nor does it opine *he did not*. That decision is still left for the fact finder to determine.

## CONCLUSION

For the foregoing reasons, Dr. Kumar respectfully requests that the Court deny the Government's First Motion *in Limine* and reserve specific evidentiary rulings for trial.

Respectfully submitted,

s/ *Maritsa A. Flaherty*
Maritsa A. Flaherty (*pro hac vice*) (Cal. Bar No. 327638)
CHAPMAN LAW GROUP
1441 W. Long Lake Rd., Suite 310
Troy, Michigan 48098
(248) 644-6326
mflaherty@chapmanlawgroup.com

Lawrence J. Laurenzi (TN BPR No. 9529)
Elena R. Mosby (TN BPR No. 40562)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
901-524-5000
llaurenzi@bpjlaw.com
emosby@bpjlaw.com

Ronald Chapman, II (*pro hac*) (Mich. Bar No. P73179)
THE CHAPMAN FIRM
1300 Broadway
Detroit, MI 48226
Phone: (346) Chapman
Ron@chapmanandassociates.com

*Attorneys for Dr. Sanjeev Kumar*

17