IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**UNITED STATES OF AMERICA**

        **Plaintiff,**

VS.                                                                                               Criminal No. 25-cr-20032-SHL

**SANJEEV KUMAR,**

        **Defendant.**

---

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS 1-36 FOR FAILURE TO STATE AN OFFENSE**

---

The United States opposes defendant Sanjeev Kumar's motion pursuant to Fed. R. Crim. P. 12(b) to dismiss counts 1-36 of the Second Superseding Indictment for failure to state an offense. ECF 159. For the same reasons that the First Superseding Indictment properly stated an offense, the Second Superseding Indictment does as well. From several angles, the defendant claims counts 1-36 fail to specify adulterating acts; he says this level of specificity is required under 21 U.S.C. § 331(k). The defendant's claims are wrong. The Second Superseding Indictment adequately pleads the violations of the Food, Drug, and Cosmetics Act (FDCA) as set out in counts 1-36 and defendant's motion must be denied.

## STANDARD

"An indictment must be a 'plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Palma*, 58 F.4th 246, 249 (6th Cir. 2023) (quoting Fed. R. Crim. P. 7(c)(1)). "To be legally sufficient, an indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's

commission of the crime." *Id.* (internal quotation marks and citations omitted). "Although the statutory language of the offense may be used, it 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense.'" *Id.* (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)). "The court must look at the indictment as a whole, include facts which are necessarily implied, and construe it according to common sense." *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016) (quoting *United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982)).

**ARGUMENT**

**1.   Counts 1-36 of the Second Superseding Indictment clearly and unambiguously charge the elements of the statute at issue.**

Defendant's motion must be denied because counts 1-36 of the Second Superseding Indictment clearly and unambiguously charge the elements of the statute at issue. To test the sufficiency of a charging document, the Court should "first determine the elements of the charged offense, and then determine if the indictment adequately charges those elements." *United States v. Welborn*, 2022 WL 1276024, at *3 (6th Cir. Apr. 29, 2022).

The elements of 21 U.S.C. § 331(k) are as follows: (1) the conduct at issue involves a "device" as that term is defined in the FDCA, (2) the device had been shipped in interstate commerce, (3) the defendant "engaged in prohibited conduct with respect to the device, [(4)] while the device was 'held for sale (whether or not the first sale),' and [(5)] the prohibited conduct resulted in the device 'being adulterated[]'" or misbranded. *United States v. Jackson*, 126 F.4th 847, 855-56 (4th Cir. 2025) (quoting 21 U.S.C. § 331(k)).[1] "The prohibited conduct set out above

---

[1] The text of the statute prohibits the act of and the causing of "[t]he alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, tobacco product, or cosmetic, if such act is done

encompasses 'two distinct offenses,' the first relating to the label itself and potential misbranding and the second … relating to adulteration, which 'is concerned solely with deterioration or contamination of the commodity itself.'" *Id*. at 856 (quoting *United States v. Wiesenfeld Warehouse Co.*, 376 U.S. 86, 89-90 (1964)). The FDCA "states that a 'device shall be deemed to be adulterated' 'if it has been prepared, packed, or held under insanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health.'" *Id*. (quoting 21 U.S.C. § 351(a)(2)(A)). The FDCA also states that a reprocessed single-use device is misbranded, "unless all labeling of the device prominently and conspicuously bears that statement 'Reprocessed device for single use'" and provides the name of the person "responsible for reprocessing." 21 U.S.C. § 352(v).

Counts 1-16 of the Second Superseding Indictment deal with the adulteration of single use devices and allege the following in relevant part:

> On or about April 16, 2024, in the Western District of Tennessee and elsewhere, the defendant, SANJEEV KUMAR[,] with intent to defraud and mislead, did or caused acts to be done with respect to medical devices, specifically, the single use devices set out in the table below, while the medical devices were held for sale after shipment in interstate commerce, that resulted in the medical devices being adulterated.

ECF 136, Second Superseding Indictment, PageID 1211. A table then immediately follows listing on each row the corresponding count number, the device name, such as "Cooper Surgical Endosee PX Cannula," and the "HHS Room and Location," such as "Room H, countertop in liquid." *Id*. at PageID 1211-12. The table is followed by the statement "All in violation of 21 U.S.C. §§ 331(k),

---

while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded." 21 U.S.C. § 331(k).

3

333(a)(1), 333(a)(2), and 351(a)(2)(A), and 18 U.S.C. § 2." *Id*. at PageID 1212. Counts 17-32 deal with misbranding of reprocessed single use devices and allege the following in relevant part:

> On or about April 16, 2024, in the Western District of Tennessee and elsewhere, the defendant, SANJEEV KUMAR[,] with intent to defraud and mislead, did or caused acts to be done with respect to medical devices, specifically, the single use devices set out in the table below, while the medical devices were held for sale after shipment in interstate commerce, which resulted in the devices being misbranded within the meaning of 21 U.S.C. § 352(v).

*Id*. at PageID 1212-13. These counts are also followed by a table indicating the device name and location. *Id.* at PageID 1213. The table is followed by the statement "All in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 352(v), and 18 U.S.C. § 2." *Id*. at PageID 1213. Counts 33-36 mirror the adulteration charging language and table formatting of 1-16, with what are elsewhere in the Second Superseding Indictment described as hysteroscopes cleared for reprocessing. *Id*. at PageID 1214-15.

The Second Superseding Indictment also features background and overview sections incorporated by reference into counts 1-36. Paragraphs 3(b)-(d) of the background section allege the following:

> **b. Adulteration of single use hysteroscope devices**. KUMAR reused hysteroscope medical devices marked as "single use" on his patients without properly cleaning, disinfecting, and/or sterilizing the cannulas between use. The medical devices, which routinely contacted human tissue, discharge, and blood when inserted into the vagina and uterus, were not cleared by the United States Food and Drug Administration (FDA) to be reprocessed or reused. Nevertheless, across the relevant time period, KUMAR reused the devices as a routine business practice, often inserting the same device into more than one patient on the same business day under insanitary conditions. KUMAR billed health insurers including Medicare the value of the single use hysteroscope medical devices even when he was in fact reusing them. KUMAR increased his profits by not replacing the single use devices after every use.
> **c. Misbranding of single use hysteroscope devices**. Even if KUMAR and his staff attempted to reprocess the single use devices specified herein, they failed to label the reprocessed devices accordingly, as is required by

4

> law. KUMAR failed to inform his patients that the single use devices were reprocessed.
>
> **d. <u>Adulteration of reusable hysteroscope devices</u>**. KUMAR and his staff reused hysteroscopes that were cleared for reuse under strict reprocessing procedures to ensure that the devices were safe before reuse. However, KUMAR and his staff did not properly clean, disinfect, and/or sterilize the hysteroscope devices between uses and instead maintained the devices under insanitary conditions. The reusable hysteroscope devices routinely contacted human tissue, discharge, and blood when inserted into the vagina and uterus. KUMAR and his staff thereby routinely reused the devices on patients which were held under insanitary conditions between patient use. KUMAR also maximized his profits by reusing hysteroscope devices that were not adequately reprocessed.

*Id*. at PageID 1196-97 (capitalization and emphasis in the original). And paragraph 57 from the overview section, which is incorporated by reference into counts 1-32, alleges this:

> KUMAR directed his staff to prepare the aforementioned single use medical devices for reuse by soaking them in a plastic container of cleaning agents in the exam rooms. He further directed staff to change out the cleaning agent every two weeks, approximately. At times, multiple single use medical devices were placed in the same plastic container to soak together in the cleaning agent. Before reuse, the medical devices would be removed from the cleaning agent and rinsed under tap water. These efforts did not adequately reprocess the devices and caused them to be held in insanitary conditions whereby they may have been contaminated with filth, or whereby they may have been rendered injurious to health before use on future patients.

*Id*. at PageID 1210 (capitalization in the original).

As highlighted above, the Second Superseding Indictment adequately pleads the violations of § 331(k) because it tracks the language of the statute, and through the background and overview sections it "accompan[ies]" the statutory language "with such a statement of the facts and circumstances as will inform the accused of the specific offense." *Palma*, 58 F.4th at 249 (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)).

The defendant relies on *Russell v. United States*, 369 U.S. 749 (1962), for the proposition that the Second Superseding Indictment is too murky. ECF 159, Mot. to Dis., PageID 1479. The

*Russell* case, which the defendant calls "directly on point," *id*., dates back to the Committee of Un-American Activities where six separate defendants were indicted for not answering certain committee questions. There, "[e]ach of the indictments was identical and 'stat[ed] only that the questions to which answers were refused 'were pertinent to the question then under inquiry' by the subcommittee.'" *United States v. Weeks*, 636 F.Supp.3d 117, 122 (D.D.C. 2022) (quoting *Russell*, 369 U.S. at 752). *Russell* is entirely distinct from the instant case. There, the allegations truly tracked just the language of the statute and nothing more. Here, there are lengthy sections of overview and background incorporated by reference into counts 1-36, nearly all of which provides detail to flesh out the charges. Those background and overview sections highlighted above are especially clear and detailed in apprising the defendant of the allegations against him and go far beyond merely tracking that language of § 331(k). The Second Superseding Indictment in this case is nothing like the charging documents in *Russell*.

**2.    Upholding Defendant's pleadings arguments would require a tortured and nonsensical reading of the FDCA.**

The defendant contends that the Second Superseding Indictment must specify the number and date of each and every adulterative act underlying each charge. ECF 159, Mot. to Dis., PageID 1481. As an initial matter, the defendant appears headed down a path already foreclosed by this Court in its previous order granting the defendant's motion to dismiss counts 5-9, 12-13, 16-18, 21-22, and 25 of the Superseding Indictment as duplicitous. ECF 124, Order on Motions, PageID 1049. There, in dismissing the several counts already referenced, the Court stated that the government must present its evidence "through the properly charged counts, Counts 10-11, 14-15, 19-20, 23-24, and 26, which allege single instances of adulterating or misbranding single devices recovered during the April 16, 2024 search of Kumar's clinic." *Id*. (citing ECF 91, Def's Reply,

6

PageID 749).[2] The counts spoken of approvingly by the Court were the predecessors to what are now charged as counts 1-36. Each count charges one adulterated or misbranded device recovered during the April 16, 2024 search of Kumar's clinic. The Court has already approved of this charging design and should likewise approve it again.

Still, though, the defendant claims that the government cannot rely on "the date a device was found in cleaning solution [as] the date of the act" because "the FDCA requires the commission of any act." *Id*. at PageID 1482.[3] The defendant claims that exposing a device to insanitary conditions is not an adulterative act, that there must be something apart. *Id*. But this contention requires a nonsensical reading of the FDCA and is squarely at odds with the caselaw. The Supreme Court in *United States v. Weisenfeld Warehouse Company* expressly describes the "'holding' or storing" as the prohibited act itself:

> Section 301(k), read together with the definition of food adulteration contained in s 402(a)(4), therefore, gives ample warning that **the 'holding' or storing of food under insanitary conditions** whereby it may have become contaminated **is prohibited**.

---

[2] The instant Motion to Dismiss seeks to rely on *United States v. Salerno* to support Kumar's arguments that the Second Superseding Indictment insufficiently charges a single act. ECF 159 at PageID 1483. *Salerno*, No. 3:10-CR-301, 2011 WL 6141017 (M.D. Pa Dec. 9, 2011) is a decision about duplicity, not failure to state an offense.

[3] Although not specifically stated so here, the defendant has asserted in several motions and in open court during the recent status conference that the search warrant on April 16, 2024, was executed "before any patients were seen at Poplar Avenue Clinic." *See, e.g.,* ECF 144 at PageID 1291. However, there were 18 patient names listed on a sign-in sheet at Poplar Avenue Clinic at the execution of the search warrant (a copy of which has been produced to defendant in discovery.) Additionally, the TennCare billing data, which has also been produced to defendant, includes an evaluation and management charge for a patient whose name appears on the sign-in sheet, date of service April 16, 2024, with Sanjeev Kumar as rendering provider. Additionally, several witnesses will testify at trial that law enforcement had to retrieve patients who were already in examination rooms during the execution of the search warrant.

376 U.S. 86, 91 (1964) (emphasis added) (holding also, "It is equally clear from this legislative history that Congress intended to proscribe the particular conduct charged in the information below [under Section 301(k) of the FDCA[4]]—*the holding of food under insanitary conditions* whereby it may have been contaminated") (emphasis added). The Supreme Court's interpretation in *Weisenfeld Warehouse Company* is entirely in agreement with the Congressional intent behind the passing of 21 U.S.C. § 331(k). In analyzing the various violations of the FDCA, the Supreme Court noted that, "the House Committee Report noted that 'the amended section would penalize, among other acts resulting in adulteration or misbranding, *the act of holding articles under insanitary conditions whereby they may become contaminated with filth or rendered injurious to health*' and emphasized that the Committee intended the amendments to be applied to their fullest constitutional limits." *Id*. at 90 (emphasis added); *United States v. Sullivan*, 332 U.S. 689, 696-697 (1948). *See also Kordel v. United States*, 335 U.S. 345, 349 (1948) (urging courts to use a common-sense reading of the Act, rather than a technical or restrictive one); *United States v. Urbuteit,* 335 U.S. 355, 357-58 (1948) ("The problem is a practical one of consumer protection, not dialectics.") Defendant's interpretation of the FDCA would require a charging document to identify the specific rodent that rendered a grain warehouse unsanitary and on which day. The FDCA and its caselaw do not require such an absurd result. *See, e.g., United States v. Gel Spice Co*., 601 F. Supp. 1214, 1221 (E.D.N.Y. 1985) ("[O]ne unsanitary condition may support multiple convictions based on different foods.").

By extension, holding a device under insanitary conditions can of course serve as an "act" that results in the device being contaminated with filth or rendered injurious to health. As the Ninth Circuit noted in *Kaplan*, single use devices are meant to be "consumed" just like a drug (or food

---

[4] Codified at 21 U.S.C. § 331(k).

product). 836 F.3d 1199, 1210 (9th Cir. 2016) (continuing, "[e]ven a physician can make a product dangerous for a patient if the product is utilized improperly."). The Second Superseding Indictment's charging language is entirely consistent with the requirements of the charge and the caselaw on point.

The defendant continues to allege that he is unable to prepare for trial because the Second Superseding Indictment does not specify which victims were defrauded or misled[5] and that the "act" for purposes of a violation of 21 U.S.C. § 331(k) is when the device is actually "reused." (ECF No. 159, PageID 1482). He further claims that, without information linking each patient or procedure to a specific device, the Second Superseding Indictment does not charge an offense under the FDCA and the counts should be dismissed with prejudice. *Id.* at PageID 1483.

The government clarified, *supra*, holding of a device under insanitary conditions can constitute an adulterative act, as is clear from the statute and the case law. Here, the Second Superseding Indictment alleges in background and overview sections already quoted, *supra*, that the devices were held under insanitary conditions, while held for sale, at the defendant's clinic on April 16, 2024. A device is "held for sale" while it is offered for use in the medical practice and

---

[5] The defendant also, in passing, claims that the indictment is insufficient for failure to allege specific victims with regard to the "intent to mislead or defraud" element. However, as the statute itself does not specify *who* must be defrauded or misled to trigger the felony provisions of 21 U.S.C. § 333(b), an indictment is sufficient as long as it alleges that a defendant committed the offense "with the intent to defraud or mislead." *See, e.g., United States v. Arlen*, 947 F.2d 139, 144-45 (finding that the indictment alleging a felony violation of the FDCA was sufficient and noting that "the prosecution must prove beyond a reasonable doubt that a defendant intended to defraud or mislead someone, but the indictment need not specify the intended victim; the focus is on the defendant's intent, not the victim's identity"); *United States v. Orrego-Martinez*, 575 F.3d 1, 7 (1st Cir. 2009) (holding that the indictment charging an FDCA felony offense adequately informed the defendant of the charges and noting that the defendant's argument to the contrary "mistakenly assumes that the indictment needed to identify the defrauded or misled victim(s)"). The *Arlen* court also noted that "[s]imilarly, the indictment is not insufficient because it fails to identify the means of deceit." 947 F.2d at 145.

there is no requirement that the products were *actually used* in order to violate 21 U.S.C. § 331(k). *See United States v. Evers*, 643 F.2d 1043, 1049-50 (5th Cir. 1981) ("Doctors holding drugs for use in their practice are clearly one part of the distribution process, and doctors may therefore hold drugs for sale within the meaning of section 301(k) [331(k)] of the Act"); *United States v. Diapulse Corp. of America*, 514 F.2d 1097 (2d Cir. 1975) (upholding lower court decision that devices *intended* to be used by practitioners for use in the treatment of patients is properly considered "held for sale" under the FDCA), cert. denied, 423 U.S. 838 (1975)); *United States v. 10 Cartons, Labeled in Part "Hoxsey,"* 152 F.Supp. 360, 364-5 (W.D. Penn. 1975) ("The terms 'while held for sale' have been given an expansive rather than technical construction").

In attempting to follow the defendant's argument, it appears that the defendant is asking this Court to find that there is no violation of the FDCA until an adulterated (or misbranded) device is *actually used* on a patient. This constrained reading of 21 U.S.C. § 331(k)—requiring patients to be victimized in order to have a violation of the FDCA—frustrates the purpose of the FDCA and goes against the courts that have addressed this issue. In *Sullivan*, the Supreme Court noted that the FDCA "as a whole was designed primarily to protect consumers from dangerous products" and "[i]ts purpose was to safeguard the consumer by applying the Act to articles from the moment of their introduction into interstate commerce *all the way to the moment of their delivery to the ultimate consumer. . .* The words of paragraph (k), 'while such article is held for sale after shipment in interstate commerce' apparently were designed . . . to extend the Act's coverage to *every article* that had gone through interstate commerce until it finally reached the ultimate consumer." *Sullivan*, 332 U.S. at 696-97 (emphasis added); *Kaplan*, 836 F.3d at 1208 (noting that the FDCA's overall purpose is to *protect* consumers from dangerous products) (citing *Sullivan*); *United States v. Articles of Animal Drug Containing Diethylstilbestrol*, 528 F.Supp. 202, 205 (D. Neb. 1981)

("Indeed, whenever there is a problem of construction involving the federal food and drug law, the duty of courts is to liberally construe provisions of the Act, *being mindful of its overriding purpose to protect the lives and health of the public*." (emphasis added)). Thus, as numerous courts have recognized, the entire purpose of the FDCA is to prevent articles that are injurious to consumer health from reaching consumers, and it would subvert this well-settled purpose if physicians who adulterate drugs and devices prior to using them on patients were exempt from the statute.

3. **The Second Superseding Indictment does not put the defendant at risk of double jeopardy.**

The defendant also alleges that counts 1-16 of the Second Superseding Indictment put the defendant at risk of double jeopardy. ECF 159, Mot. to Dis., PageID 1485. The defendant's claim here is that he must know the exact patient and procedure upon whom a reused device was used to defend from a later prosecution. *Id*. "The general test for whether two violations constitute the same or different offenses is whether each violation requires proof of an additional fact that the other does not. *United States v. Gel Spice Co., Inc.*, 601 F.Supp.1214, 1229 (1985) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Here, like in *Gel Spice*, another FDCA case, each violation pleads enough facts regarding each regulated product and the circumstances of its adulteration to be distinguished from potential subsequent prosecutions; in particular, the indictment pleads a particular device name, device manufacturer, location, date, and, as overview, device purchase history. Counts 1-16 do not risk exposing the defendant to double jeopardy.

## CONCLUSION

Defendant's motion to dismiss counts 1-36 must be denied because each count adequately pleads violations of § 331(k).

Respectfully submitted,

By:   /s/ Scott P. Smith
Assistant United States Attorney
167 N. Main Street, Suite 800
Memphis, TN 38103
Telephone: (901) 544-4231

## CERTIFICATE OF SERVICE

I, Scott Smith, Assistant United States Attorney, do hereby certify that a copy of the foregoing pleading was forwarded by electronic means via the Court's electronic filing system, and via email to the attorneys for the defendant.

This 12th day of November, 2025.

                                              /s/ Scott P. Smith
                                              Assistant United States Attorney