IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SANJEEV KUMAR, ) <br> Defendant. ) | No. 2:25-cr-20032-SHL-1 |

**ORDER GRANTING IN PART AND DENYING IN PART
GOVERNMENT'S MOTION TO USE PSEUDONYMS**

Before the Court is the Government's Motion to Use Pseudonyms, filed October 28, 2025. (ECF No. 132.) The Government intends to call as witnesses ten former patients of Poplar Avenue Clinic ("PAC"), the clinic operated by Defendant Sanjeev Kumar. (Id. at PageID 1127.) It seeks an order permitting these witnesses "to testify at trial under pseudonyms" and placing "related trial exhibits under seal." (Id. at PageID 1123.) Kumar responded to the Motion on November 10. (ECF No. 170.) The Parties briefly argued the motion at the November 14 Final Report Date. (ECF No. 175.)

For the reasons stated below, the Motion to Use Pseudonyms is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

A full recitation of the facts is found in the Background section of a recent order in this matter. (See ECF No. 172 at PageID 1572–73.) Briefly, Kumar is an obstetrician-gynecologist and oncologist who operated PAC, a women's health practice in Memphis, Tennessee. (ECF No. 136 at PageID 1195.) The Government asserts that, on or about April 16, 2024, Kumar "adulterated" single-use hysteroscopes in his clinic, that is, he reused on multiple patients the

same disposable devices, which are instruments inserted through the vagina to inspect the uterus. (Id. at PageID 1211.) The single-use devices were reused, the Government contends, "after being partially dipped in a liquid chemical disinfectant and briefly rinsed on the outside with tap water between most uses. This attempted reprocessing neither disinfected nor sterilized the instruments." (ECF 83 at PageID 661.)

The Government further alleges that Kumar repeated "medically unnecessary hysteroscopy procedures on patients." (ECF No. 136 at PageID 1196.) As a result, according to the Government, Kumar became "the top-paid provider in Tennessee for Medicare and Medicaid for hysteroscopy biopsy services" from September 12, 2019, to April 16, 2024. (Id. at PageID 1195.)

The Government plans to call as witnesses ten patients alleged to be victims here, each of whom wishes to remain anonymous. (ECF No. 132 at PageID 1127.) The Government seeks to refer to them by pseudonyms at trial and to seal the trial exhibits containing their true names. (Id. at 1127–28.)

## ANALYSIS

The Sixth Amendment guarantees to a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. However, "there is no absolute right of an accused to have a jury hear a witness's true name and address." Clark v. Ricketts, 958 F.2d 851, 855 (9th Cir. 1991). For example, in cases concerning sexual assault, the public "has a strong interest in protecting" victims' identities "so that other victims will not be deterred from reporting such crimes." Doe ex rel. Doe No. 1 v. Nygard, No. 20 Civ. 6501 (ER), 2020 WL 4890427, at *3 (S.D.N.Y. Aug. 20, 2020) (citation omitted).

Generally, the public is presumed to have a right of access to trial documents because federal courts need "a measure of accountability" and the public needs "confidence in the administration of justice." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995). However, "subject matter [that] is traditionally considered private rather than public" will weigh "more heavily against access." Id. at 1051. Examples of materials traditionally considered private include "[f]inancial records of a wholly owned business, family affairs, illnesses, [and] embarrassing conduct with no public ramifications." Id.

Here, the Government proposes to conceal from the media the identities of the patient-witnesses, using pseudonyms such as "Anna Smith" and "Beth Johnson." (ECF No. 132 at 1124.) The Government asserts that their true names are already known to Kumar and would not be hidden from the jury. (Id. at 1127.) The Government expects the witnesses to testify about personal details, including "their menstrual cycles, sexual history, sexually transmitted infection status, any prior pregnancies, wishes for future pregnancies, and generally, their reproductive health." (Id. at PageID 1127.) The witnesses will also describe the hysteroscopies performed on them by Kumar and the other providers he supervised. (Id.) As a result, they have each expressed a desire for privacy and an aversion to being "publicly associated with this case." (Id.)

The Government argues that the use of pseudonyms is a solution narrowly tailored "to protect the privacy and dignity of the Victims and to minimize negative impacts on [them] from testifying under their real names about highly sensitive and personal information." (ECF No. 132 at PageID 1127–28.) It cites cases in which courts have allowed witnesses to testify using only their first names, nicknames, or pseudonyms. See, e.g., United States v. Raniere, No. 20-3520-CR, 2022 WL 17544087, at *6–7 (2d Cir. Dec. 9, 2022). At the same time, contends the

Government, "the substance of the Victims' testimony will remain public," satisfying the public's interest in the proceedings. (ECF No. 132 at PageID 1128.)

The Government further argues that its request to file related exhibits under seal is likewise narrowly tailored to protect the witnesses' privacy. (Id.) To do otherwise, the Government contends, "would defeat the purpose of permitting the Victims to testify using pseudonyms." (Id.)

In response, Kumar states that he "does not oppose anonymizing the identities of the patients," nor "using only the patients' first names or first names with last initials." (ECF No. 170 at PageID 1563.) What Kumar opposes is using the particular pseudonyms—such as "Anna Smith" and "Beth Johnson"—proposed by the Government. (Id. at PageID 1564.) He contends that such names "would be confusing for the Court, the jury, counsel, and the multiple expert witnesses." (Id.) "The Government has not explained why the use of pseudonyms is the appropriate choice," argues Kumar, "given the multiple other alternatives to refer to the patients anonymously, including the alternatives used by courts in the Government's cited authorities." (Id.) Instead, Kumar states that he "has proposed using the patients' initials, [or] "Patient 1, Patient 2, Patient 3,' or a unique identifying number." (Id. at PageID 1563.)

Further, although "Kumar does not oppose sealing the patients' medical records," he "reserves the right to object to any other evidence being sealed." (Id. at PageID 1564.)

The witnesses have a valid interest in anonymity. They will be testifying publicly about an aspect of their lives that, without dispute, is "traditionally considered private." See Amodeo, 71 F.3d at 1050. At the same time, judicial efficiency requires a straightforward nomenclature to prevent confusion during trial. Balancing these interests suggests that the most appropriate naming convention is to refer to the witnesses as "Patient 1," "Patient 2," and so forth. Although

4

these names, unlike the fully pseudonymous "Anna Smith" and "Beth Johnson," may provoke curiosity about the witnesses' true identities, at the same time, they protect their privacy better than the use of first names or initials. Moreover, although it might be practicable for the Parties to use a pseudonym to refer to a single witness, it would be challenging to juggle two names—both real and false—for ten witnesses. A numbered naming convention makes the most sense here. Thus, the ten patients of PAC whom the Government will call as witnesses will each be referred to by a patient number and not by name.

Their privacy interest also extends to trial exhibits containing their true names, and not only their medical records, as Kumar contends. The Government is correct that unsealing the documents containing their names would defeat the purpose of granting them anonymity in the first place. And, because Kumar will continue to have access to the sealed documents, he will not be prejudiced. However, it is unclear to the Court at this point whether the documents should be sealed or redacted. Therefore, for any trial exhibits at issue other than the medical records, the Court will consider whether sealing or redaction is appropriate during the course of the trial.

## CONCLUSION

For the reasons stated above, the Government's Motion to Use Pseudonyms is **GRANTED** as to the use of the monikers "Patient 1," "Patient 2," and so forth, and **GRANTED IN PART** as to filing under seal the trial exhibits containing their real names. The medical records are to be filed under seal, but, as to any other documents, the Court will determine at trial whether to redact, seal, or neither. The Motion is **DENIED** as to the use of fictitious names.

**IT IS SO ORDERED,** this 17th day of November, 2025.

                                        s/ Sheryl H. Lipman
                                        SHERYL H. LIPMAN
                                        CHIEF UNITED STATES DISTRICT JUDGE