IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:25-cr-20032-SHL-1 |
| SANJEEV KUMAR, | ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION IN LIMINE (ECF NO. 157)**

Before the Court is Defendant Sanjeev Kumar's Motion in Limine to Exclude Government's Supplementally Noticed Rule 404(b) Evidence, filed November 6. (ECF No. 157.) Kumar seeks to exclude evidence of "allegedly unnecessary hysteroscopy procedures" on fifteen patients not mentioned in the Second Superseding Indictment ("Indictment"). (Id. at PageID 1461.) The Government filed its response to the Motion the next day. (ECF No. 168.)

For the reasons stated below, Kumar's Motion in Limine is **DENIED**.

**BACKGROUND**

Kumar is an obstetrician-gynecologist ("OB-GYN") and oncologist who operated Poplar Avenue Clinic ("PAC"), a women's health practice in Memphis, Tennessee. (ECF No. 136 at PageID 1195.) The Government asserts that, on or about April 16, 2024, Kumar "adulterated" single-use hysteroscopes in his clinic, that is, he reused on multiple patients the same disposable devices, which are instruments inserted through the vagina to inspect the uterus. (Id. at PageID 1211.) The single-use devices were reused, the Government contends, "after being partially dipped in a liquid chemical disinfectant and briefly rinsed on the outside with tap water between most uses. This attempted reprocessing neither disinfected nor sterilized the instruments." (ECF

83 at PageID 661.) According to the Government, Kumar also performed hysteroscopies using reusable hysteroscopes. (Id.) However, the Government contends that Kumar "did not properly clean, disinfect, and/or sterilize" these devices either. (ECF No. 136 at PageID 1196.) The Government recovered the devices at issue on April 16, 2024, during a search pursuant to a warrant. (ECF No. 83 at PageID 662.)

In addition to adulterating the devices, Kumar is also charged with "misbranding" the devices, meaning that he allegedly failed to add conspicuous labeling to the devices to indicate that they had been reprocessed, as required by statute. (Id.) As a result, the Government contends that patients "had no way of knowing that the defendant and other providers at PAC were exposing them to used instruments that had only been cleared by the FDA for single use." (Id.)

The Government further alleges that Kumar repeated "medically unnecessary hysteroscopy procedures on patients." (ECF No. 136 at PageID 1196.) As a result, according to the Government, Kumar became "the top-paid provider in Tennessee for Medicare and Medicaid for hysteroscopy biopsy services" from September 12, 2019, to April 16, 2024. (ECF No. 136 at PageID 1195.)

A federal grand jury returned the Indictment against Kumar containing forty-six counts:

- **Counts 1–16:** adulteration of single-use medical devices, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 351(a)(2)(A), and 18 U.S.C. § 2;
- **Counts 17–32:** misbranding of reprocessed single-use devices, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 352(v), and 18 U.S.C. § 2;
- **Counts 33–36:** adulteration of hysteroscopes cleared for reprocessing, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 351(a)(2)(A), and 18 U.S.C. § 2;
- **Counts 37–45:** health care fraud by conducting unnecessary procedures on nine patients in violation of 18 U.S.C. §§ 1347 and 2; and
- **Count 46:** health care fraud by making false statements in violation of 18 U.S.C. §§ 1347 and 2.

(ECF No. 136.) The trial begins December 1, 2025. (ECF No. 96.)

On November 3, the Government filed its Supplemental Notice of Intent to Offer Intrinsic Evidence, or Alternatively Evidence Under Federal Rule of Evidence 404(b) (the "Supplemental Notice"). (ECF No. 138.) Kumar, in turn, filed his Motion in Limine to exclude the evidence in the Supplemental Notice. (ECF No. 157.) That evidence includes "allegedly unnecessary hysteroscopy procedures" on fifteen patients, who are "not charged" in the Indictment. (Id. at PageID 1461.) According to Kumar, the evidence is irrelevant and inadmissible under Rules 403 and 404(b). (Id. at 1464.) For its part, the Government argues that its evidence is either intrinsic evidence or Rule 404(b) evidence offered for a proper purpose. (ECF No. 168 at PageID 1545–46.)

## APPLICABLE LAW

Intrinsic evidence is "inextricably intertwined with the criminal act charged . . . as opposed to extrinsic acts, which are those that occurred at different times and under different circumstances" from the criminal act. United States v. Churn, 800 F.3d 768, 779 (6th Cir. 2015). The trial court may "admit evidence regarding a defendant's unindicted criminal activity when that activity is 'intrinsic' or 'inextricably intertwined' with charges named in the indictment." Id. (emphasis in original) (citation omitted). Because intrinsic evidence "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense," it is generally not subject to Rule 404(b). United States v. Weir, No. 24-5335, 2025 WL 475099, at *5 (6th Cir. Feb. 12, 2025) (citation omitted). However, "[c]oncerned with the potential for abuse of background evidence as a means to circumvent Rule 404(b)," the Sixth Circuit has recognized "'severe limitations as to "temporal proximity, causal relationship, or

3

spatial connections" among the other acts and the charged offense.'" United States v. Adams, 722 F.3d 788, 810 (6th Cir. 2013) (citation omitted).

"Evidence of any other crime, wrong, or act" other than the crimes of Indictment "is not admissible to prove a person's character . . . ." Fed. R. Evid. 404(b)(1). But this "other acts" evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Before admitting Rule 404(b) evidence, courts must

> (1) make a preliminary determination as to whether sufficient evidence exists that the prior act occurred, (2) make a determination as to whether the "other act" is admissible for a proper purpose under Rule 404(b), and (3) determine whether the "other acts" evidence is more prejudicial than probative under Rule 403.

United States v. Poulsen, 655 F.3d 492, 508 (6th Cir. 2011) (citation omitted). If the government intends to use this evidence for a proper purpose, it must first "provide reasonable notice" to the defendant. Fed. R. Evid. 404(b)(3).

Finally, even relevant, otherwise-admissible evidence may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ANALYSIS

Kumar contends that the evidence of the additional fifteen hysteroscopy patients will be wielded against him as improper character evidence. (ECF No. 157 at PageID 1462–63.) He argues, quoting the Sixth Circuit, that "the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.'" (Id. (quoting United States v. Johnson, 27 F.3d 1186, 1193 (6th Cir. 1994)).) In other words,

4

according to the defense, "evidence of unnecessary hysteroscopy procedures for fifteen patients unnamed in the [Indictment] runs a substantial risk that the jurors will use the evidence to convict Dr. Kumar for crimes with which he is not charged." (Id. at PageID 1464 (citing United States v. Asher, 910 F.3d 854, 862 (6th Cir. 2018)).)

Not only is the evidence unfairly prejudicial, according to Kumar, but it is also dilatory. (Id.) Kumar asserts that, to put on evidence of fifteen allegedly unnecessary hysteroscopies, the Government will have to venture into additional expert testimony and "an examination of a patient's medical history and symptoms." (Id.) Because these fifteen patients are not mentioned in the Indictment, Kumar argues that this evidence would beget a "trial within a trial." (Id.) He seeks its exclusion because it "is substantially more prejudicial than probative, confuses the issues before the jury, and also misleads the jury." (Id.)

In response, the Government argues that the evidence is "crucial direct evidence of scheme and intent to defraud." (ECF No. 168 at PageID 1545.) It contends that, for the health care fraud charges in Counts 37–46, these patients' testimony is crucial "to determine what took place inside the treatment room." (Id. at 1547 (citing United States v. Russo, 480 F.2d 1228, 1232 (6th Cir. 1973) ("The prosecution produced 12 former patients of Dr. Russo and Dr. Lieberwitz who testified concerning their visits to the clinic and the treatment which they received. Some of the testimony related to acts referred to in particular counts of the indictment and some related to similar acts not charged in the indictment.")).)

According to the Government, the evidence of the fifteen additional patients is admissible either as intrinsic evidence or as Rule 404(b) "other acts" evidence. (Id. at PageID 1546–50.) First, the Government contends that the evidence is intrinsic to the conduct charged in the

5

Indictment because it concerns "the exact same type of hysteroscopy procedure as the charged conduct, performed at the same clinic . . . , and within the same time frame." (Id. at 1545.)

In the alternative, the Government asserts that the evidence is "admissible under Rule 404(b)." (Id. at PageID 1545–46.) The Government argues that it is proper Rule 404(b) evidence because it satisfies the Sixth Circuit's three-prong inquiry. (Id. at PageID 1548.) According to the Government, (1) witness testimony and medical billing show that the "other acts" actually occurred, (2) the "other acts" are probative of intent, motive, and other proper purposes other than character, and (3) "any potential prejudice is substantially outweighed by the evidence's probative value." (Id.) Expanding on the third element, the Government asserts that its evidence is admissible under the Rule 403 balancing test because "the intrinsic or 404(b) evidence is the exact same conduct, performed during the same time frame, and limited to only fourteen additional patients, only one of whom will be called by the government to testify." (Id.)

The Government leans heavily on United States v. Johnson, a case which Kumar also cites, which explains that

> [t]he rule might be stated as follows: where there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b).

27 F.3d 1186, 1192 (6th Cir. 1994). Here, according to the Government, it must prove Kumar's "intent to defraud" as an element of the health care fraud charges in Counts 37–46.[1] (Id. at

---

[1] The Government asserts that, to meet the elements of health care fraud under 18 U.S.C. § 1347, it must prove that Kumar

> (1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud.

PageID 1547.)  To prove the "intent to defraud" element, it seeks to offer evidence that "the defendant continually performed the same procedures on women regardless of indication, timeframe from last biopsy, or results from previous biopsy."  (Id.)  The Government argues that United States v. Owen is inapposite, despite Kumar's arguments, because the "other acts" evidence in Owen occurred two years after the charged conduct.  (Id. at PageID 1549–50 (citing No. 3:20-CR-70-RGJ, 2024 WL 815529, at *9 (W.D. Ky. Feb. 27, 2024)).)  Here, argues the Government, the "other acts" of the fifteen additional patients who received allegedly unnecessary hysteroscopies "more than satisfies the causal, temporal, and probative prongs of the 404(b) test."  (Id. at PageID 1550.)

The Government finally states that this Rule 404(b) evidence will not cause undue delay because it will come through the expert testimony of Matt McDonald, already on the witness stand, and only "one additional patient, pseudonym Jane Lee,[2] outside of the patients whose procedures are charged."  (Id. at PageID 1545.)  Thus, according to the Government, calling only one additional patient witness creates no danger of a "trial within a trial."  (Id. at PageID 1550.)

The evidence in the Government's Supplemental Notice is admissible as intrinsic evidence.  It is "directly probative of the charged offense" and "arises from the same events as the charged offense."  See Weir, 2025 WL 475099, at *5.  As argued by the Government, the evidence is relevant to at least one element the Government must prove.  (ECF No. 168 at PageID 1546.)  Even if it was not intrinsic, the Court concludes that it would also be admissible

---

(ECF No. 168 at PageID 1546 (citing United States v. Anderson, 67 F.4th 755, 770 (6th Cir. 2023)).)

[2] Rather than "Jane Lee," a patient number will be used to identify this and other patients at trial.  See ECF No. 178.

as 404(b) evidence offered for a proper motive, because it is relevant to material issues other than character.

Rule 403 does not bar the admission of the evidence. Because Counts 37–46 require the Government to prove Kumar's "scheme" and "intent to defraud," the probative value of the evidence of additional patients who received allegedly unnecessary hysteroscopies is high. Although this evidence carries a risk of invoking an emotional response in the jury, it does not present a substantial danger of unfair prejudice. Because this evidence concerns the same type of conduct as that charged in the Indictment, and because it appears to be in temporal proximity to it, it will not create new or unfair prejudice against Kumar. Because the relatively high probative value is not substantially outweighed by the comparatively low risk of unfair prejudice, confusing the issues, or misleading the jury, the Rule 403 balancing test favors admitting the evidence in the Government's Supplemental Notice. However, to the extent that the evidence raises the specter of undue delay and wasting time, "the Court reserves the right to limit needlessly presented cumulative evidence" as it arises. United States v. Al Asai, No. 3:16-CR-00149-01-RGJ, 2018 WL 5816769, at *11 (W.D. Ky. Nov. 6, 2018).

## CONCLUSION

For the reasons states above, Kumar's Motion in Limine is **DENIED**.

**IT IS SO ORDERED,** this 18th day of November, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE
