**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:25-cr-20032-SHL-1 |
| SANJEEV KUMAR, | ) ) | |
| Defendant. | ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
GOVERNMENT'S FIRST MOTION IN LIMINE (ECF NO. 139);
GRANTING GOVERNMENT'S SECOND MOTION IN LIMINE (ECF NO. 140);
AND DENYING DEFENDANT'S MOTION IN LIMINE (ECF NO. 148)**

Before the Court are three motions in limine related to expert and lay opinion testimony.

First, the Government filed its Motion in Limine Number One to Exclude Untimely, Irrelevant, Cumulative and Improper Expert Testimony from Amy Garcia, Thahir Farzan, Ramzy Rimawi, Christopher Palenik, Sean Weiss, Jeffrey Seidman, Jordan Johnson, and Ryan Vaughn on November 3, 2025 ("Government's First Motion in Limine"). (ECF No. 139.) Defendant Sanjeev Kumar filed his response in opposition on November 11. (ECF No. 173.)

Second, the Government filed its Motion in Limine Number Two to Preclude Improper Questions to Elicit Expert Testimony from Dr. Jona Bandyopadhyay Outside the Scope of Her Written Report on Cross-Examination on November 3 ("Government's Second Motion in Limine"). (ECF No. 140.) Kumar filed his response on November 6. (ECF No. 155.)

Third, Kumar filed his Motion in Limine to Exclude Government's Evidence of Non-Noticed Expert Opinions and Improperly Noticed Expert Opinions on November 3 ("Kumar's Motion in Limine"). (ECF No. 148.) The Government filed its response on November 7. (ECF No. 166.)

For the reasons stated below, the Government's First Motion in Limine is **GRANTED IN PART** and **DENIED IN PART**.  The Government's Second Motion in Limine is **GRANTED**.  Kumar's Motion in Limine is **DENIED**.

## BACKGROUND

Kumar is an obstetrician-gynecologist ("OB-GYN") and oncologist who operated Poplar Avenue Clinic ("PAC"), a women's health practice in Memphis, Tennessee.  (ECF No. 136 at PageID 1195.)  The Government asserts that, on or about April 16, 2024, Kumar "adulterated" single-use hysteroscopes in his clinic, that is, he reused on multiple patients the same disposable devices, which are instruments inserted through the vagina to inspect the uterus.  (Id. at PageID 1211.)  The single-use devices were reused, the Government contends, "after being partially dipped in a liquid chemical disinfectant and briefly rinsed on the outside with tap water between most uses.  This attempted reprocessing neither disinfected nor sterilized the instruments."  (ECF 83 at PageID 661.)  According to the Government, Kumar also performed hysteroscopies using reusable hysteroscopes.  (Id.)  However, the Government contends that Kumar "did not properly clean, disinfect, and/or sterilize" these devices either.  (ECF No. 136 at PageID 1196.)  The Government recovered the devices at issue on April 16, 2024, during a search pursuant to a warrant.  (ECF No. 83 at PageID 662.)

In addition to adulterating the devices, Kumar is also charged with "misbranding" the devices, meaning that he allegedly failed to add conspicuous labeling to the devices to indicate that they had been reprocessed, as required by statute.  (Id.)  As a result, the Government contends that patients "had no way of knowing that the defendant and other providers at PAC were exposing them to used instruments that had only been cleared by the FDA for single use." (Id.)

2

The Government further alleges that Kumar repeated "medically unnecessary hysteroscopy procedures on patients." (ECF No. 136 at PageID 1196.) As a result, according to the Government, Kumar became "the top-paid provider in Tennessee for Medicare and Medicaid for hysteroscopy biopsy services" from September 12, 2019, to April 16, 2024. (Id. at PageID 1195.)

A federal grand jury returned the Second Superseding Indictment ("Indictment") against Kumar containing forty-six counts:

- **Counts 1–16:** adulteration of single-use medical devices, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 351(a)(2)(A), and 18 U.S.C. § 2;
- **Counts 17–32:** misbranding of reprocessed single-use devices, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 352(v), and 18 U.S.C. § 2;
- **Counts 33–36:** adulteration of hysteroscopes cleared for reprocessing, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 351(a)(2)(A), and 18 U.S.C. § 2;
- **Counts 37–45:** health care fraud by conducting unnecessary procedures on nine patients in violation of 18 U.S.C. §§ 1347 and 2; and
- **Count 46:** health care fraud by making false statements in violation of 18 U.S.C. §§ 1347 and 2.

(ECF No. 136.) The trial begins December 1, 2025. (ECF No. 96.)

The Government turned over to Kumar its initial discovery on April 2 and made six subsequent productions of discovery between April 11 and October 22. (ECF No. 139 at PageID 1234-35.) Each time, the Government requested, but did not receive, reciprocal discovery from Kumar. (Id.) The Government also filed four expert witness disclosures on June 23 and three more expert witness disclosures on October 14. (Id.) On October 14, the Court ordered Kumar to produce reciprocal discovery and expert disclosures by October 17, and any rebuttal disclosures by October 31. (Id., ECF No. 118.) Kumar then produced the discovery and his seven witness disclosures on October 17, and no rebuttal disclosures. (Id.) He later filed three supplemental disclosures on November 3 for experts that he had earlier disclosed. (ECF No. 173 at PageID 1584.)

3

In all, the Government disclosed seven expert witnesses:

1.  Matt McDonald, a gynecologic oncologist with a focus on hysteroscopy
    with endometrial sampling (ECF No. 65);
2.  Shane R. Mull, a Medicare expert (ECF No. 66);
3.  Hannah E. Godschalk, a chemist who intends to testify about the presence
    of "foreign material" on devices seized from PAC (ECF No. 67);
4.  Poulomi Nandy, a microbiologist and FDA expert in obstetrical devices
    (ECF No. 68);
5.  Daniel Coney, a health care fraud investigator and expert in Medicare and
    Medicaid (ECF No. 115);
6.  Jona Bandyopadhyay, to be called as a fact witness, but disclosed as an
    expert to the extent that her testimony "requires her to apply knowledge and
    familiarity well beyond that of the average lay person" (ECF No. 116
    (citation modified)); and
7.  Jacob Stroup, to be called as a fact witness, but disclosed as an expert to the
    extent that his testimony "requires him to apply knowledge and familiarity
    well beyond that of the average lay person" (ECF No. 117 (citation
    modified)).

For his part, Kumar's eight expert witnesses are:

1.  Jeffrey D. Seidman, an expert in gynecological pathology (ECF No. 121);
2.  Sean M. Weiss, an expert in healthcare regulation (ECF No. 122);
3.  Ramzy H. Rimawi, a physician specializing in internal medicine,
    infectious diseases, and critical care medicine (ECF No. 123);
4.  Thahir Farzan, a physician specializing in gynecologic oncology (ECF No.
    125);
5.  Jordan Johnson, an expert in data analysis (ECF No. 126);
6.  Ryan Vaughn, an expert in data analysis (ECF No. 126);
7.  Christopher Palenik, an expert in microscopy, microchemistry, and
    microanalysis (ECF No. 128); and
8.  Amy Garcia, an expert in gynecology, in-office hysteroscopies,
    hysteroscopes, and their cleaning (ECF No. 129).

This order addresses the Government's two motions in limine and Kumar's one motion,

that seek to exclude subsets of these experts' testimony in addition to certain categories of lay

testimony.

## APPLICABLE LAW

The Government has a duty to disclose information about its expert witnesses.  Fed. R.

Crim. P. 16(a)(1)(G)(i).  "At the defendant's request, the government must disclose to the

defendant, in writing, the information required . . . for any testimony that the government intends

to use at trial under Federal Rule of Evidence 702, 703, or 705 during its case-in-chief . . . ." Id.

Upon the Government's request, a defendant must do the same, "if the defendant requests

disclosure . . . and the government complies." Fed. R. Crim. P. 16(b)(1)(C)(i). "If a party fails

to comply with this rule,"

> the court may: (A) order that party to permit the discovery or inspection; specify its
> time, place, and manner; and prescribe other just terms and conditions; (B) grant a
> continuance; (C) prohibit that party from introducing the undisclosed evidence; or
> (D) enter any other order that is just under the circumstances.

Fed. R. Crim. P. 16(d)(2).

"If a witness is not testifying as an expert, testimony in the form of an opinion is limited

to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly

understanding the witness's testimony or to determining a fact in issue; and (c) not based on

scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R.

Evid. 701.

However, a "witness who is qualified as an expert by knowledge, skill, experience,

training, or education may testify in the form of an opinion or otherwise if the proponent

demonstrates to the court that it is more likely than not that":

> (a)    the expert's scientific, technical, or other specialized knowledge will help
>        the trier of fact to understand the evidence or to determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert's opinion reflects a reliable application of the principles and
>        methods to the facts of the case.

Fed. R. Evid. 702. But "[i]n a criminal case, an expert witness must not state an opinion about

whether the defendant did or did not have a mental state or condition that constitutes an element

of the crime charged or of a defense.  Those matters are for the trier of fact alone."  Fed. R. Evid. 704.

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Evidence of any other crime, wrong, or act" other than the crimes of Indictment "is not admissible to prove a person's character . . . ."  Fed. R. Evid. 404(b)(1).  But this "other acts" evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Before admitting Rule 404(b) evidence, courts must

> (1) make a preliminary determination as to whether sufficient evidence exists that the prior act occurred, (2) make a determination as to whether the "other act" is admissible for a proper purpose under Rule 404(b), and (3) determine whether the "other acts" evidence is more prejudicial than probative under Rule 403.

United States v. Poulsen, 655 F.3d 492, 508 (6th Cir. 2011) (citation omitted).  If the government intends to use this evidence for a proper purpose, it must first "provide reasonable notice" to the defendant.  Fed. R. Evid. 404(b)(3).

Finally, even relevant, otherwise-admissible evidence may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

## ANALYSIS

Each of the Parties' three motions in limine is discussed below.

## I.    Government's First Motion in Limine (ECF No. 139)

In its First Motion in Limine, the Government "objects to five categories of proposed testimony which plainly violate evidentiary rules: (1) untimely and unsupported evidence; (2)

irrelevant evidence; (3) confusing and cumulative evidence; (4) testimony for which the expert

has no basis to testify; and (5) testimony regarding defendant's mental state at the time of the

charged offense." (ECF No. 139 at PageID 1234.)

Kumar responds, first, that the Government's motion is improper "for failing to consult

with counsel for Defendant prior to filing the instant motion" under Local Criminal Rule 12.1.

(ECF No. 173 at PageID 1580.) He asserts that "several of the issues raised in the Government's

motion could have easily been resolved through simple consultation" without "wasting the

Court's time with unnecessary motions." (Id. at PageID 1583.) Next, Kumar responds

substantively that the motion "is vague, improperly applies the Rules of Evidence, and is not

based on law." (Id.)

The Parties' specific arguments are detailed below.

### A.    Untimely and Unsupported

The Government argues that, when Kumar filed his expert disclosures on the October 17

deadline, several of the disclosures lacked "reports or complete opinions as ordered by the

Court." (ECF No. 139 at PageID 1236.) According to the Government, any additional

information filed after the deadline should be excluded under Rule of Criminal Procedure 16.

Specifically, the Government contends that Kumar did not fully comply with the Court's

October 17 deadline for expert disclosures, but instead stated that he would disclose additional

opinions "no later than 28 days before trial, pursuant to Local Rule 16.1(c)(2)." (Id.) But the

Government asserts that the Local Rules do not control the expert disclosure deadline because,

"as the Court reminded the parties in its [September 9 order], 'the deadlines the Court set at the

Scheduling Conference' are the controlling deadlines." (Id.) Thus, according to the

Government, any information or opinions disclosed after October 17 should be excluded as untimely.  (Id.)

Kumar responds that his three supplemental expert disclosures filed on November 3 were still filed twenty-eight days before the start of trial on December 1.  (ECF No. 173 at PageID 1584.)  He argues that the Government suffered no "harm or prejudice from the supplemental disclosures," which were filed "only four (4) days" after the Government's Second Superseding Indictment and which disclosed no new experts.  (Id. at PageID 1584–85.)

The Government requests the exclusion of the following five opinions or items of information as untimely and unsupported:

### 1.    *Jordan Johnson and Ryan Vaughn*

The Government seeks to exclude as untimely certain opinions of Jordan Johnson and Ryan Vaughn, who in their disclosure "compared [Kumar's] billing data for all insurers with other [OB-GYNs] in Tennessee for the years of 2020 to 2023" to find that "other providers" "billed more to insurance programs than Dr. Kumar."  (ECF No. 139 at PageID 1236–37.)  The Government asserts that it never received Kumar's billing to "all insurers" outside of Medicare or TennCare, nor any data on other Tennessee OB-GYNs.  (Id. at PageID 1237.)  Thus, according to the Government, "any comparison based on this unknown data should be excluded."  (Id.)  In response, Kumar asserts that the exclusion of some of Johnson's and Vaughn's data was inadvertent, and the data "was promptly produced" four days later.  (ECF No. 173 at PageID 1585.)

Because a four-day delay cannot be shown to have prejudiced the Government, the data contained in their report will not be excluded.  The Government's First Motion in Limine as to the timeliness of Johnson's and Vaughn's report is **DENIED**.

8

### 2.    *Christopher Palenik*

The Government seeks to exclude as untimely any late filings regarding Christopher Palenik, who stated in his disclosure that his "examination and analysis of the samples in this case remains ongoing, and he reserves the right to supplement or change this report with additional information."  (ECF No. 139 at PageID 1237.)  Kumar points out that no supplemental disclosure has been produced for Palenik, and "thus that request is moot."  (ECF No. 173 at PageID 1585.)

Based on the representation that no supplemental disclosure was made, and the assumption that none will be made, the Government's First Motion in Limine as to the timeliness of Palenik's testimony is **DENIED AS MOOT**.

### 3.    *Amy Garcia*

The Government seeks to exclude as untimely any late filings regarding Amy Garcia, who stated in her disclosure that "she has not had adequate time to complete her review" and that "[h]er report will be completed as soon as possible with her schedule."  (ECF No. 139 at PageID 1237.)

In response, Kumar contends that, as to Garcia's disclosure, he had been relying in good faith on the November 3 expert disclosure deadline imposed by the Local Rules when the Court on October 14 set a new three-day deadline.  (ECF No. 173 at PageID 1586.)  Because Garcia had at that time recently arrived in Memphis to tour PAC and could not write her report until after her return home on October 20, Kumar asserts that her November 3 supplemental disclosure was necessary.  (Id.)  Kumar also reiterates that the supplemental disclosure did not prejudice the Government, which Kumar, at the same time, faults for "repeatedly alter[ing] [the Government's] strategy, by superseding on two occasions, changing the underlying data (upon

which some of our experts relied), and alter[ing] their theory of the case." (Id. at PageID 1586–87.)

It is not to be overlooked that Kumar's choice to wait nearly half a year after his Indictment to begin disclosing experts in this case contributed to the last-minute rush of which he stridently complains. Nor is Kumar completely correct that his "disclosures were timely, in accordance with the rules, and the Court's Order." (Id. at PageID 1587.) However, because he did timely disclose Garcia as an expert, and because there is no indication that the Government has been prejudiced by the late filing of her supplemental report, its contents will not be excluded. The Government's First Motion in Limine as to the timeliness of Garcia's testimony is **DENIED**.

        *4.    Thahir Farzan*

The Government seeks to exclude as unsupported both "lay witness evidence without personal knowledge" and expert testimony "without support" by Thahir Farzan. (ECF No. 139 at PageID 1238.) In his disclosure, Farzan stated, "No patient has died of an endometrial biopsy, but many have died due to the treating physician failing to do the biopsy or failing to repeat the biopsy in time," and opined that "restricting the ability to do an endometrial biopsy of a qualified surgeon will certainly harm the patients he or she cares for." (Id.) The Government argues that "Farzan has not provided any reference or support for these statements." (Id.)

Kumar responds that these statements are permissible expert opinion. (ECF No. 173 at PageID 1587.) "Farzan can certainly testify based on his knowledge, experience and training as to whether he is aware of any patient ever dying from an endometrial biopsy." (Id.)

The Government is free to cross-examine Farzan about his statements, and to object to overly broad testimony, but these statements are not clearly outside the expertise of a treating

physician.  The Government's First Motion in Limine as to Farzan's unsupported testimony is **DENIED**.

        5.    *Ramzy Rimawi*

The Government seeks to exclude as untimely and unsupported any opinion derived from unknown sources by Ramzy Rimawi, who opined in his report that "[t]he hysteroscopes in this case were disinfected according to standards for semi-critical devices" without any evidence, according to the Government.  (ECF No. 139 at PageID 1238.)  The Government further asserts that it never received two pages of the documents reviewed by Rimawi.  (Id.)

Kumar responds that Rimawi's opinion "stems from his training, experience, knowledge, and the materials he reviewed."  (ECF No. 173 at PageID 1588.)  He encourages the Government to probe his opinion "through vigorous cross-examination."  (Id.)  As to the two missing pages, Kumar contends that the Government does "not articulate which documents they believe they are missing, despite Dr. Rimawi listing out the exact records he reviewed."  (Id. at PageID 1588 n.6.)  He reiterates that the Government should have consulted with his counsel about the documents.  (Id.)

Rimawi is a physician and he may give his opinions.  The Government is warned to consult with opposing counsel before filing non-dispositive motions.  The Government's First Motion in Limine as to Rimawi's unsupported testimony is **DENIED**.

### B.    Irrelevant

The Government argues that the "defense has disclosed several irrelevant experts and opinions," naming five experts.  (ECF No. 139 at PageID 1239.)

1.    *Amy Garcia*

The Government seeks to exclude as irrelevant certain opinions of Amy Garcia on the practices and procedures of PAC.  (ECF No. 139 at PageID 1239–40.)  Garcia toured PAC in October 2025, a year and a half after the April 2024 events at issue, and well after the clinic was closed to the public on February 28, 2025.  (Id. at PageID 1239.)  She stated in her disclosure that she confirmed Kumar's "processes for [high-level disinfection] and sterilization" for "flexible and rigid endoscope processing."  (Id.)  Because her observations are distant in time from the events at issue and because she does not state how she confirmed Kumar's process, the Government contends that "she is relying on self-serving irrelevant hearsay to permit defendant to testify through her."  (Id. at PageID 1239–40.)  She also opines in her disclosure on "the cost of doing an in-office hysteroscopy as opposed to one in the hospital," an opinion that is similarly irrelevant, according to the Government.

Kumar responds that Garcia's testimony about the October 2025 tour of PAC is relevant because the tour allowed her "to see firsthand whether the Clinic had the equipment necessary to properly reprocess the hysteroscopy devices."  (ECF No. 173 at PageID 1590.)  And her opinion about relative hysteroscopy costs is relevant, according to Kumar, because the fact that in-office procedures are cheaper "tends to make it less likely that Dr. Kumar had the intent to defraud" by conducting them.  (Id. at PageID 1589.)

Because evidence is relevant if it is merely "a step on one evidentiary route to the ultimate fact" at issue, Old Chief v. United States, 519 U.S. 172, 179 (1997), Garcia's testimony appears relevant.  However, her opinion cannot be based on Kumar's hearsay statements, or the statements of those speaking on his behalf.  The Government's First Motion in Limine as to the relevance of Garcia's testimony is **DENIED**.

2.    *Sean Weiss*

The Government seeks to exclude as irrelevant certain information contained in the disclosure of Sean Weiss.  (ECF No. 139 at PageID 1240.)  Specifically, the Government deems irrelevant Weiss's Medicare-related testimony concerning (a) the lack of National Coverage Determination or Local Coverage Determination for hysteroscopy, (b) the relative costs of hysteroscopies between in-office and hospital settings and the duration of hysteroscopies related to Centers for Medicare and Medicaid Services ("CMS") audits, (c) crossover claims and compliance, (d) the lack of a time component to hysteroscopy, (e) pre-payment reviews by Medicare and Medicaid generally, and (f) data analytics used by CMS.  (Id.)  "None of this information is relevant to the case," according to the Government.  (Id.)

Kumar responds that "Weiss can testify to the Medicare rules, the same as Dr. McDonald," the Government's expert.  (ECF No. 173 at PageID 1594.)  There is "nothing that prevents Mr. Weiss from testifying to the Medicare rules to rebut Dr. McDonald's testimony," argues Kumar.  (Id.)

If the Government can show at trial the irrelevance of this testimony, it is free to object.  At this point, however, it has not shown that Weiss's testimony is irrelevant.  The Government's First Motion in Limine as to the relevance of Weiss's testimony is **DENIED**.

3.    *Jeffrey Seidman*

The Government seeks to exclude as irrelevant the information and opinions about tumors contained in Jeffrey Seidman's disclosure.  (ECF No. 139 at PageID 1240.)

Although Kumar does not directly respond to the Government's motion to exclude Seidman's mention of tumors, he does assert that Seidman will describe how pathology reports are created, how they influence treating physicians, and how they can be flawed.  (ECF No. 173

at PageID 1591.)  Because pathology reports can be mistaken, argues Kumar, doctors sometimes need to repeat a biopsy.  (<u>Id.</u>)  This information is relevant to his defense.  (<u>Id.</u>)

Seidman's testimony about pathology will not be excluded.  The Government's First Motion as to the relevance of Seidman's testimony is **DENIED**.

### 4.    *Christopher Palenik*

The Government seeks to exclude as irrelevant evidence of Christopher Palenik's testing of a sealed Uro-V Cystoscope Diagnostic Cannula provided by Kumar.  (ECF No. 139 at PageID 1241.)  "This type of scope, which is used to perform a cystoscopy and not hysteroscopy, is not charged in this case," according to the Government, and is irrelevant.  (<u>Id.</u>)

Kumar responds that Palenik needed the brand-new device as a control in his experiments, and that the Government "obtained an identical item which it used as control in their own testing."  (ECF No. 173 at PageID 1591.)  And, what is more, when Palenik tested the sealed device, "he observed a fiber," illustrating that even sealed devices are "not without 'debris.'"  (<u>Id.</u>)

Palenik's observations about this medical device appear relevant.  The Government's First Motion as to the relevance of Palenik's testimony is **DENIED**.

### 5.    *Thahir Farzan*

The Government seeks to exclude as irrelevant any sweeping opinion by Thahir Farzan about what "everyone" or "no one" believes.  (ECF No. 139 at PageID 1241.)  In his disclosure, Farzan stated that "no one can deny the fact that this provider's approach is within the limits of the standard of care."  (<u>Id.</u>)  The Government contends that this statement "is irrelevant, untrue and invades the [province] of the jury as the ultimate determiner of the facts."  (<u>Id.</u>)

Kumar agrees not to elicit the phrase, "no one can deny," but nevertheless "believes the remainder of the statement is admissible."  (ECF No. 173 at PageID 1583 n.1.)

Because Kumar agrees not to elicit the overbroad language at issue, and because the remainder of Farzan's statement about the standard of care appears relevant, the Government's First Motion in Limine as to the relevance of Farzan's testimony is **DENIED**.

### C.    Confusing and Cumulative

The Government argues that two of Kumar's experts offer confusing or cumulative information that should be excluded under Rule 403.  (ECF No. 139 at PageID 1241.)

#### 1.    Amy Garcia

The Government seeks to exclude as cumulative Amy Garcia's general description of an in-office hysteroscopy.  (ECF No. 139 at PageID 1241.)  Because Thahir Farzan also proposes to present this background information, the Government contends that there is "no basis for the additional inclusion of Dr. Garcia on the description of hysteroscopies."  (Id.)

Kumar counters that "Farzan is testifying to the medical necessity of hysteroscopy biopsies," whereas "Garcia is testifying to the in-office process of hysteroscopies and cleaning or sterilization of devices."  (ECF No. 173 at PageID 1592.)  Because their testimony serves different purposes, argues Kumar, they are not cumulative.  (Id.)

Provided that the two experts' descriptions of hysteroscopies do not waste time, Kumar may offer multiple expert witnesses to describe the procedure.  The Government's First Motion in Limine as to Garcia's cumulative testimony is **DENIED**.  However, both Parties are cautioned to limit repetitive, unnecessary testimony.

### 2. Sean Weiss

The Government appears to seek the exclusion of all the information contained in Sean

Weiss's disclosure, arguing that "[a]side from the non-relevant materials and opinions noted

[above], Weiss's disclosure includes only cumulative information." (ECF No. 139 at PageID

1242.) The Government asserts that its own expert will explain "that payment for

hysteroscopies is unrelated to the type of scope, the difference between the billed rate and

reimbursed rate, and the treating provider's accountability for authenticating and ensuring

accuracy of medical record entries." (Id.) Because the Government's witness will testify to

these matters, the Government contends that Weiss's testimony is cumulative. (Id.)

In response, Kumar disagrees that he "should rely on the Government's witnesses to

present his case." (ECF No. 173 at PageID 1591.) "Such argument is so preposterous," he

states, "it is barely worthy of debate." (Id.)

Evidence that is truly cumulative will be excluded under Rule 403, but a defendant's

offering of his own expert is not per se cumulative. The Government's First Motion in Limine as

to Weiss's cumulative testimony is **DENIED**.

### D. Outside of Expertise

The Government argues that four of Kumar's experts will attempt to testify beyond their

expertise, and those opinions should be excluded under Rule 702.

### 1. Christopher Palenik

The Government seeks to exclude Christopher Palenik's opinion that "[a]t leas[t] some of

[Kumar's medical devices in evidence] are not functional (based on obvious kinks or breaks in

the items)." (ECF Nos. 139 at PageID 1242; 128 at PageID 1098.) The Government argues that

Palenik, as a geologist and microscopist, lacks expertise in the functionality of gynecological medical instruments, and this opinion should be excluded.  (Id.)

Kumar responds that some evidence seized from PAC "is broken, bent, and in some cases completely separated."  (ECF No. 173 at PageID 1594.)  "Palenik purely notes what is otherwise obvious, [that] a broken device cannot function," asserts Kumar.  (Id. at PageID 1595.)  "That is not expert opinion testimony, it is relevant, and it is therefore admissible."  (Id.)

Palenik, although qualified as an expert, may still give testimony rationally based on his perception.  Based on the filings, the testimony at issue appears to be admissible.  The Government's First Motion in Limine as to the expertise supporting Palenik's testimony is **DENIED**.  If, at trial, this conclusion is not supported by the record, the Government may renew the motion.

### 2.    Amy Garcia

The Government contends that Amy Garcia should not testify about reprocessing or sterilizing hysteroscopes, even though it concedes that "she appears to have the requisite expertise to testify about hysteroscopies and hysteroscopes, as well as gynecology."  (ECF No. 139 at PageID 1243.)  However, the Government asserts that it "could find no basis for Dr. Garcia to be considered an expert in reprocessing or sterilization, either in her disclosure or curriculum vitae."  (Id.)

Kumar responds that "Garcia is testifying, as a medical doctor, to matters within her own professional experience."  (ECF No. 173 at PageID 1593 (citing In re Aredia & Zometa Prods. Liab. Litig., 754 F. Supp. 2d 934, 936 (M.D. Tenn. 2010) ("A medical doctor is generally competent to testify regarding matters within his or her own professional experience.")).)  "She is testifying," asserts Kumar, "to the cleaning and sterilization processes of in-office

hysteroscopy and biopsy medical devices, [which] she has personally used or has knowledge of." (Id.)

Garcia appears qualified to testify about her use of hysteroscopy and biopsy medical devices, including their cleaning. The Government's First Motion in Limine as to the expertise supporting Garcia's testimony is **DENIED**.

        3.    *Jeffrey Seidman*

The Government seeks to exclude Jeffrey Seidman, an expert in gynecological pathology, and not a treating physician, from opining "about a treating physician's direct care of their patient." (ECF No. 139 at PageID 1244.) Because Seidman "is not a gynecologist and makes no clinical decisions as to patient care," argues the Government, he should not "provide information on types of biopsies and procedures for tissue removal," "information about a treating physician's interpretation of pathology reports," "opinions about a treating physician's direct care of their patient," or "assessments about a treating physician's decision as to whether a biopsy is medically indicated." (Id.)

Kumar responds that he will not elicit "Seidman's statements regarding the clinical treatment of patients for records he did not review." (ECF No. 173 at PageID 1583.) However, Kumar asserts that Seidman "can present testimony regarding the interpretation of pathology slides," which "is precisely his area of expertise." (Id. at PageID 1594.) "Seidman is not presenting testimony on whether a biopsy is indicated in a given patient, [for] which he does not have the experience," argues Kumar, "but instead he is testifying distinctly to the process of pathology and interpretation of such review." (Id.)

As an expert in gynecological pathology, Seidman may testify to the interpretation of slides, but may not opine on the treatment of patients. If he should stray into areas outside of his

expertise, the Government may object, but his testimony as a whole will not be excluded at this

point.  Because Kumar will not elicit testimony about patient care from Seidman, the

Government's First Motion in Limine is **DENIED AS MOOT**.

       *4.*    *Sean Weiss*

The Government seeks to exclude Sean Weiss, who is not a medical doctor, from

rebutting the testimony of the Government's expert Matt McDonald, a gynecologic oncologist.

(ECF Nos. 139 at PageID 1244; 65 at PageID 499.)  Regarding McDonald's opinion that

"scribes should be present for medical care," Weiss responded that this "introduces a prescriptive

requirement not supported by [CMS] guidelines."  (Id. at PageID 1245.)  According to the

Government, Weiss's opinion "inappropriately comments on the standard of care for patient

care" and should be excluded.  (Id.)

Kumar responds that Weiss's opinion "does not require medical training or expertise.

Instead, it requires a knowledge of the Medicare rules, which Mr. Weiss possesses."  (ECF No.

173 at PageID 1594.)

Provided that Weiss testifies about Medicare rules within the realm of his expertise, his

opinions will not be excluded merely for being non-medical.  The Government's First Motion in

Limine as to the expertise supporting Weiss's testimony is **DENIED**.

## E.    Kumar's Mental State

The Government finally asserts that Thahir Farzan will attempt to offer an inadmissible

opinion on Kumar's mental state.  (ECF No. 139 at PageID 1245.)  The Government seeks to

exclude any opinion on Kumar's mental state under Rule 704(b), including Farzan's opinion that

Kumar lacked the intent to defraud.  (Id.)

Kumar responds that he agrees that expert testimony on the "mental state of a criminal

defendant is not admissible," and again chastises the Government for not resolving this argument

earlier through consultation.  (ECF No. 173 at PageID 1595.)  Kumar contends, however, that

Farzan's statement does not implicate Rule 704(b).  (Id.)  In his disclosure, Farzan opined that

> [o]ne of [Kumar's] landmark publications, which reported [that] one in four
> patients diagnosed with endometrial carcinoma had a benign prior biopsy, is likely
> to have shaped his practice model of repeating biopsies even if the initial biopsy
> was benign.  Knowing his interest, it is likely that he is influenced by his own work
> and would go an extra mile in investigating high-risk patients for endometrial
> carcinoma to diagnose pre-cancerous lesion early enough to prevent an endometrial
> carcinoma.

(ECF No. 125 at PageID 1056.)  Kumar argues that Farzan's statement does not express an

opinion on "whether Dr. Kumar knowingly or willfully caused false claims to be submitted to

governmental health care programs."  (ECF No. 173 at PageID 1595.)

"Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for

expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than

transmitting them to the jury."  Carter v. United States, No. 3:11-0930, 2014 WL 1630824, at

*12 (M.D. Tenn. Apr. 23, 2014) (quoting Trepel v. Roadway Exp., Inc., 194 F.3d 708, 721–22

(6th Cir. 1999) (Suhrheinrich, C.J., concurring)).  "In such a case, Rule 703 is simply

inapplicable and the usual rules regulating the admissibility of evidence control."  Id. (citation

omitted).

Here, Farzan's opinion violates Rule 704(b) because it touches on Kumar's alleged intent

to defraud, which "constitutes an element of the crime charged" in the Indictment.  Moreover,

under Rule 703, Kumar's "interests" and "influences" are not the kinds of facts or data that

experts in the field of gynecology rely on to form their opinions.  And, most fundamentally,

Farzan cannot serve as a conduit for Kumar's own self-serving statements.  Farzan is free to

opine on the standard of care in gynecology, and Kumar himself may take the stand to testify to his own mindset, but Farzan may not give an opinion on the influences behind Kumar's actions.

Thus, the Government's First Motion in Limine as to Farzan's opinion on Kumar's mental state is **GRANTED**.

\*       \*       \*

Therefore, the Government's First Motion in Limine only as to Farzan's opinion on Kumar's mental state is **GRANTED**.  Because the Government fails to meet its burden to demonstrate why the rest of the expert testimony it challenges should be excluded, the remainder of the Motion is **DENIED**.  However, this ruling is based only on the pretrial motions.  If the testimony at trial raises these or other issues, the Court will entertain renewed motions if appropriate.  Finally, the Government's failure to consult with Kumar's counsel appears to have created needless work for the Parties and the Court.  Although a court should not have to instruct the Parties to cooperate with each other, you are so instructed.

## II.    <u>Government's Second Motion in Limine</u> (ECF No. 140)

The Government's Second Motion in Limine involves its own witness, Jona Bandyopadhyay.  (ECF No. 140.)  In the Motion, the Government seeks "to preclude any improper questions designed to elicit expert opinion testimony from Dr. Jona Bandyopadhyay outside the scope of her written report."  (<u>Id.</u> at PageID 1247.)

A lay witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  But if a witness possesses "knowledge and familiarity well beyond that of the average lay person," and if in her testimony the witness is required to apply her special knowledge and familiarity, then that witness should be disclosed as an expert witness under Rule 16(a)(1)(G).  <u>United States v. White</u>,

492 F.3d 380, 403 (6th Cir. 2007) (citation modified) (quoting <u>United States v. Ganier</u>, 468 F.3d

920, 926 (6th Cir. 2006)).  "Rules 701 and 702 'distinguish between lay and expert *testimony*,

not *witnesses.*'"  <u>Allied Erecting & Dismantling Co. v. U.S. Steel Corp.</u>, No. 22-3585, 2023 WL

5322213, at *7 (6th Cir. Aug. 18, 2023) (quoting <u>White</u>, 492 F.3d at 404).  "Thus, '[o]ne witness

may properly offer lay testimony and, at the same time, may be precluded from putting forth

expert testimony.'"  <u>Id.</u> (quoting <u>White</u>, 492 F.3d at 404).

 Bandyopadhyay, a medical doctor, served as "an Associate Medical Director with

TennCare from 2019 to 2023."  (ECF No. 116 at PageID 963.)  The Government will call

Bandyopadhyay as a fact witness to testify about a TennCare report she prepared in 2021 "that

documented her clinical findings as part of a medical records review by TennCare into billing"

by PAC.  (ECF No. 140 at PageID 1248.)  The Government nevertheless has disclosed her as an

expert witness due to the "knowledge and familiarity . . . well beyond that of the average lay

person" that she will apply to her fact testimony.  (ECF Nos. 140 at PageID 1247 (quoting

<u>White</u>, 492 F.3d at 403); 116 at PageID 964.)  Although she has been disclosed as an expert, the

Government asserts that Kumar "must be precluded from seeking to elicit blanket expert opinion

testimony on cross-examination that would be outside the scope of the opinions contained in her

report."  (<u>Id.</u> at PageID 1248.)  The Government concedes that Kumar may "cross-examine Dr.

Bandyopadhyay as to the opinions contained in her report and her testimony on direct."  (<u>Id.</u>)

But Kumar should be prevented from "asking about hypothetical scenarios or other opinion

testimony about patient care more generally," argues the Government, outside the content of

Bandyopadhyay's written report.  (<u>Id.</u> at PageID 1248–49.)

 In response, Kumar argues that the Government "is attempting to dress Dr.

Bandyopadhyay up in lay witness clothing to circumvent the Rules of Evidence and admit her

clinical review."[1]  (ECF No. 155 at PageID 1449.)  He contends that Bandyopadhyay is fulfilling the role of an expert because she will give opinion testimony about the TennCare clinical review process, and she will testify to her clinical review of medical records.  (Id. at PageID 1449–50.) Moreover, unlike a lay witness, she lacks personal knowledge of the patients described in those files.  (Id. at PageID 1450.)  "Just because she personally reviewed the files," argues Kumar, "she is not removed from the purview of an expert witness and placed into a lay witness category."  (Id.)  According to Kumar, Bandyopadhyay's "clinical findings are no different from the Government's proposed expert, Dr. Matt McDonald," and the Government "cites no reason, rationale, or case law" to explain why her medical opinions should be treated differently.  (Id.)

But, despite Kumar's arguments, Bandyopadhyay will be testifying from personal knowledge—her knowledge of the investigation she conducted in 2021 and the report that she will authenticate at trial.  Because the Government is offering Bandyopadhyay's testimony for this limited purpose, based on what the Court understands from the pretrial Motion, she will not be treated as an expert witness.  Although Kumar may rigorously cross-examine Bandyopadhyay about her report, he may not seek her general expert opinion outside of it.

Thus, the Government's Second Motion in Limine is **GRANTED**.

## III.    Kumar's Motion in Limine (ECF No. 148)

In Kumar's Motion in Limine, he seeks "to exclude evidence of non-noticed expert opinions, improper lay opinions, and/or improper[ly] noticed expert opinions."  (ECF No. 148 at

---

[1] Kumar also opens his response with an argument that the Government's motion should be denied under Local Criminal Rule 12.1 "for failing to consult with counsel for Defendant prior to filing the instant motion."  Under that rule, failure to attach a certificate of consultation to a non-dispositive motion "may be deemed good grounds for denying the motion."  Loc. Crim. R. 12.1.  Although the Government is warned again that its failure to consult with opposing counsel has harmed judicial efficiency, the Motion will be considered on its merits.

PageID 1338.)  His motion is largely a reaction to the Government's August 27 Notice of Intent to Offer Evidence Under Federal Rule of Evidence 404(b) (the "Notice") (ECF No. 98).  The Notice contains, in relevant part, an overview of anticipated testimony by health care providers employed by Kumar and patients on whom he performed procedures and who observed the condition of his medical devices.  (See generally ECF No. 98.)  Kumar is concerned that the Government evidence will exceed the scope of evidence included in its seven expert disclosures. (ECF No. 148 at PageID 1340.)

Kumar begins by explaining that Counts 37–46 of the Indictment are "quite narrow."  (Id. at PageID 1339.)  They allege that Kumar committed healthcare fraud by billing government health care benefit programs like Medicaid and Medicare, on behalf of nine patients, for hysteroscopy and biopsy procedures that were either (in Counts 37–45) unnecessary or conducted with adulterated or misbranded devices or (in Count 46) that were accompanied by false statements.  (Id. at PageID 1339.)  Kumar asserts that "there are no allegations" in the Indictment that he performed any other unnecessary procedures, outside of hysteroscopies and biopsies.  (Id.)  Kumar further states that, just as the Indictment is "narrow," so also are the Governments' expert disclosures "narrowly tailored" to these few issues.  (Id. at PageID 1340.)

However, Kumar is wary that the Government intends to broaden the scope of evidence through its Notice (ECF No. 98).  (Id. at PageID 1340.)  Kumar thus seeks to exclude five categories of testimony included in the Government's Notice.  (Id.)  He argues that that these categories of proposed evidence are either "non-noticed expert opinion"—because, according to Kumar, the Government's witnesses lack "the proper notice, expert designations, or qualifications"—or improper lay opinion.  (Id.)  The categories he identifies are:

(A)    Rule 404(b) evidence of other unnecessary medical procedures, besides the hysteroscopies charged in the Indictment;

      (B)     lay testimony about the unnecessary hysteroscopies themselves;

      (C)     evidence of patients infected with HIV or sexually transmitted diseases ("STDs");

      (D)     evidence of "floating tissue samples" or "debris" on devices seized from PAC; and

      (E)     Matt McDonald's opinion that Kumar was "motivated by . . . compensation."

(See generally ECF No. 148.)

According to Kumar, although the Government in some cases "did not explicitly note . . . their intent to offer this evidence at trial," it also "did not agree to *exclude* such evidence." (Id. at PageID 1341.) Thus, Kumar argues for the exclusion of any such testimony, whether by "non-noticed experts" or by lay persons opining on "medical diagnosis, medical standards, medical necessity, and scientific observations." (Id.)

In response, the Government "seeks to narrow and clarify the scope of the evidence the government intends to elicit at trial." (ECF No. 166 at PageID 1536.)

Each of the Parties' arguments is addressed below.

## A.     Additional Medical Procedures Under Rules of Evidence 701(c) and 404(b)

Kumar first seeks to prevent the Government from introducing Rule 404(b) "other acts" evidence about allegedly unnecessary procedures other than hysteroscopies. (ECF No. 148 at PageID 1344.) According to Kumar, the Government intends to prove that Kumar and other PAC providers conducted "additional unnecessary medical procedures and surgeries." (ECF No. 148 at PageID 1343.) That additional evidence includes that Kumar "performed procedures that were outside his expertise, including Uterine Fibroid Embolization procedures, mole removal on non-pelvic regions, and managing psychiatric medication." (Id. at PageID 1344.) Kumar argues that none of the Government's expert witnesses can testify about these additional "unnecessary" procedures, because (1) the Government has not provided Kumar with notice of this expert

testimony, (2) "other acts" evidence cannot be justified as res gestae or intrinsic evidence, and (3) this "other acts" evidence is inadmissible under Rule 404(b).  (Id. at PageID 1344–50.)

In its response, the Government states that it "does not intend to introduce testimony at trial that any other type of procedure performed at [PAC] was medically unnecessary."  (ECF No. 166 at PageID 1537.)  Nor will it offer expert opinion evidence of additional necessary procedures, including "that Kumar performed Uterine Fibroid Embolization procedures and managed psychiatric medication outside of the area of his expertise."  (Id.)

However, the Government will call Kumar's patients as lay witnesses.  (Id. at PageID 1538.)  Their testimony "will include discussion of other procedures performed on them, such as ultrasounds, and one patient will testify that Kumar removed a mole from an area of her body other than the pelvic region."  (Id.)  The Government contends that this is proper lay testimony under Ruly 701 because it requires no "specialized knowledge."  (Id.)  Because this kind of lay testimony demonstrates how patients understood certain procedures and why they may have consented to them, it "is crucial direct evidence in health care fraud cases to determine what took place inside a treatment room."  (Id. at PageID 1539.)

In the alternative, according to the Government, this lay testimony is proper 404(b) evidence to "to show Kumar's motivation to perform and bill for as many procedures as possible," such as the removal of a mole from a non-pelvic region, "and the opportunity to perform such procedures himself rather than referring the patient to a physician who would ordinarily perform such a procedure."  (Id.)  The Government contends that this evidence, though not unduly prejudicial under Rule 403, "is important probative evidence that properly illustrates the scope of his practice and his motive and opportunity in committing health care fraud."  (Id.)

Because the Government agrees that it will not introduce undisclosed expert testimony about additional unnecessary medical procedures, Kumar's Motion in Limine as to expert testimony of additional unnecessary medical procedures is **DENIED AS MOOT**.  Also, the lay testimony of Kumar's patients appears proper.  Their testimony is rationally based on their perception, helpful to the jury, and not based on any specialized knowledge under Rule 701.  The evidence of additional medical procedures does not tend to prove Kumar's character, but is probative of his motive and opportunity under Rule 404(b).  At the same time, these topics are not so lurid as to run a substantial risk of undue prejudice under Rule 403.  Thus, the remainder of Kumar's Motion in Limine as to the lay testimony of Kumar's patients is also **DENIED**.

### B.    Medically "Unnecessary" Hysteroscopy Procedures Under Rule of Evidence 701 and Rule of Criminal Procedure 16

Kumar also "seeks to exclude any non-noticed expert testimony, as well as any improper layperson opinion testimony related to medically unnecessary hysteroscopy" procedures under Rule of Evidence 701 and Rule of Criminal Procedure 16.  (ECF No. 148 at PageID 1351.)

Kumar argues that lay witnesses cannot opine on the medical necessity of hysteroscopies. (ECF No. 148 at PageID 1351.)  And, to the extent expert testimony touches on medical necessity, it must have been included in the Government's disclosures, or else excluded.  (Id.)

In response, the Government states that it will call employees of Kumar's, "some of whom are also treating health care providers," as lay witnesses.  (ECF No. 166 at PageID 1540.) They will testify to "procedures they witnessed or know of Kumar performing, procedures they were instructed to perform by Kumar, and instruction and training they received from Kumar." (Id.)  And some "will also testify that the practices at Kumar's clinic differed from the practices at their other places of employment."  (Id.)  The Government contends that this direct evidence is neither "improper lay witness testimony or undisclosed expert testimony."

27

According to the Government, it need not disclose these witnesses as experts.  (Id.)
Treating physicians can "testify 'to their first-hand observations and treatment' of a patient
without being qualified as experts."  (Id. (quoting Betro, 115 F.4th at 450).)  The Betro court
explained that a physician "may be acting more like a retained expert" when they "testif[y] to
issues beyond those covered in ordinary medical training."  115 F.4th at 450 (quoting Fielden v.
CSX Transportation, Inc., 482 F.3d 866, 872 (6th Cir. 2007)).  However, when a treating
physician offers "opinions that are closely related to the course of treatment," they are merely
providing "lay testimony [about] their own first-hand observations and treatment—not broader
medical judgments."  Id. at 451.  Further, a physician's testimony about procedures at different
clinics at which they have worked is also "proper lay testimony" because "they could be made
using everyday reasoning without requiring specialized training or knowledge."  (Id. at 451–52
(citing White, 492 F.3d at 401).)

The Government may call treating providers employed by Kumar as lay witnesses.
Those providers may offer opinions "closely related to the course of treatment," as long as they
do not testify "to issues beyond those covered in ordinary medical training."  See Betro, 115
F.4th at 450–51.  This may include whether a hysteroscopy procedure was medically necessary.

Thus, Kumar's Motion in Limine as to undisclosed expert testimony or lay testimony
about medically unnecessary hysteroscopies is **DENIED**.

### C.    Sexually Transmitted Diseases Under Rules of Evidence 701(c) and 403

Kumar also seeks to exclude any testimony about "patients with HIV and other [STDs]."
(ECF No. 148 at PageID 1351.)  According to Kumar, "it appears the Government is seeking
admission of such evidence for the jury to draw the improper conclusion that patients received
STDs from receiving care" at PAC.  (Id.)  Moreover, although it appears that the Government

28

intends to argue that Kumar should have taken "special precautionary measures with an HIV

positive patient before or after her hysteroscopy procedure," nevertheless it has not disclosed any

expert witness to support that assertion, argues Kumar.  (Id.)  In the absence of an expert witness

to testify about STDs and the standard of care, Kumar asserts that the evidence should be

excluded.  (Id.)  In the alternative, according to Kumar, the evidence should be excluded under

Rule 403 because, although there is "little probative value to [a] lay witness's opinion testimony

regarding contracting a STD," that evidence is at the same time "highly and unduly prejudicial."

(ECF No. 148 at PageID 1353.)

   In response, the Government states that, although the Notice included, "out of an

abundance of caution," testimony about the lack of "special precautionary measures" taken by

Kumar toward an HIV-positive patient, it "does not now intend to introduce any such

testimony."  (ECF No. 166 at PageID 1537.)  The Government further asserts that it "does not

intend to introduce . . . evidence that any specific patient's [STD] status changed after receiving

treatment at [PAC]."  (Id.)  Instead, the Government will introduce the lay testimony of an

employee of Kumar's.  (Id. at PageID 1537–38.)  That witness will testify that, after "she noticed

a general increase in a certain STD in [PAC's] patient population," Kumar "then instructed her to

stop testing for that STD."  (Id. at PageID 1538.)  The Government contends that this is proper

lay testimony because it "does not require any special knowledge," and that it is admissible for a

proper 404(b) purpose because it further proves "Kumar's level of decision-making at his clinic,

his plan to commit health care fraud, his knowledge about steps taken with regard to the fraud,

and the absence of mistake or lack of accident that the fraud was committed."  (Id.)

   Because the Government does not intend to introduce any undisclosed expert testimony

about HIV-related precautions or STD transfer at PAC, the remaining lay testimony that it

intends to offer is not improper.  The lay testimony appears "rationally based on the witness's perception," Fed. R. Evid. 701, it may be offered for a permissible purpose, Fed. R. Evid. 404(b)(2), and it appears that its probative value is not substantially outweighed by a risk of prejudice, Fed. R. Evid. 403.  Thus, lay testimony about "patients with HIV and other [STDs]" will not be excluded at this time.

Thus, Kumar's Motion in Limine as to the mention of HIV and other STDs is **DENIED** for now.  The Court may re-examine this issue at trial to assess whether it is relevant, as it is unclear at this point how an instruction to stop testing for an STD is relevant here.

### D.    "Floating Tissue Samples" or "Debris" Under Rules of Evidence 701 and 403

Kumar further seeks to exclude testimony about "floating tissue samples" or "debris" found on medical devices, or about those devices' "discoloration," whether by lay witnesses or undisclosed expert witness.  (ECF No. 148 at PageID 1353-54.)  Kumar asserts that, except for Government expert Hannah Godschalk, no expert has been disclosed who can opine on the presence of "floating tissue samples" found on devices seized from PAC.  (ECF No. 148 at PageID 1353–54.)  And yet two non-experts, Edward Miller and Rowena Schimmel, have been quoted opining on the question.  (Id. at PageID 1354.)  Specifically, Miller documented in his Special Agent report that "[w]ithin the solution was what appeared to be floating tissue samples and other debris," and Schimmel told Government agents that, after viewing unspecified photographs from the search of PAC, "the photos depict debris and discoloration," which she alleged "was likely from the devices being used on patients."  (Id.)  Kumar seeks to exclude these lay opinions under Rule 701, because lay testimony cannot be based upon specialized knowledge, and, under Rule 403, because the risk of unfair prejudice from these statements substantially outweighs their probative value.  (Id. at 1354–55.)

30

In response, the Government contends that these "[l]ay witnesses may properly provide testimony as to their own rational perception of the evidence." (ECF No. 166 at PageID 1541.) The Government anticipates that the lay witnesses will testify that they "observed hysteroscopy devices placed in plastic tubs of green liquid," which contained "debris and what appeared to be floating tissue samples in the liquid." (Id.) This is appropriate lay testimony, according to the Government. (Id.) The Government states that the Federal Food, Drug, and Cosmetic Act ("FDCA") makes it a crime to adulterate medical devices by holding the devices "under insanitary conditions" in which they "may have been contaminated with filth." (Id. (citing 21 U.S.C. § 351(a)(2)(A)).) Because courts give the statutory term "filth" its "usual and ordinary meaning," United States v. Am. Mercantile Corp., 889 F. Supp. 2d 1058, 1076 (W.D. Tenn. 2012), the Government argues that "Kumar cannot attempt to raise the bar to require that any discussion of possible filth, such as 'debris' or 'floating' detritus in containers containing the charged devices, requires Rule 702 expert testimony." (Id. at PageID 1542.)

Further, the Government contends that lay witnesses may properly state their observations that the debris in the liquid consisted of "floating tissue samples" and that a device became discolored and coated in debris likely due to its use on patients. (Id.) The Government asserts that Rule 701 allows for lay opinion that is "rationally based on the perception of the witness" and "helpful to a clear understanding of [their] testimony." (Id. (quoting United States v. McCullah, 745 F.2d 350, 352 (6th Cir. 1984)).) According to the Government, it will lay a proper foundation for this evidence, for example, by showing that a witness knew what a new single-use hysteroscopy device looked like. (Id. at PageID 1542 n.3.) To exclude some of these opinions would make the testimony less helpful to the jury, argues the Government. For example, if a witness were not allowed to use the words "floating tissue samples," the term

31

"debris" alone would "not aid the jury in understanding what witnesses observed on April 16, 2024." (Id.)

A lay witnesses may only give an opinion "rationally based on [their] perception," that is "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and not based on "specialized knowledge." Fed. R. Evid 701. Because the witnesses here will offer their own perceptions, in a way that makes their testimony clearer to the jury, without making any claim to objective, scientific knowledge of what they saw, this testimony satisfies Rule 701. Although no undisclosed expert testimony on the topic is admissible, lay opinion on the first-hand observation of "floating tissue samples," "debris," and "discoloration" is admissible, provided that the Government lays a proper foundation for that opinion. See Fed. R. Evid. 602 ("A [lay] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Specifically, to the extent the witness will attempt to tie the observed debris to a conclusion that the device was previously used, a proper foundation must be laid to tie this testimony to a lay opinion, not an expert one.

Thus, Kumar's Motion in Limine as to lay opinion on "floating tissue samples," "debris," and "discoloration" is **DENIED**.

### E.    Opinion on Kumar's Mental State Under Rules of Evidence 702 and 704(b)

Finally, Kumar seeks to exclude the opinion of Government expert Matt McDonald that Kumar was "motivated by the compensation provided by the procedural based encounters . . . ." (ECF No. 148 at PageID 1356.) Kumar asserts that, whereas Rule 702 requires an expert witness to base his opinion on sufficient facts and apply reliable methods, McDonald could not have reached this opinion scientifically. (Id.) Also, Kumar contends that Rule 704(b) precludes an expert from opining on a criminal defendant's mental state if his mental state is an "element of

the crime charged," and Kumar's mental state is an element of proving health care fraud.  (Id. at

PageID 1357.)  Thus, under both Rules 702 and 704(b), Kumar argues that McDonald's

statement should be excluded.  (Id.)

In response, the Government states that it "does not intend to introduce the opinion of Dr.

Matt McDonald that, following his review of the medical records, a possible motivation of

Kumar's was compensation for procedural based encounters."  (ECF No. 166 at PageID 1538.)

Instead, "McDonald will testify based on his medical experience and training that Kumar

performed unnecessary hysteroscopies and inappropriately treated patients without reference to

the patient's medical record," contends the Government.  (Id.)

Kumar's mental state is not an appropriate subject for expert testimony, but because the

Government agrees not to offer it, Kumar's Motion in Limine as to McDonald's testimony about

Kumar's motives is **DENIED AS MOOT**.

*       *       *

Therefore, because Kumar fails to meet his burden to demonstrate why the evidence he

challenges should be excluded, his Motion in Limine is **DENIED**.

## CONCLUSION

For the reasons stated above, the Government's First Motion in Limine is **GRANTED IN**

**PART** and **DENIED IN PART**.  The Government's Second Motion in Limine is **GRANTED**.

Kumar's Motion in Limine is **DENIED**.

**IT IS SO ORDERED,** this 18th day of November, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

33