IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>SANJEEV KUMAR,  )<br>    Defendant.  )  | No. 2:25-cr-20032-SHL-1 |

**ORDER DENYING DEFENDANT'S MOTION IN LIMINE (ECF NO. 141)**

Before the Court is Defendant Sanjeev Kumar's Motion in Limine to Exclude Government's 404(b) Evidence of Alleged Other Acts of Health Care Fraud and Failure to Collect Copayments, filed November 3. (ECF No. 141.) Kumar seeks to exclude this evidence as improper extrinsic, 404(b) material that is more prejudicial than probative. (Id. at PageID 1250–51.) The Government filed its response on November 7. (ECF No. 163.)

For the reasons stated below, the Motion is **DENIED**.

**BACKGROUND**

Kumar is an obstetrician-gynecologist and oncologist who operated Poplar Avenue Clinic ("PAC"), a women's health practice in Memphis, Tennessee. (ECF No. 136 at PageID 1195.) The Government charges Kumar with multiple violations of federal law, which are described in greater detail in the Background section of a recent order in this matter. (See ECF No. 172 at PageID 1572–73.) As relevant here, the Government alleges that Kumar "devised and participated in a scheme and artifice to defraud health insurance benefit programs, including Medicare and Medicaid." (ECF No. 136 at PageID 1215.) Among the allegations are that Kumar repeated "medically unnecessary hysteroscopy procedures on patients" and that he

submitted "false and fraudulent" claims for reimbursement for procedures that he did not conduct. (ECF No. 136 at PageID 1196, 1222.) As a result, according to the Government, Kumar became "the top-paid provider in Tennessee for Medicare and Medicaid for hysteroscopy biopsy services" from September 12, 2019, to April 16, 2024. (Id. at PageID 1195.)

A federal grand jury returned the Second Superseding Indictment ("Indictment") against Kumar containing forty-six counts:

- **Counts 1–16:** adulteration of single-use medical devices, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 351(a)(2)(A), and 18 U.S.C. § 2;
- **Counts 17–32:** misbranding of reprocessed single-use devices, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 352(v), and 18 U.S.C. § 2;
- **Counts 33–36:** adulteration of hysteroscopes cleared for reprocessing, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 351(a)(2)(A), and 18 U.S.C. § 2;
- **Counts 37–45:** health care fraud by conducting unnecessary procedures on nine patients in violation of 18 U.S.C. §§ 1347 and 2; and
- **Count 46:** health care fraud by making false statements in violation of 18 U.S.C. §§ 1347 and 2.

(ECF No. 136.) The trial begins December 1, 2025. (ECF No. 96.)

On August 27, the Government filed its Notice of Intent to Offer Evidence Under Federal Rule of Evidence 404(b) (the "Notice"). (ECF No. 98.) Kumar, in turn, filed this Motion to exclude evidence of other acts of healthcare fraud and failure to collect copays.

## APPLICABLE LAW

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. "Evidence of any other crime, wrong, or act" other than the crimes of Indictment "is not admissible to prove a person's character . . . ." Fed. R. Evid. 404(b)(1). But this "other acts" evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Before admitting Rule 404(b) evidence, courts must

2

> (1) make a preliminary determination as to whether sufficient evidence exists that the prior act occurred, (2) make a determination as to whether the "other act" is admissible for a proper purpose under Rule 404(b), and (3) determine whether the "other acts" evidence is more prejudicial than probative under Rule 403.

United States v. Poulsen, 655 F.3d 492, 508 (6th Cir. 2011) (citation omitted). If the government intends to use this evidence for a proper purpose, it must first "provide reasonable notice" to the defendant. Fed. R. Evid. 404(b)(3).

Intrinsic evidence is "inextricably intertwined with the criminal act charged . . . as opposed to extrinsic acts, which are those that occurred at different times and under different circumstances" from the criminal act. United States v. Churn, 800 F.3d 768, 779 (6th Cir. 2015). The trial court may "admit evidence regarding a defendant's unindicted criminal activity when that activity is 'intrinsic' or 'inextricably intertwined' with charges named in the indictment." Id. (emphasis in original) (citation omitted). Because intrinsic evidence "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense," it is generally not subject to Rule 404(b). United States v. Weir, No. 24-5335, 2025 WL 475099, at *5 (6th Cir. Feb. 12, 2025) (citation omitted). However, "[c]oncerned with the potential for abuse of background evidence as a means to circumvent Rule 404(b)," the Sixth Circuit has recognized "'severe limitations as to "temporal proximity, causal relationship, or spatial connections" among the other acts and the charged offense.'" United States v. Adams, 722 F.3d 788, 810 (6th Cir. 2013) (citation omitted).

Finally, even relevant, otherwise-admissible evidence may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ANALYSIS

Kumar seeks to preclude the Government from offering evidence of alleged acts of health care fraud committed by Kumar and PAC that were not charged in the Indictment. (ECF No. 141 at PageID 1250.) This evidence includes statistical data that Kumar and his employees were "top billers" and testimony that PAC "upcod[ed] procedures for higher reimbursement."[1] (Id. at PageID 1250–51.) Kumar contends that this evidence (1) is not intrinsic to Counts 37–46, which charge him with health care fraud, (2) is improper "other acts" evidence under Rule 404(b), and (3) should be excluded under Rule 403. (Id. at 1251.) Also, according to the Notice, the Government intends to offer evidence that Kumar failed "to collect co-payments ['copays'] from patients in an attempt to induce patients to undergo unnecessary medical procedures." (Id.) Kumar seeks exclusion under Rule 403 of the failure to collect copays. (Id.)

In response, the Government "seeks to narrow and clarify the scope of the evidence" it intends to present. (ECF No. 163 at PageID 1508.) The Government states that it will seek to introduce (1) "statistical peer comparison data" demonstrating that Kumar was the top biller for hysteroscopies in Tennessee, billing 5.5 times more than the second-highest biller, the Memphis-area Methodist hospital system; (2) testimony of Kumar's employees that he "routinely upcoded" endometrial procedures into more costly hysteroscopies with endometrial biopsies; and (3)

---

[1] In its Notice, the Government initially stated that it would seek to introduce evidence that Kumar (1) "unbundled" procedures for additional compensation by billing multiple codes when only one code sufficed and (2) billed more hours than were possible in a twenty-four-hour day. (ECF No. 98 at PageID 765–66.) However, the Government has since changed its position and does not intend to offer either of those categories of evidence. (ECF Nos. 163 at PageID 1509 (no "unbundling"), 138 at PageID 1228 (no "impossible days").) Kumar acknowledges in the Motion that the issue of unbundling is moot (ECF No. 141 at PageID 1250 n.2), and now the issue of "impossible days" is also moot. Thus, relying on the Government's representations, this Order does not address evidence of either "unbundling" or "impossible days," which will not be offered by the Government.

testimony of Kumar's patients that PAC routinely failed to bill them for their copays.  (Id. at PageID 1509–1515.)

The Parties' arguments are analyzed below, organized by category of evidence the Government intends to offer.

A.     **Statistical Data and Upcoding**

Kumar first argues that both (1) the statistical data that PAC was a "top biller" and (2) the testimony that it practiced upcoding are not intrinsic to the charged conduct, and thus should be excluded.  (ECF No. 141 at PageID 1256–58.)  He contends that it is unclear whether this evidence satisfies the tests of "temporal proximity, causal relationship, or spatial connections" because the Government "dedicates only one paragraph" to describing it.  (Id. at PageID 1256.)  He further asserts that the evidence cannot be "a prelude to the charged offense," a common feature of intrinsic evidence, because the health care offenses charged in Counts 37–46 are silent on upcoded procedures.  (Id. at PageID 1257.)

Kumar next argues that the "top biller" and upcoding evidence is improper Rule 404(b) evidence.  (Id. at PageID 1258–60.)  He asserts that there is insufficient evidence that these acts occurred in the first place.  (Id. at PageID 1258–59.)  He also contends that the Government is not offering the evidence for a proper Rule 404(b) purpose, because it does not demonstrate an "intent, modus operandi, motive, preparation, [or] plan" to bill "for unnecessary medical procedures or procedures using adulterated and/or misbranded devices," as charged in the Indictment.  (Id. at PageID 1259–61.)

Finally, Kumar argues that Rule 403 prohibits all the evidence challenged in the Motion because it will "confuse the issues before the jury, cause undue delay, and mislead the jury" by creating a "trial within a trial."  (Id. at PageID 1262.)

5

       *1.*      *Statistical Data*

In response, the Government first contends that the statistical data, which shows "that Kumar is an outlier amongst his peers—both in Tennessee and nationwide," is admissible as intrinsic evidence of "Kumar's intent, motive, and whether he was running his clinic in accordance with accepted professional practices." (Id. at PageID 1508–09.) It also admissible under Rule 404(b), according to the Government, to prove intent and motive. (ECF No. 98 at PageID 766; 163 at PageID 1508.)

The Government argues that this case is like United States v. Weir, in which the court held that "statistical evidence of volume and peer comparisons" are admissible in a health care fraud case. (Id. at PageID 1509 (citing No. 2:21-CR-00008, 2024 WL 993644, at *1 (M.D. Tenn. Mar. 7, 2024)).) The district court reasoned in Weir that, although the statistical data included patients who were not mentioned in the Government's case, nevertheless "cumulative data about a business, placed in context, is evidence of the underlying business's general practices and policies, and those general practices and policies are, in turn, directly relevant to what occurred . . . in any more specific instance." 2024 WL 993644, at *1. It explained that "admitting such evidence was within both the general bounds of the Rules of Evidence and established Sixth Circuit caselaw." Id.

Here, likewise, argues the Government, the statistical peer comparison data that shows PAC as "the top TennCare billing provider statewide" for hysteroscopies is relevant and admissible. (ECF No. 163 at PageID 1509–10.) The Government further contends that the presentation of this evidence will not cause undue delay under Rule 403 because it will be introduced "through summary and demonstrative exhibits" as part of the expert testimony that has already been disclosed. (Id. at PageID 1510.)

6

The statistical comparison evidence is intrinsic to the conduct charged in the Indictment. It is "directly probative of the charged offense" and "arises from the same events as the charged offense." See Weir, 2025 WL 475099, at *5. In this case, in which the Government charges Kumar with proliferating unnecessary hysteroscopies, it is hard to argue that statistical data on PAC's hysteroscopy rates is extrinsic to the charged conduct.

Even if it was not intrinsic, it would be admissible 404(b) "other acts" evidence. There appears to be sufficient evidence in the billing data that the additional hysteroscopies summarized in the statistics were actually billed; it is admissible to prove either intent or motive; and it passes the Rule 403 balancing test. Despite Kumar's argument that this evidence will serve only to portray Kumar as "a bad person," any risk of undue prejudice—which is relatively low in a case already built around hysteroscopies at PAC—does not substantially outweigh the high probative value of the evidence, which goes directly to the element of intent that the Government must prove. See United States v. Johnson, 27 F.3d 1186, 1192 (6th Cir. 1994) ("[W]here there is thrust upon the government . . . the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b).").

Thus, Kumar's Motion as to the statistical billing data is **DENIED**.

*2.     Upcoding*

The Government next states that several providers at PAC will testify first that, although PAC billed Medicare and TennCare as if they had conducted full "hysteroscopy with biopsy procedures," they had never done so, having performed only lesser "standalone endometrial biopsies." (ECF No. 163 at PageID 1511.) Second, the providers will testify that the paperwork

PAC gave them to fill out "contained only an option to mark a hysteroscopy with endometrial biopsy with no option to mark a standalone endometrial biopsy." (Id.)

The Government contends that this is "direct and intrinsic evidence of Kumar's health care fraud scheme," which is an element that the Government must prove,[2] and evidence of "his intent to defraud." (Id. at PageID 1512.) Because the upcoding evidence "involves the exact same procedures" and takes place "during the exact time frame covered by the indictment," it is intrinsic evidence, according to the Government. (Id. (citing United States v. Churn, 800 F.3d 768, 779 (6th Cir. 2015) ("We only require that the facts are closely related, not identical" for intrinsic evidence.) (citation modified)).) Again, the Government argues, in the alternative, that the evidence is also admissible under Rule 404(b) for the same reasons as those applicable to the statistical data evidence, outlined above. (Id.)

This testimony by PAC providers is intrinsic to the conduct charged in the Indictment, and thus is admissible. It does not impermissibly broaden the Indictment, as Kumar argues, but instead tends to make it more probable that Kumar conducted unnecessary hysteroscopies as charged. The Government's alternative argument for admission under Rule 404(b) is also valid. These "other acts" are supported by witness testimony and billing data; they are offered to prove

---

[2] The Government asserts that, in order to prove a violation of 18 U.S.C. § 1347, it must show that Kumar

> (1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud.

(ECF No. 163 at PageID 1511 (citing United States v. Anderson, 67 F.4th 755, 770 (6th Cir. 2023)).)

intent and motive; and their probative value—which is high—is not substantially outweighed by a risk of undue prejudice, delay, or confusion.

Thus, Kumar's Motion as to the evidence of upcoding is **DENIED**.

**B.      Uncollected Copays**

Finally, the Government anticipates that some of Kumar's Medicare patients "will testify that they were routinely not billed for their copayments." (ECF No. 163 at PageID 1513.)

Kumar argues that Rule 403 bars the evidence that PAC failed to collect copays from patients to gain their consent for unnecessary procedures. (ECF No. 141 at PageID 1262–64.) Kumar contends that this case is "exactly like" United States v. Walters, in which the court excluded evidence of health care providers' kickback payments "to induce referrals for unnecessary urine drug testing so that they could bill insurance companies for such services." (Id. at PageID 1263 (quoting 226 F. Supp. 3d 821, 824 (E.D. Ky. 2016)).) The Walters court held that the kickback payments under Rule 404(b) were not offered for a proper purpose and were substantially more prejudicial than probative because "[i]nappropriate payment arrangements do not, by default, indicate intent to defraud." 226 F. Supp. 3d at 825. "It is certainly possible," the court reasoned, "for an individual or entity to make illicit payments in order to obtain what would otherwise constitute legitimate business." Id. Here, likewise, argues Kumar, the evidence of uncollected copays at PAC should be excluded under Rule 403 because it "has minimal probative value and suggests to the jury that Dr. Kumar and/or [PAC] 'engaged in shady business practices.'" (ECF No. 141 at PageID 1263 (quoting Walters, 226 F. Supp. 3d at 825).)

In response, the Government argues that the uncollected copays are intrinsic evidence of Kumar's scheme to defraud. (ECF No. 163 at PageID 1514.) According to the Government, it

9

proves that Kumar "was attempting to hide his billing practices from patients who may be more likely to question procedures that are performed and billed repeatedly." (Id. at PageID 1513–14.)  In the alternative, the Government contends that it is proper Rule 404(b) evidence to prove intent, motive, or "an effort to conceal [Kumar's] billing actions." (Id. at PageID 1514.)  The Government further asserts that, generally, evidence of manipulating copays is particularly probative evidence that a provider concealed his billing practices from patients because copays "serve as a proxy for necessity and help ensure that patients are invested in getting the care the insurer is being asked to pay for." (Id. (quoting United States v. Bolos, 104 F.4th 562, 566 (6th Cir. 2024)).)

The Government argues that Kumar's reliance on Walters is inapposite because, in that case, the court excluded "other acts" evidence of kickback payments "made by one of the individual defendants to an investment company, not named in the indictment." (Id. at PageID 1515.)  Here, however, contends the Government, the uncollected copays were not directed at a third party, but were "directly related to the exact charged bills" at issue in the Indictment. (Id.)  Moreover, whereas the Walters court found that the illicit kickbacks were immaterial to any proper issue because "[i]t is certainly possible for an individual or entity to make illicit payments in order to obtain what would otherwise constitute legitimate business," 226 F. Supp. 3d at 825, here, the Government argues that it does not allege "that Kumar made any illicit payments or that the billing here would otherwise be legitimate." (ECF No. 163 at PageID 1515.)  Instead, the Government contends that the uncollected copays are direct evidence of "a way to cover up illegitimate billed procedures." (Id.)  Thus, according to the Government, the evidence of uncollected copays is admissible either as intrinsic evidence or, unlike in Walters, as proper Rule 404 "other acts" evidence. (Id.)

10

Unlike in Walters, where the court excluded Rule 404(b) evidence of a kickback to a third party, here, the evidence of uncollected copays is inherent in the Indictment's charge of fraud against Kumar. It is intrinsic evidence of a scheme, and thus is admissible because, as noted in Walters, "Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." 226 F. Supp. 3d 821, 824 (quoting United States v. Weinstock, 153 F.3d 272, 276 (6th Cir. 1998)). Although skipping a copay is not itself an illegal activity, the Government is entitled to offer the evidence to argue that it is "part of a continuing pattern" of alleged health care fraud. Thus, it is admissible intrinsic evidence. Whether a jury is so convinced is of course a separate issue.

The Government's alternative argument under Rule 404(b) is likewise persuasive. Unlike in Walters, where the evidence of kickbacks to a third party required a "logical leap" to show the defendants' "intent, knowledge, and plan to induce referrals for unnecessary urine drug testing so that they could bill insurance companies for such services," 226 F.Supp.3d at 825, here, the Government offers direct evidence that, by failing to collect copays, Kumar "was attempting to hide his billing practices from patients who may be more likely to question procedures that are performed and billed repeatedly." (ECF No. 163 at PageID 1513–14.) And, whereas Walters found that the kickbacks "were substantially more prejudicial than probative because '[i]nappropriate payment arrangements do not, by default, indicate intent to defraud,'" 226 F. Supp. 3d at 825, the uncollected copays here are not substantially more prejudicial than probative because the charging of copays is highly probative of whether the hysteroscopies were necessary.

Thus, Kumar's Motion as to the evidence of uncollected copays is **DENIED**.

11

## **CONCLUSION**

For the reasons stated above, Kumar's Motion is **DENIED**.

**IT IS SO ORDERED,** this 20th day of November, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE
