IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>    Plaintiff,  )<br>  )<br>v.  )  No. 2:25-cr-20032-SHL-1<br>  )<br>SANJEEV KUMAR,  )<br>    Defendant.  ) | |

**ORDER DENYING DEFENDANT'S MOTION IN LIMINE (ECF NO. 143)**

Before the Court is Defendant Sanjeev Kumar's Motion in Limine to Exclude Government's 404(b) Evidence Regarding Change in Reprocessing Practices for Hysteroscopes After Search Warrant, filed November 3. (ECF No. 143.) The Government filed its response on November 6. (ECF No. 158.)

For the reasons stated below, the Motion is **DENIED**.

## BACKGROUND

A full recitation of the facts is found in the Background section of a recent order in this matter. (See ECF No. 172 at PageID 1572–73.) Briefly, Kumar is an obstetrician-gynecologist and oncologist who operated PAC, a women's health care practice in Memphis, Tennessee. (ECF No. 136 at PageID 1195.) The Government asserts that, on or about April 16, 2024, Kumar "adulterated" single-use hysteroscopes in his clinic, that is, he reused on multiple patients the same disposable devices, which are instruments inserted through the vagina to inspect the uterus. (Id. at PageID 1211.) The single-use devices were reused, the Government contends, "after being partially dipped in a liquid chemical disinfectant and briefly rinsed on the outside with tap water between most uses. This attempted reprocessing neither disinfected nor sterilized

the instruments." (ECF 83 at PageID 661.) According to the Government, Kumar also performed some hysteroscopies with reusable devices that were "cleared for reprocessing." (Id.) However, the Government asserts that even the reusable versions were only partially cleaned "in a manner that fell well short of the manufacturer's cleared instructions for use." (Id. at PageID 661–62.)

On April 16, 2024, federal agents executed a search warrant at PAC, collecting medical devices as evidence. (ECF No. 143 at PageID 1278.) In October 2025, a federal grand jury returned the Second Superseding Indictment (the "Indictment") against Kumar containing forty-six counts:

- **Counts 1–16:** adulteration of single-use medical devices, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 351(a)(2)(A), and 18 U.S.C. § 2;
- **Counts 17–32:** misbranding of reprocessed single-use devices, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 352(v), and 18 U.S.C. § 2;
- **Counts 33–36:** adulteration of hysteroscopes cleared for reprocessing, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 351(a)(2)(A), and 18 U.S.C. § 2;
- **Counts 37–45:** health care fraud by conducting unnecessary procedures on nine patients in violation of 18 U.S.C. §§ 1347 and 2; and
- **Count 46:** health care fraud by making false statements in violation of 18 U.S.C. §§ 1347 and 2.

(ECF No. 136.)

On August 27, the Government filed its Notice of Intent to Offer Evidence Under Federal Rule of Evidence 404(b) (the "Notice"). (ECF No. 98.) Kumar, in turn, filed this Motion to exclude evidence of an alleged change in hysteroscope reprocessing practices after the execution of the search warrant. (ECF No. 143 at PageID 1279.)

## APPLICABLE LAW

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. "Evidence of any other crime, wrong, or act" other than the crimes of Indictment "is

2

not admissible to prove a person's character . . . ." Fed. R. Evid. 404(b)(1). But this "other acts" evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Before admitting Rule 404(b) evidence, courts must

> (1) make a preliminary determination as to whether sufficient evidence exists that the prior act occurred, (2) make a determination as to whether the "other act" is admissible for a proper purpose under Rule 404(b), and (3) determine whether the "other acts" evidence is more prejudicial than probative under Rule 403.

United States v. Poulsen, 655 F.3d 492, 508 (6th Cir. 2011) (citation omitted). If the government intends to use this evidence for a proper purpose, it must first "provide reasonable notice" to the defendant. Fed. R. Evid. 404(b)(3).

Intrinsic evidence is "inextricably intertwined with the criminal act charged . . . as opposed to extrinsic acts, which are those that occurred at different times and under different circumstances" from the criminal act. United States v. Churn, 800 F.3d 768, 779 (6th Cir. 2015). The trial court may "admit evidence regarding a defendant's unindicted criminal activity when that activity is 'intrinsic' or 'inextricably intertwined' with charges named in the indictment." Id. (emphasis in original) (citation omitted). Because intrinsic evidence "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense," it is generally not subject to Rule 404(b). United States v. Weir, No. 24-5335, 2025 WL 475099, at *5 (6th Cir. Feb. 12, 2025) (citation omitted). However, "[c]oncerned with the potential for abuse of background evidence as a means to circumvent Rule 404(b)," the Sixth Circuit has recognized "'severe limitations as to "temporal proximity, causal relationship, or spatial connections" among the other acts and the charged offense.'" United States v. Adams, 722 F.3d 788, 810 (6th Cir. 2013) (citation omitted).

3

When evidence concerns subsequent remedial measures, even relevant evidence may be excluded as a matter of policy under Federal Rule of Evidence 407. "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct . . . ." Fed. R. Evid. 407. However, some courts have held that "the stated policy reasons for [Rule 407] are only applicable in the personal injury/civil litigation context; and therefore, application of Rule 407 in the criminal context could not possibly further the policies behind the rule." United States v. Gallagher, CRIM. No. 89-00272-03, 1990 WL 52722, at *1 (E.D. Pa. Apr. 24, 1990). And evidence may always be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ANALYSIS

Kumar seeks to "exclude evidence of an alleged change in reprocessing practices for hysteroscopes after the execution of a search warrant at [PAC] on April 16, 2024." (ECF No. 143 at PageID 1278.) Specifically, he refers to the Government's allegations that, after the search of PAC, "single use hysteroscopes were no longer reused" and, for reusable hysteroscopes, "the reprocessing practice changed." (Id. at PageID 1279 (quoting ECF No. 98 at PageID 768).) Kumar argues that evidence of this change in PAC's practices (1) is not intrinsic to the charged conduct because that conduct was complete after the execution of the search warrant, (2) is not offered for a proper Rule 404(b) purpose and fails the Rule 403 balancing test, and (3) should be excluded under Rule 407 as evidence of subsequent remedial measures. (Id. at PageID 1281.)

Kumar's arguments are considered below.

I.  **Intrinsic Evidence**

Kumar first argues that the evidence of changes in reprocessing practices is not intrinsic evidence because it is "not necessary to explain the charged offense[s]" or to "complete the story" of those charges.  (Id. at PageID 1282.)  After all, contends Kumar, for Counts 1–36 and Count 46, "the story of those charges was complete on the date of the search warrant."  (Id. (citation modified).)  He cites United States v. Gibbs, in which acts that occurred twenty days after the charged conduct were held not to be intrinsic evidence.  (Id. at PageID 1283 (quoting 797 F.3d 416, 424 (6th Cir. 2015)).)  Like the later-occurring conduct in Gibbs, argues Kumar, the alleged changes in reprocessing at PAC occurred after the charged conduct and should be excluded as extrinsic evidence.  (Id.)

In response, the Government first argues that this evidence is intrinsic to the charges in the Indictment "because the changes in reprocessing occurred immediately after the search warrant."  (ECF No. 158 at PageID 1468.)  Because the evidence is "inextricably intertwined with" the indicted conduct, according to the Government, it is direct evidence that tends to show that Kumar caused medical devices to be adulterated.  (Id. at PageID 1470.)  In response to Kumar's argument that Gibbs excludes later-occurring acts as extrinsic, the Government asserts that Gibbs is inapposite.  (Id. at PageID 1469–70.)  The Gibbs court held that, in a case about a felon in possession of ammunition, evidence of a shooting a month later was "not at all necessary to determine whether [d]efendant possessed ammunition at that earlier time," and thus was extrinsic to the charged offense.  (Id. at PageID 1470 (quoting 797 F.3d at 423).)  Here, however, argues the Government, the evidence "is of an *immediate* transition to more stringent reprocessing regimens rather than a change that occurred a month or more later."  (Id.)  Further,

5

this evidence is "inextricably bound" to the story of this case, where most of the charges allege device adulteration. (Id.)

The Government next argues that the evidence is intrinsic "because multiple government witnesses will contrast pre-search warrant [procedures] with post-search warrant [procedures]." (Id. at PageID 1468.) The Government also asserts that a major issue in the case will be whether Kumar was "holding" medical devices "for sale" under 21 U.S.C. § 331(k). (Id. at PageID 1470.) Evidence that Kumar changed PAC's policy after April 16, 2024, makes it more probable that "he was in fact [re]using single use devices during the timeframe of the indictment," and thus "holding" them "for sale." (Id.) In short, the story of the alleged reuse of single-use devices, according to the Government, is incomplete without this evidence, and thus it is admissible as intrinsic evidence. (Id.)

The evidence of an immediate change to PAC's reprocessing practices is intrinsic to the conduct charged in the Indictment. It is "directly probative of the charged offense" and "arises from the same events as the charged offense." See Weir, 2025 WL 475099, at *5. Because thirty-six counts of the Indictment charge Kumar with acts occurring on or about April 16, 2024, the same day PAC was searched, any changes made in the following days is highly probative of the charged conduct and are connected temporally, causally, and spatially. See Adams, 722 F.3d at 810. As intrinsic evidence, it is not subject to exclusion.

**II.     Rules 404(b) and 403**

Kumar next argues that the evidence should be excluded because it is not offered for a proper Rule 404(b) purpose. (ECF No. 143 at PageID 1283–85.) Although Kumar, moving quickly through his Rule 404(b) argument, does not specify the Government's stated purpose for the "other acts" evidence, the Government's Notice listed the purposes as "modus operandi, plan

6

and preparation, and intent to defraud." (ECF No. 98 at PageID 768.)  Kumar focuses instead on arguing that the evidence is barred by Rule 403.  (ECF No. 143 at PageID 1284.)  The probative value of the evidence, according to Kumar, is "minimal" because "the Government's charges do not encompass the time period after the Search Warrant," whereas the danger of unfair prejudice is high because the evidence suggests that "Kumar acted in conformity with his alleged intent to improperly reuse medical devices" and commit health care fraud.  (Id.)  Further, he states that it will confuse the jury to introduce later-occurring evidence, and it will waste time to call additional witnesses.  (Id. at PageID 1285.)

 In response, the Government argues that, if the evidence is not intrinsic, then it is still admissible under Rule 404(b) and does not offend Rule 403.  (ECF No. 158 at PageID 1470–74.)  Despite Kumar's argument that evidence of acts occurring after the charged conduct has minimal probative value, the Government contends that "a sudden shift from reusing to not reusing single use devices" is "of significant evidentiary value when the inflection point at the heart of the sudden shift is a search by federal agents."  (Id. at PageID 1472.)  This evidence will be offered to prove Kumar's "intent to defraud or mislead as alleged in the adulteration charges."  (Id.)  The Government also asserts that the Rule 404(b) evidence proves Kumar's plan, consciousness of guilt, and "concealment of evidence."  (Id.)  Further, the Government contends that Rule 403 does not bar the evidence because the change in PAC's procedures "is in and of itself a benign act that does not risk sweeping the jury into a prohibited line of thinking," unlike evidence of a previous criminal conviction, for example.  (Id. at PageID 1473.)  The evidence will not confuse the jury, according to the Government, because it occurred immediately after the timeframe at issue, and no additional witnesses will be needed to introduce it.  (Id. at PageID 1474.)

Although the evidence of a change in practices at PAC is intrinsic evidence and not subject to Rule 404(b)(1), nevertheless, in the alternative, it is also offered for a permissible purpose under Rule 404(b)(2). And, because the Government is correct that evidence of a sudden shift of this sort has "significant evidentiary value," its probative value is not substantially outweighed by a danger of unfair prejudice, confusing the issues, or wasting time. As the Government argues, the act of changing procedures at PAC is not a criminal act and will not provoke an undue emotional response in the jury. Thus, the evidence will not be excluded under either Rule 404(b) or Rule 403.

### III. Rule 407

Finally, Kumar argues that the changes made at PAC are evidence of "subsequent remedial measures" offered by the Government to prove Kumar's culpability, and thus must be excluded under Rule 407. (ECF No. 143 at PageID 1286.) Kumar relies on three out-of-circuit district court cases, in addition to United States v. Patrick, Case No. 16-cr-20390, 2016 WL 6610983 (E.D. Mich. Nov. 9, 2016), to argue that Rule 407, although typically applicable to the civil context, can apply to criminal cases as well. (Id.)

In response, the Government asserts that Rule 407 has no place outside the civil context. (ECF No. 158 at PageID 1475.) It argues that Patrick was "not well reasoned" because it omitted any reasoning at all about why Rule 407 should be exported to the criminal sphere. (Id.) Indeed, the Government "could not find a single case where the Sixth Circuit (and the defendant has not cited one) has affirmed the application of Rule 407 in a criminal prosecution." (Id.)

The policy behind Rule 407 is one of "encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Gallagher, 1990 WL 52722, at *1. Here, that policy would not be served by excluding evidence of the change in

8

procedures at PAC because the primary goal of a criminal prosecution is not safety, but purposes such as retribution, deterrence, and rehabilitation. Because a "decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case," Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011), the Court will not follow those few courts that have applied Rule 407 to the criminal context. Thus, the evidence will not be excluded under Rule 407.

## CONCLUSION

For the reasons stated above, Kumar's Motion is **DENIED**.

**IT IS SO ORDERED,** this 24th day of November, 2025.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
CHIEF UNITED STATES DISTRICT JUDGE