IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:25-cr-20032-SHL-1 |
| | ) |
| SANJEEV KUMAR, | ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS (ECF NOS. 144 & 159)**

Before the Court are two motions to dismiss filed by Defendant Sanjeev Kumar. Kumar filed his Motion to Dismiss Second Superseding Indictment for Vindictive Prosecution on November 3, 2025. (ECF No. 144.) The Government responded on November 7. (ECF No. 164.) Kumar also filed his Motion to Dismiss Counts 1–36 for Failure to State Offense on November 6. (ECF No. 159.) The Government responded on November 12. (ECF No. 174.)

For the reasons stated below, the Motions are **DENIED**.

## BACKGROUND

Kumar operated the Poplar Avenue Clinic ("PAC"), a women's health care practice in Memphis, Tennessee. (ECF No. 136 at PageID 1195.) The Government asserts that, on or about April 16, 2024, Kumar "adulterated" single-use hysteroscopes in his clinic, that is, he reused on multiple patients the same disposable devices, which are instruments inserted through the vagina to inspect the uterus. (Id. at PageID 1211.) The single-use devices were reused, the Government contends, "after being partially dipped in a liquid chemical disinfectant and briefly rinsed on the outside with tap water between most uses. This attempted reprocessing neither disinfected nor sterilized the instruments." (ECF 83 at PageID 661.) According to the Government, Kumar also

employed reusable hysteroscopes. (Id.) However, the Government contends that Kumar "did not properly clean, disinfect, and/or sterilize" these devices either. (ECF No. 136 at PageID 1197.) The Government recovered the devices at issue on April 16, 2024, during a search pursuant to a warrant. (ECF No. 83 at PageID 662.)

In addition to adulterating the devices, Kumar is also charged with "misbranding" the devices, meaning that he allegedly failed to add conspicuous labeling to the devices to indicate that they had been reprocessed, as required by statute. (Id.) As a result, the Government contends that patients "had no way of knowing that the defendant and other providers at PAC were exposing them to used instruments that had only been cleared by the FDA for single use." (Id.)

The Government further alleges that Kumar repeated "medically unnecessary hysteroscopy procedures on patients." (ECF No. 136 at PageID 1196.) As a result, according to the Government, Kumar became "the top-paid provider in Tennessee for Medicare and Medicaid for hysteroscopy biopsy services" from September 12, 2019, to April 16, 2024. (Id. at PageID 1195.)

A federal grand jury returned the Second Superseding Indictment against Kumar containing the following forty-six counts:

- **Counts 1–16:** adulteration of single-use medical devices, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 351(a)(2)(A), and 18 U.S.C. § 2;
- **Counts 17–32:** misbranding of reprocessed single-use devices, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 352(v), and 18 U.S.C. § 2;
- **Counts 33–36:** adulteration of hysteroscopes cleared for reprocessing, in violation of 21 U.S.C. §§ 331(k), 333(a)(1), 333(a)(2), 351(a)(2)(A), and 18 U.S.C. § 2;
- **Counts 37–45:** health care fraud by conducting unnecessary procedures on nine patients in violation of 18 U.S.C. §§ 1347 and 2; and
- **Count 46:** health care fraud by making false statements in violation of 18 U.S.C. §§ 1347 and 2.

(ECF No. 136.) The trial begins December 1, 2025. (ECF No. 96.)

## ANALYSIS

Each of Kumar's motions is considered below.

I.   **Vindictive Prosecution (ECF No. 144)**

The Due Process Clause of the Fifth Amendment "prohibits the Government from bringing more serious charges against a defendant" after he exercises a constitutional right, "unless the prosecutor comes forward with objective evidence to show that the increased charges could not have been brought before the defendant exercised his rights." United States v. Goodwin, 457 U.S. 368, 372 (1982). "[D]efendants may challenge the government's charging decisions for actual or presumptive vindictiveness." United States v. Zakhari, 85 F.4th 367, 379 (6th Cir. 2023). If "in the particular factual situation presented, there exist[s] a 'realistic likelihood of vindictiveness' for the prosecutor's augmentation of the charges," a court may presume vindictiveness. United States v. Andrews, 633 F.2d 449, 453 (6th Cir. 1980). A defendant can demonstrate "a realistic likelihood of vindictiveness" by showing: "(1) [the] exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; [and] (4) the intent to punish the defendant for [the] exercise of the protected right." United States v. Suarez, 263 F.3d 468, 479 (6th Cir. 2001).

Here, Kumar asserts that he discerns a pattern in the Government's prosecution of the case against him—that the Government has been "punishing Dr. Kumar for exercising his constitutional rights." (ECF No. 144 at PageID 1290.) For instance, after the initial Indictment was returned in February 2025, and after Kumar filed a notice in June requesting a bill of particulars, a Superseding Indictment was returned "just *three* days" later. (Id. at PageID 1291.) Then, after the Court granted Kumar's motion to dismiss seventeen counts in the Superseding Indictment, "the Government superseded for the *second* time and added twenty-seven (27)

counts of adulterating and misbranding medical devices." (Id. at PageID 1292.) Kumar complains that, although he had "been asking for the Government to specify its charging theories since the day the original indictment was returned," it was not until the Second Superseding Indictment that the Government specified a separate count for each medical device recovered in the April 16, 2024, search of PAC. (Id.)

According to Kumar, the Government's prosecution is vindictive because it added twenty-seven charges "only after the Court dismissed [thirteen] adulteration and misbranding counts." (Id. at PageID 1293.) Kumar contends that the addition of these charges "raises a presumption of vindictiveness."[1] (Id. at PageID 1296.) Kumar cites cases including Andrews, 633 F.2d at 457, and Zakhari, 85 F.4th 367, in which courts found vindictive prosecutions after prosecutors added new counts in retaliation for defendants' pretrial motions. (Id. at PageID 1298.) Here, likewise, according to Kumar, the "Government's addition of twenty-seven counts (27), only a month before trial, is simply put—a trial by ambush." (Id. at PageID 1299.) Because of these twenty-seven counts, Kumar contends that "he is now facing up to 81 years additional prison time, up to $270,000 in additional fines, and up to $2,700 in mandatory special assessments." (Id. at PageID 1301.) Thus, he seeks dismissal of this case.

In response, the Government argues that Kumar fails to raise a presumption of vindictiveness as a matter of law because he cannot show that "the prosecution had a stake in the exercise of his constitutional right" and that "the prosecution's conduct was unreasonable." (ECF No. 164 at PageID 1525.) However, according to the Government, even if Kumar could show both of those elements, the Government would be able to rebut the presumption by proving

---

[1] Kumar alleges only presumptive, not actual, vindictiveness. (ECF No. 144 at PageID 1296 n.5.) Because Kumar does not allege actual vindictiveness, this Order does not address it.

that "it had no objective intent to punish the defendant for the exercise of his constitutional right." (Id.) In presenting the Second Superseding Indictment to the Grand Jury, the Government contends that it was not seeking to punish Kumar, but "was instead aligning its charging decisions with this Court's Order dismissing several of the adulteration and misbranding charges as duplicitous." (Id. at PageID 1525–26 (citing ECF No. 124).)

Specifically, the Government seeks to rebut Kumar's assertion that the Government had a prosecutorial stake in avoiding a bill of particulars—which, according to Kumar, would have "saddle[d] the government with the considerable burden of starting its entire case from scratch"—and that it retaliated against Kumar for seeking a bill of particulars. (Id. at PageID 1526 (quoting ECF No. 144 at PageID 1297 n.6).) The Government asserts in response that, even after the Court dismissed thirteen counts as duplicitous, there was no burden on the Government to start from scratch. (Id.) Indeed, although the Court required the Government to present the evidence with greater specificity, the dismissal of thirteen counts "did not strike or suppress any of the evidence in this case" and it simply required the Government to charge "in a different way so as not to prejudice the defendant." (Id.) In support, the Government cites two cases in which a defendant's successful motion to dismiss, which caused the Government to re-indict in accordance with a court's order, led to no presumption of vindictiveness. (Id. at 1527 (citing United States v. Moon, 513 F.3d 527, 535 (6th Cir. 2008); United States v. Rosse, 716 F. App'x 453, 463 (6th Cir. 2017)).) Thus, the Government contends that it had no reason to retaliate against Kumar. (Id.)

The Government next argues that, in addition to lacking a prosecutorial stake, its conduct was reasonable. (Id. at PageID 1528–29.) It notes that Kumar "does not appear to argue that the government's conduct was unreasonable." (Id. at PageID 1528.) Indeed, the Government

5

asserts that it "moved to re-indict less than two weeks after the Court's Order granting Dismissal" of the duplicitous charges. (Id.) It contends that it would even have been reasonable for the Government to "seek thousands of additional counts, for each billed hysteroscopy not completed with a new hysteroscope, in line with the Court's order." (Id.) Yet, according to the Government, it sought only twenty-seven new counts. (Id.) A change such as this, made pretrial, militates against a finding of vindictiveness, contends the Government. (Id. at PageID 1529 (citing United States v. Poole, 407 F.3d 767, 776 (6th Cir. 2005)).)

Finally, in response to Kumar's argument that the Second Superseding Indictment increased his potential criminal penalties and thus displays the Government's intent to punish him, the Government asserts that Kumar's "guideline range will still be driven by the [unchanged] health care fraud counts," and that the Government "believes that his guideline range estimate remains the same as the indictment and superseding indictment." (Id. at PageID 1530.)

The elements of presumed vindictiveness are not satisfied here. See Suarez, 263 F.3d at 479. Although Kumar has regularly exercised his protected rights in this case, he cannot show that the Government retaliated against him on the theory that it had a stake in withholding specific facts from him. On the contrary, after thirteen of its counts were dismissed, the Government clarified its charges by specifying that the adulterating and misbranding counts took place on or about April 16, 2024, and by distinguishing between the particular devices at issue. Moreover, the Government's conduct was not unreasonable because its Second Superseding Indictment was returned within two weeks of the Court's dismissal of thirteen charges, and the new charges were closely related to what preceded. Finally, Kumar has shown no objective intent to punish him for exercising his rights because, although he may discern a temporal

6

connection between the superseding indictments and his motions, the Government's decision to supersede twice is more reasonably explained by the progress of litigation in this case.

Thus, Kumar's Motion to Dismiss Second Superseding Indictment for Vindictive Prosecution is **DENIED**.

## II.     Failure to State an Offense (ECF No. 159)

"An indictment must be a 'plain, concise, and definite written statement of the essential facts constituting the offense charged.'" United States v. Palma, 58 F.4th 246, 249 (6th Cir. 2023) (quoting Fed. R. Crim. P. 7(c)(1)).  "[A]n indictment is sufficient if it [1] contains the elements of the offense charged and [2] fairly informs a defendant of the charge against which he must defend, and [3] enables him to plead an acquittal or conviction in bar of future prosecution for the same offense."  Hamling v. United States, 418 U.S. 87, 117 (1974).  "Although the statutory language of the offense may be used, it 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense.'"  Palma, 58 F.4th at 249 (quoting Hamling, 418 U.S. at 117–18).

In this motion to dismiss, Kumar argues that Counts 1–36 of the Second Superseding Indictment (the "Indictment"), charging him with adulterating and misbranding medical devices, should be dismissed, apparently for two interrelated reasons.[2]  First, the Indictment "does not specify the act, date, or patient where the alleged act of 'adulteration' or 'misbranding' occurred.'"  (ECF No. 159 at PageID 1481.)  Second, concerning Counts 1–16, that the Government has chosen the wrong "act" as violative of the Federal Food, Drug, and Cosmetic Act ("FDCA")—although the Government charges Kumar with leaving devices in cleaning

---

[2] Kumar also requests an oral argument on the Motion.  (Id. at PageID 1483.)  Because the Parties' filings are sufficient, that request is denied.

7

solution on April 16, 2024, the true "act" should have been "the procedure in which the device was 'reused,'" which the Government does not specify. (Id. at PageID 1482.)

For his first argument, Kumar contends that, because this Court determined that "held for sale" under 21 U.S.C. § 331(k) includes a physician's use of a single-use device on a patient, and because the Court rejected the Government's "continuing course of conduct theory," the Government became obligated to "specify, at a minimum, that each device was used in treating multiple patients" as well as to "specify the date or the patient."[3] (Id. at PageID 1481.) Because the Government did not provide these facts, Kumar argues that this case is just like Russell v. United States, 369 U.S. 749 (1962), in which "the Court reversed convictions because the indictments failed to specify the subject of a congressional inquiry that the defendants refused to answer questions about." (Id. at PageID 1479.) Like the defendants in Russell, Kumar asserts that he, too, is "uninformed of the core of the charge" against him. (Id.)

For his second argument, Kumar argues that the lack of specificity about what constitutes the precise violative "act" in Counts 1–16 harms his ability to defend himself and risks double jeopardy. (Id. at PageID 1485–86.) In essence, he contends that the only adulterating "act" contained in the Indictment is that he left medical devices in a cleaning solution on April 16, 2024, which is not an "act" in the first place. (Id. at PageID 1482.) He demands that the Government name a more specific act. (Id.) "For example," Kumar explains, "if he knew Count

---

[3] Kumar poses additional questions of the Indictment, including queries about "the *date* that any one of the acts was committed on, the patient who was the '*victim*' and whether he *defrauded* or *misled* the patient, the insurer, the government, or someone else. Additionally, the Indictment does not specify if Dr. Kumar is being prosecuted for the acts of another employee who adulterated devices, and Dr. Kumar simply permitted it, or if he committed the act personally." (ECF No. 159 at PageID 1482.) However, as discussed below, the Indictment already states sufficient law and facts to put a person of ordinary intelligence on notice of the substance of the charges against him. Thus, these additional questions need not be addressed.

One concerned an Endosee cannula allegedly reused on Patient A in January 2024, he could gather medical records, testimony, or expert evidence to refute that specific allegation (or show it was properly cleaned or disposed of)." (Id. at PageID 1485.) According to Kumar, "the Government's inability to allege any concrete adulteration act strongly suggests it lacks evidence of any." (Id. at PageID 1487.) As a result, Kumar contends that he is at risk for double jeopardy because a "future prosecutor could attempt to recharge Dr. Kumar for reusing a device on a certain patient, and it would be impossible to tell if that incident was already encompassed by the nebulous April 16, 2024 charges." (Id. at PageID 1486.)

In response to Kumar's first argument that the Indictment fails to specify the "act, date, or patient," the Government argues that "counts 1-36 of the [Indictment] clearly and unambiguously charge the elements of the statute at issue." (ECF No. 174 at PageID 1598.) It begins by restating the elements of 21 U.S.C. § 331(k). (Id. at PageID 1598–99.) The Government then quotes specific passages of the Indictment that both track the language of the statute and provide several pages of specific facts in support of the charges. (Id. at PageID 1599–1601.) In light of the ample facts in the Indictment, the Government argues that Kumar's reliance on Russell is misplaced. (Id. at PageID 1601–02 (citing 369 U.S. at 752).) In that case, contends the Government, "the allegations truly tracked just the language of the statute and nothing more," but here, "there are lengthy sections of overview and background incorporated by reference into counts 1–36, nearly all of which provid[e] detail to flesh out the charges." (Id.) Thus, the Government argues that facts in the Indictment "are especially clear and detailed in apprising the defendant of the allegations against him." (Id.)

The Government then turns to Kumar's second argument, that merely soaking devices in a cleaning solution does not violate the FDCA, absent an allegation of a specific act of

9

adulteration with a specific patient. (Id. at PageID 1602–07.) In response, the Government first points out that this Court previously approved of the earlier Counts 10–11, 14–15, 19–20, 23–24, and 26 as "properly charged counts." (Id. (quoting ECF No. 124 at PageID 1049).) And, like those previous counts, the Government contends that each of the current Counts 1–36 "charges one adulterated or misbranded device recovered during the April 16, 2024 search of Kumar's clinic," and are thus proper, too. (Id. at PageID 1603.) Also, although Kumar asserts that the Government cannot assume that "the date a device was found in cleaning solution is the date of the 'act'" (ECF No. 159 at PageID 1482), the Government relies on United States v. Weisenfeld Warehouse Company to argue that the very "'holding' or storing" of medical devices is the violation:

> Section 301(k) [21 U.S.C. § 331(k)], read together with the definition of food adulteration contained in [§] 402(a)(4), therefore, gives ample warning that the 'holding' or storing of food under insanitary conditions whereby it may have become contaminated is prohibited.

(Id. (quoting 376 U.S. 86, 91 (1964)).) In that case, the Supreme Court also quoted the House Committee Report behind the FDCA, stating that

> 'the amended section would penalize, among other acts resulting in adulteration or misbranding, the act of holding articles under insanitary conditions whereby they may become contaminated with filth or rendered injurious to health' and emphasized that the Committee intended the amendments to be applied to their fullest constitutional limits.

(Id. at PageID 1604 (quoting Weisenfeld, 376 U.S. at 90).) Thus, according to the Government, because proof of "'holding' or storing" a device in insanitary conditions is sufficient to make out an adulteration violation, the Indictment does not need to pin the adulteration to any particular office visit or patient to properly state an offense. (Id. at 1605–07.)

The Government further argues that Kumar's interpretation of the FDCA would, figuratively speaking, "require a charging document to identify the specific rodent that rendered

10

a grain warehouse unsanitary and on which day.  The FDCA and its caselaw do not require such an absurd result." (Id. at 1604 (citing United States v. Gel Spice Co., 601 F. Supp. 1214, 1221 (E.D.N.Y. 1985)).)  Citing several cases at length, the Government concludes that "the entire purpose of the FDCA is to prevent articles that are injurious to consumer health from reaching consumers, and it would subvert this well-settled purpose if physicians who adulterate drugs and devices prior to using them on patients were exempt from the statute."  (Id. at PageID 1607.)

Finally, the Government contends that Kumar's fear of double jeopardy is unfounded.  (Id.)  According to the Government, each count of the Indictment "pleads enough facts regarding each regulated product and the circumstances of its adulteration to be distinguished from potential subsequent prosecutions."  (Id.)  Because the Indictment "pleads a particular device name, device manufacturer, location, date, and, as overview, device purchase history," the Government argues that Counts 1–16 "do not risk exposing the defendant to double jeopardy."  (Id.)

Much of Kumar's Motion repeats arguments from his Motion for Bill of Particulars as to Superseding Indictment (ECF No. 100), which were rejected (ECF No. 111).  As stated in a previous order about a previous Indictment, this Indictment likewise "lists discrete charges with information sufficient for Kumar to prepare his defense."  (ECF No. 111 at PageID 948.)  As to Kumar's first argument, that the Indictment impermissibly fails to specify the "act, date, or patient," in fact, the Indictment states sufficient law and facts to put a person of ordinary intelligence on notice of the particular offenses and dates at issue.  For example, Count 1 charges Kumar with adulterating a particular CooperSurgical Endosee PX Cannula, stored in Room H on the "countertop in liquid," on or about April 16, 2024.  (ECF No. 136 at PageID 1211.)  All of

11

the thirty-six counts which Kumar challenges feature this level of specificity. (See ECF No. 136.)

Moreover, the Government is correct that, under the FDCA, the Indictment need not state the name of any patient because the FDCA forbids "the 'holding' or storing of [devices] under insanitary conditions whereby [they] may have become contaminated." See Weisenfeld, 376 U.S. at 91. And Weisenfeld also dispenses with his second argument: because the Indictment alleges that Kumar held re-used single-use devices for sale under insanitary conditions on April 16, 2024, it states an offense under the FDCA. See id. The "'holding' or storing" itself was the violative act. See id. Finally, as a practical matter, although Kumar contends that "the Government's inability to allege any concrete adulteration act strongly suggests it lacks evidence of any" (ECF No. 159 at PageID 1487), it will be up to the jury to decide whether the evidence is sufficient.

Thus, Kumar's Motion to Dismiss Counts 1–36 for Failure to State Offense is **DENIED**.

## CONCLUSION

For the reasons stated above, Kumar's Motions to Dismiss are **DENIED**.

**IT IS SO ORDERED,** this 25th day of November, 2025.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
CHIEF UNITED STATES DISTRICT JUDGE