IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

VS.                                                                 Criminal No. 25-cr-20032-SHL

**SANJEEV KUMAR,**

        **Defendant.**

---

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
RENEWED MOTION FOR MISTRIAL**

---

The United States of America opposes defendant's Renewed Motion for Mistrial. (ECF 224). Defendant's arguments are without merit. The motion should be denied.

**BACKGROUND AND PROCEDURAL HISTORY**

The United States offers background and procedural history relevant to the defendant's renewed motion for mistrial and supplemental memorandum in support his motion for mistrial. The government only addresses what it believes to be the bases for the defense's motion. If further clarification on any other issues is required, the government is prepared to fully brief those issues. The government has far exceeded its duty under Federal Rule of Criminal Procedure 16 and *Brady* and provided extensive discovery in this case.

In May 2024, the government conducted an interview with Huda Alaeddin-Hussein pursuant to a proffer letter agreement signed by the United States, Ms. Alaeddin-Hussein, and her counsel, Michael Scholl. At that proffer, she indicated she would be willing to provide the cell phone that contained her communications with the defendant. She did not have her phone with her

1

and the government had no access to it at this time. In late May 2024, Special Agent Reagan Fajkus created a folder on a secure file sharing platform and sent Ms. Alaeddin-Hussein a link to upload WhatsApp messages. Ms. Alaeddin-Hussein uploaded the WhatsApp messages and miscellaneous items, including numerous personal photographs, on May 31 and June 25, 2024. The WhatsApp chats transcript was provided to defense counsel in the July 2, 2025 production, beginning at USA-0090859. Special Agent Fajkus documented receipt of the materials on July 8, 2024, and it was provided to defense counsel in the August 8, 2025 discovery production, USA-0092255.

As explained by Ms. Alaeddin-Hussein during her trial testimony, she later provided her phone for the first time at a trial preparation session on October 23 and 24, 2025. She testified that the United States had requested that she bring the phone because the United States had determined the specific instances of the WhatsApp messaging that it wished to present at trial and wished to take screen shots of those messages. Her testimony was consistent with what occurred on these points. On October 23 or 24, 2025, Ms. Alaeddin-Hussein brought in her phone, unlocked it and navigated to the WhatsApp application to allow an agent to take screen shots of the specific WhatsApp messages that would become proposed exhibits in the trial. Those same messages had already been produced to defense counsel in the July 2, 2025 production of the WhatsApp transcript. Ms. Alaeddin-Hussein sat next to the agent while this occurred. After the agent recovered the screenshots, the phone was turned off and the contents were not accessible by the government. Ms. Alaeddin-Hussein was travelling home and advised she did not want to have to bring the phone back should it be needed again for exhibits and asked to have it stay in Memphis. The phone was maintained, off, at the U. S. Attorney's Office until returned to Ms. Alaeddin-Hussein after her testimony as directed by the Court. No one from the government turned the phone on or sought access to its contents between the time the screenshots were recovered and when it

was returned to Ms. Alaeddin-Hussein. No one from the government knew Ms. Alaeddin-Hussein's passcode and there has been no effort to retrieve that passcode from Ms. Alaeddin-Hussein.

The government messaged defense counsel the evening of December 11, 2025 following Ms. Alaeddin-Hussein's testimony: "As part of the WhatsApp upload, there were numerous explicit photos and miscellaneous material, none of which is exculpatory. However, we will provide that material to you on a thumb drive tomorrow." The government never received a flash drive created by Ms. Alaeddin-Hussein, nor does it understand defendant's assertion that she created one on July 4, 2024 and provided it to the government.

On September 30, 2025, the government offered defendant a pre-trial exhibit review to facilitate a more efficient trial process. On October 13, 2025, the parties agreed on November 4, 2025, for an in-person meeting at the U.S. Attorney's Office in Memphis where the government would present anticipated trial exhibits for review. On November 4, 2025, the parties met in-person for the prescheduled presentation of the government's trial exhibits. These exhibits included screen shots of the WhatsApp messages between Huda Alaeddin-Hussein and the defendant. Upon request from defense counsel at that meeting, the government also provided Bates stamped electronic copies of the previously non-stamped WhatsApp exhibits to assist in their trial preparation on the same day. The government first learned of defense counsel's objection to the WhatsApp messages on December 10, 2025, minutes prior to Ms. Alaeddin-Hussein being called to the stand and more than one month after providing the defense with a reduced selection of screen shots it intended to introduce at trial.

On December 4, 2025, Paige Theuer testified in this trial. Her testimony related to employment at Poplar Avenue Clinic. She testified that she still used single-use devices at Poplar

3

Avenue Clinic in 2024 and that they were still available for use by all providers. Defense counsel did not object to the questions or answers related to the use of these devices during the direct examination. Defense objected to the last two questions of Ms. Theuer's testimony and asked to have readback of those questions and answers, which was completed before the lunch break. After the lunch break, defense requested a mistrial based on her answers to the last two questions in her direct examination. The Court proceeded with the trial and ordered defense counsel to file a motion for mistrial by Monday, December 8. Defense counsel also addressed the fact that they believed "[h]er testimony today was substantially different than the statement that she gave the FBI many, many months ago." (ECF 211, PageID 2353, lines 20-21). The United States provided defense with all *Jencks* material related to this witness and asserted as much to the Court. (ECF 211, PageID 2354, lines 17-18). The United States also asked for which line in her report was opposite of her testimony as it did not appear to the United States that she testified inconsistently with her previous statements. (ECF 211, PageID 2355, lines 1-2).

On December 11, 2025, Harley (Brim) Collier testified as to her employment at Poplar Avenue Clinic in this trial. Her direct examination was completed at 2:28 p.m. (ECF 245, PageID 5055, Lines 1-2). A law enforcement memorandum of her statement had not been produced in the Government's early disclosures. The statement was provided immediately after her testimony when requested by defense counsel and ordered by the Court, as *Jencks* material. Defense counsel was granted a 30-minute recess and then afforded over an hour to review the six-page report. Defense counsel asserted that she had reviewed the report and that she was ready to proceed and then cross-examined Ms. Collier. (ECF 245, PageID 5102, Lines 15-19 and PageID 5106, Lines 16-18).

Thomas Lawson testified on December 4, 2025 that he prepared a summary related to UroViu orders by Poplar Avenue Clinic in April 2024, which was introduced into evidence as Exhibit 65. In that summary, Mr. Lawson related that there had been no UroViu orders since March 2023 and no devices delivered in 2024 through April 18, 2024. Defense counsel cross examined him extensively on this summary and its inaccuracies; so much so, that minutes after getting off the witness stand, Mr. Lawson messaged Special Agent Kriplean about how he could have responded better on a few points. Special Agent Kriplean did not review the message. The United States turned over this message immediately and followed the Court's instructions to inform all subsequent witnesses not to discuss their testimony through any means with anyone on the prosecution team. On December 11, 2025, the United States produced an e-mail dated April 23, 2024 from Mr. Lawson to Special Agent Kriplean regarding the same summary and ordering history he previously testified about. On December 13, 2025, this Court reviewed the e-mail and determined that it was not exculpatory.

The United States caused Mr. Lawson to be available for recall by defense and he subsequently returned to the witness stand and testified again on December 17, 2025. The direct examination was related to the differences between the Uro-V and the Hystero-V and what Mr. Lawson told Special Agent Kriplean related to whether they are different or identical. Additionally, defense counsel got into whether the Hystero-V had a working channel and Mr. Lawson's knowledge of said channel. Defense counsel probed bias of Mr. Lawson as it related to the e-mail he sent to Special Agent Kriplean following his testimony on December 4, 2025, and entered that e-mail as Exhibit 185. Defense counsel did not question Mr. Lawson at all about the e-mail disclosed on December 11, 2025 dated April 23, 2024.

Stephanie Tworek testified on December 16, 2025 after Special Agent Kriplean. She appears to have provided Special Agent Kriplean with a text message screen shot of her February 2021 course evaluation report to Christian Brothers University on March 11, 2025. This text message was entered into evidence by defense counsel as Exhibit 162. She addressed it to Special Agent Kriplean's phone number and received a response acknowledging receipt. This message was not recovered from Special Agent Kriplean's phone, nor was it provided to defense counsel prior to or during trial by the United States. After this text was discovered, the United States reviewed Special Agent Kriplean's available text messages, dating back to April 2, 2025. On that date, as part of an agency upgrade, he had received a new phone and his old phone was reset to factory settings.

## LAW AND ARGUMENT

**I.  Defendant fails to establish a *Brady* violation.**

Government disclosure of material exculpatory and impeachment evidence is part of the constitutional guarantee to a fair trial. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Because they are Constitutional obligations, *Brady* and *Giglio* evidence must be disclosed regardless of whether the defendant makes a request for exculpatory or impeachment evidence. *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). A *Brady* violation requires a showing that: "(1) the government suppressed evidence, (2) the suppressed evidence is favorable to the defendant, and (3) the evidence is material." *United States v. Todd*, 825 F, App'x 313, 314 (6th Cir. 2020).

**A.      The government is only required to disclose exculpatory evidence in its possession, custody, and control.**

Federal Rule of Criminal Procedure 16(a)(1)(E) provides that the government must permit the defendant to inspect and to copy or photograph certain specified items if the item is *within* the government's possession, custody, or control. The United States Supreme Court held in *Brady* that the government must provide defendants with material, exculpatory evidence in its possession, but it has no duty to disclose or obtain items it does not possess. *United States v. Warren*, 782 F.App'x 466, 468 (6th Cir. 2019). None of the cases cited to by defense stand for the proposition that the government has a duty to investigate that which it does not have in its possession. The language quoted by defense from *Carey v. Duckworth* refers to how a prosecutor is imputed with the knowledge of all members of the prosecution team and does not refer to information unknown to any member of the prosecution team. *See* 738 F.2d 875, 878 (7th Cir. 1984).

The district court in *United States v. Reid* specifically stated that "[C]ourts have uniformly held[ ] the contents of an encrypted device are not within the Government's possession, custody, or control for purposes of Rule 16 or Brady." 20-CR-00626 (PMH), 2024 WL 2159848, at *8 (S.D.N.Y. May 14, 2024). That case and others like it address how even when the government has seized a defendant's cell phone and obtained a warrant, if they are unable to access the contents of the phone it is not within the government's possession. In another district court in the Sixth Circuit, the district court denied defendant's request to inspect a third party's phone because the government represented that it provided all the information it had retrieved from her phone and no longer had access to the phone. *United States v. Triplett*, No. 2:24-CR-64, 2025 WL 1359353, at *8 (S.D. Ohio May 9, 2025).

The defendant claims "the Government had a duty to disclose" the entire contents of Ms. Alaeddin-Hussein's phone when it had only requested and received limited access to a specific

7

application to create trial exhibits. (ECF 224, PageID 3284). Ms. Alaeddin-Hussein and her counsel asserted that they were cooperative and would provide any information needed in the case, including the contents of her phone. However, that does not create an obligation for the government to search the entire phone. The United States gained access to only the contents of the WhatsApp messages specifically between Ms. Alaeddin-Hussein and defendant in the phone for the limited purpose of creating screenshot exhibits of those messages. Once the screenshots were created, the phone was turned off. The United States did not have, nor did it request, Ms. Alaeddin-Hussein's password to be able to access the phone again. The contents of the WhatsApp messages had already been disclosed to defendant months earlier and the screen shots were provided to defendant along with other proposed exhibits in the in-person exhibit review meeting with defense counsel and the defendant on November 4, 2025. The rest of the contents of Ms. Alaeddin-Hussein's phone were never in the possession of the United States, thus claims 1, 3 and 4 in Section F. of defendant's motion are meritless. (ECF 224, PageID 3279).

Defendant also makes claims that the government failed to disclose "preliminary blood results." The government disclosed all laboratory results and has no duty to produce items that do not exist and are therefore not within its possession. Claim 10 in Section F. of defendant's motion is unfounded. (ECF 224, PageID 3279).

### B. There has been no suppressed *Brady* evidence.

In general, *Brady* does not apply to tardy disclosure of exculpatory information, but rather to the complete failure to disclose. *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998) (no *Brady* violation where criminalist's reports were made available to defendant at trial); *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986) (no violation where statement omitted by inadvertence and provided during trial). Exculpatory material must be disclosed in sufficient time to permit

defendant to make effective use of the material at trial. *United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993). Delay in disclosure violates *Brady* only when the delay itself causes prejudice. *United States v. Blanco*, 844 F.2d 344, 352 (6th Cir. 1988) (receipt of DEA report during trial, rather than beforehand, did not prejudice defense). In cases of delayed disclosure, "the defendant faces a higher hurdle than in a failure to disclose case." *Joseph v. Coyle*, 469 F.3d 441, 472 (6th Cir. 2006).

Even assuming arguendo that everything in the government's possession that it turned over was exculpatory such that it constituted *Brady* material, there was no suppression of such evidence because it was all turned over during the government's case in chief and with enough time for defendant to choose how to utilize the information. Defendant had sufficient time to review the materials, lodge a mistrial motion both orally and then in writing on December 15, 2025. Notably, defense counsel chose not to cross examine Special Agent Kriplean on his interactions related to Mr. Lawson's e-mail correspondence or any conversation with Mr. Moore related to placing recorded calls to defendant, when Special Agent Kriplean testified on December 16, 2025, the day after the motion was filed. Defendant's claims 2, 6, 7, 9, and 12 in Section F. fail on this ground alone. (ECF 224, PageID 3279-80).

### C. The evidence complained of is not favorable to the defendant.

Favorable evidence is evidence that is either "exculpatory" or "impeaching." *Strickler v. Greene*, 527 U.S. 236, 281-82 (1999).

Regarding defendant's claim 2 in Section F. of his motion, there was no exculpatory or impeaching material in the flash drive provided by the United States. The photographs defense counsel submitted as Exhibit 1 to their Memorandum in Support of Motion for Mistrial (ECF 262-1) do not support the assertions in Defendant's Renewed Motion for Mistrial (ECF 224) that the

flash drive contained exculpatory information. Three of the photographs were sent from Defendant to Ms. Alaeddin-Hussein, and the fourth is an e-mail exchange between the two. The e-mail exchange was from September 11, 2020 and includes Ms. Alaeddin-Hussein providing options as to whether she would continue working for him with different options to do so or whether she would leave. (ECF 262-1, PageID 7006). There were WhatsApp exchanges from the same time at Bates USA-0091729 that refer to the same topic of conversation. The government asked Ms. Alaeddin-Hussein only when she left Poplar Avenue Clinic, which she testified was late 2022, and not the reason for her departure, thus, there would be no basis to correct any record. (ECF 239, PageID 3990, Lines 15-16).

The pictures complained of are similarly irrelevant and not impeaching or exculpatory. The photograph in ECF 262-1, Page ID 7007 was sent by defendant to Ms. Alaeddin-Hussein on November 16, 2019. Assuming it is a picture of a reusable device, it is consistent with her testimony that she believes reusable hysteroscopes were purchased, but not used, in the months after the clinic opened. (ECF 239, PageID 4067, Lines 5-19). The government does not know what the photograph in ECF 262-1, PageID 7008 depicts. Assuming it is somehow relevant and potentially reusable devices, it was sent by defendant to Ms. Alaeddin-Hussein on July 5, 2017, which was several years before Poplar Avenue Clinic opened, and not impeaching as she advised that there were reusable devices at Poplar Avenue Clinic. The photograph in ECF 262-1, PageID 7009 is a picture of a thank you card sent by defendant to Ms. Alaeddin-Hussein on April 26, 2019, also before Poplar Avenue Clinic opened. It is not impeaching or exculpatory. Additionally, the message conversation between Ms. Alaeddin-Hussein and another provider referred to in ECF 224, but not added as part of Exhibit 1 in ECF 262, is from 2018, when defendant and Ms. Alaeddin-Hussein still worked for Baptist, and thus would have no impeachment value as to her

assessment that defendant was profit-minded. Defendant's claim 2 in Section F. is without merit. (ECF 224, PageID 3279).

Defense similarly mischaracterizes other disclosed evidence, but this Court has appropriately found that none of it is exculpatory or impeaching. The e-mail from Mr. Lawson to Special Agent Kriplean complained of in claim 6 in Section F. was already available in other portions of discovery and Exhibit 65. It is not exculpatory or impeaching, and to the extent that it could be deemed so, defense did not question Mr. Lawson about it at all when he was recalled. Thus, defendant's claim 6 in Section F. fails. (ECF 224, PageID 3279).

Defense mischaracterizes Special Agent Brian Kriplean's report, which detailed an inquiry to Mr. Moore about the potential for conducting a recorded phone call with defendant when Poplar Avenue Clinic attempted to order more product following the search warrant as impeachment material due to bias. (ECF 224, PageID 3279). Special Agent Kriplean reported "Moore stated that he would be willing to place a recorded call to the clinic if desired by investigators." Bates GOV-000361. Defense believed the report suggested Mr. Moore offered to conduct such a phone call, but Mr. Moore testified that he never made such an offer and that it had instead been requested by Special Agent Kriplean. (ECF 240, PageID 4261, Lines 17-24). The report submitted by Special Agent Kriplean is completely consistent with Mr. Moore's testimony and shows no bias. The Court correctly determined that the statement was not *Brady*. (ECF 259, PageId 6785, Lines 5-9). The evidence is not impeachment nor exculpatory, and defendant's claim 7 in Section F. is without merit. (ECF 224, PageID 3279).

### D. Even if there were favorable and suppressed evidence, the evidence complained of is not material.

"[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been

different." *Cone v. Bell*, 556 U.S. 449, 469–70 (2009). "[T]he *Brady* standard is not met if the petitioner shows merely a reasonably *possibility* that the suppressed evidence might have produced a different outcome; rather, a reasonable *probability* is required." *Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011) (emphasis in original). The materiality of withheld evidence should be evaluated "collectively, not item by item." *Kyles*, 514 U.S. at 436. The Sixth Circuit "has repeatedly acknowledged that '[e]vidence that is merely cumulative to evidence presented at trial is not material for purposes of *Brady* analysis.'" *Brooks v. Tenn*., 626 F.3d 878, 893 (6th Cir. 2010)(quoting *Carter v. Mitchell*, 443 F.3d 517, 533 n.7(6th Cir. 2006)) (internal quotation marks omitted).

The United States has addressed the purported *Brady* evidence raised in both Defendant's Renewed Motion for Mistrial and Supplemental Memorandum in Support of his Motion for Mistrial. This evidence, taken collectively, is not material. The evidence was addressed in the trial and there has been no showing of prejudice to defendant. The non-contested evidence against the defendant is overwhelming and none of the complained of evidence shows even a reasonable possibility it might have produced a different outcome, much less the reasonable probability required.

**II.   The Court correctly determined that the single *Jencks Act* violation was not an intentional suppression of evidence.**

   **A.   The United States has no duty to ensure a witness's testimony is completely consistent with prior statements.**

The United States maintains that Paige Theuer testified consistently with her prior statements during her direct examination. The government understands its obligations under *Brady* and throughout the course of the case when it learned a witness had modified or added to their statement, it documented any additional or varied statements and provided those materials to

defense. All *Jencks* statements for Ms. Theuer were provided to defense counsel. To the extent she may have testified differently, the United States has no obligation to ensure her testimony is completely consistent with her prior statement. "[T]he fact that [a witness's] testimony could be impeached in various ways does not pose any constitutional problem. In fact, there would be no need for a jury if trials did not contain such inconsistencies." *Norris v. Schotten*, 146 F.3d 314, 334–35 (6th Cir. 1998). It should be noted that on redirect, Ms. Theuer agreed that she told the truth from her memory on each occasion she spoke with an investigator and that she was saying essentially the same thing on the stand that she had in each prior occasion with investigators. (ECF 211, PageID 2412-2413, Lines 22-25 and 1-4). Additionally, despite being admonished by this Court to "have proof or documentation or some essence of an argument that is—that supports your position" the defense offers the same unsupported accusations in its Renewed Motion for Mistrial. (ECF 211, PageID 2360, Lines 22-25). There were no contradictory statements to be provided. Therefore, claim 11 in Section F. lacks merit.

      To the extent that defendant contends Ms. Tworek's testimony advising that she had spoken to Physician Assistant Marlea Boyd is somehow problematic or a discovery issue, the United States provided all *Jencks* material related to Ms. Tworek other than the text message discussed later in Section C. This includes her initial statement and an updated statement following a trial preparation meeting in November where she clarified a statement she made during her March interview on November 25, 2025. In her initial statement at Bates USA-0004710, Ms. Tworek stated that she did not confront Dr. Kumar or any staff at Poplar Avenue Clinic about the single use device reuse. The government would have no reason to believe she had discussed her concerns about the overutilization of hysteroscopies with anyone, much less a specific staff

13

member as she later testified about. Thus, any claim of a discovery violation related to Ms. Tworek's testimony about speaking with another witness is baseless.

      **B.**      **Harley Collier's *Jencks* statement was properly disclosed after her testimony and defense was afforded ample time to prepare for cross-examination.**

When *Brady* material is covered by the *Jencks Act*, the *Jencks Act* overrides *Brady* with respect to the timing of disclosure. *United States v. Bencs*, 28 F.3d at 561 (6th Cir. 1994). Impeachment evidence properly disclosed after testimony at trial under the *Jencks Act*, cannot be subject to pretrial disclosure under *Brady*. *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988).

The United States agrees with this Court's assessment that Ms. Collier's prior statements were not exculpatory. To the extent that any of Ms. Collier's statements could be deemed exculpatory, there is still no *Brady* violation as they were properly disclosed after testimony at trial under the *Jencks Act*. Defense counsel had substantial time to review the statement and asserted twice that they were ready to proceed with cross examination after being given time to review the statement. Claim 5 in Section F. of defendant's motion is without merit. (ECF 224, PageID 3279).

      **C.**      **Stephanie Tworek's text message was not disclosed inadvertently and there was no prejudice suffered by defendant.**

When there has been a discovery violation, the Sixth Circuit has identified several factors to consider the appropriate remedy: "(1) the reasons for the government's delay in producing the materials, including whether it acted intentionally or in bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether the prejudice to the defendant can be cured with a less severe course of action, such as granting a continuance or a recess." *United States v. Maples,* 60 F.3d 244, 247 (6th Cir.1995). "District courts should embrace the 'least severe sanction necessary' doctrine, and hold that suppression of relevant evidence as a remedial device should be limited to

circumstances in which it is necessary to serve remedial objectives." *Id.* at 247–48. These principles apply with equal force to both the government and the defendant. *United States v. Ganier*, 468 F.3d 920, 927 (6th Cir. 2006).

The government acknowledges a *Jencks* violation related to Stephanie Tworek's text message to Special Agent Brian Kriplean, but asserts that the non-disclosure was not intentional and did not prejudice the defendant. Defendant claims that Ms. Tworek's text message, which they introduced as Exhibit 161, is "exculpatory" and thus should have been produced under *Brady*, but the message in question tends to incriminate defendant and would thus be subject only to *Jencks* disclosure.

The government provided Ms. Tworek's witness statement in its initial production, from USA-0004709-11, which included reference to her complaint with Christian Brothers University and to whom she specifically directed her complaints to. Her witness statement, as well as testimony at trial, are completely consistent with the screenshot of her complaint to Christian Brothers University. Defense counsel already had the information needed to send a subpoena to Christian Brothers University, which it apparently did months before the trial began. (ECF 262-2). Even assuming the text message was somehow favorable, defense counsel entered the message into evidence and was able to argue its importance how it saw fit. The government's delay resulted from inadvertence. This would be enough to make it appropriate to not even consider suppression of evidence as a remedy, but the defendant chose to enter the text message into evidence, thus he can cite no prejudice that needs to be cured. The claim related to this message fails.

### III. The defendant has had a fair trial and there is no basis for granting a mistrial.

"To establish a right to a mistrial… a defendant must show that the claimed error caused such 'serious' or 'incurable' 'prejudice' to the defense that nothing but a new trial before a new

15

jury could remedy it." *United States v. Harvel*, 115 F.4th 714, 738 (6th Cir. 2024). In determining whether a mistrial is warranted the guiding principle is fairness to the defendant. *Id*. As none of the previous claims addressed in this response have impeded the fairness of defendant's trial, they do not establish a basis for granting a mistrial.

The additional claims not previously addressed from Defendant's Renewed Motion for Mistrial are that the United States offered a misleading summary into evidence through Mr. Lawson (claim 8 of section F.), Ms. Alaeddin-Hussein's phone being returned to her (claim 1 of error section F.), a denial of a recess during Ms. Alaeddin-Hussein's cross-examination to permit inspection of her phone (claim 2 of error section F.), and a denial of a recess request to review Ms. Collier's *Jencks* report. (ECF 224, PageID 3279-80). One additional claim in Defendant's Supplemental Memorandum appears to be that the Court denied the request for the government to produce Special Agent Kriplean for an evidentiary hearing. (ECF 262, PageID 7004). These claims are all similarly without merit.

Exhibit 65 was entered into evidence without objection and its reliability was tested on cross-examination. This is indicative of a fair trial, and defendant's claim 8 of section F is baseless. (ECF 224, PageID 3279). There were no grounds for anyone to take possession of Ms. Alaeddin-Hussein's phone following her testimony, and defense counsel did not lodge an objection to its return when the Court ordered the United States to do so. Thus, defendant has not shown that that there is any merit to claim 1 of error section F. (ECF 224, PageID 3280). After hearing from both parties on December 19, 2025, the Court appropriately determined that there were no alleged discovery violations that would necessitate having Special Agent Kriplean return for an evidentiary hearing. (ECF 259, PageID 6791, Lines 17-24). This Court appropriately denied a recess during Ms. Alaeddin-Hussein's cross-examination for the

16

defense to review material that had not been accessed by the government during its limited review of the phone to produce exhibits for trial. (ECF 225, PageID 3314, Lines 16-18). Finally, this Court did not deny a recess to review Ms. Collier's report, so that claim is baseless. (ECF 245, PageID 5057-5059).

There has been one *Jencks* violation in this case that was remedied mid-cross examination. This Court correctly determined that it was not purposeful. While suppression of the evidence would likely not have been required, that remedy does not even require consideration because defendant chose to enter the evidence himself. It certainly did not undermine the fairness of the proceedings or render a verdict unworthy of confidence as it was corroborative of the witness's prior statements and testimony and inculpatory in nature. Defendant makes bald claims that his "right to a fair trial" has been "irreparably prejudiced" without any support in the record for those statements. The proceedings have been fair to the defendant and none of his allegations change that. There is no remedy required, and certainly not the mistrial requested by defendant.

## CONCLUSION

For the foregoing reasons, defendant's renewed motion for mistrial should be denied.

Respectfully submitted,

By:    /s/ Lynn Crum
       Assistant United States Attorney
       167 N. Main Street, Suite 800
       Memphis, TN 38103
       Telephone: (901) 544-4231

## CERTIFICATE OF SERVICE

    I, Lynn Crum, Assistant United States Attorney, do hereby certify that a copy of the foregoing pleading was forwarded by electronic means via the Court's electronic filing system, and via email to the attorneys for the defendant.

    This 3rd day of January, 2026.

                                             /s/ Lynn Crum
                                        Assistant United States Attorney