IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA

    Plaintiff,

VS.                 Criminal No. 25-cr-20032-SHL

SANJEEV KUMAR,

    Defendant.

---

**UNITED STATES' MOTION TO REVOKE BOND AND FOR AN ORDER REMANDING DEFENDANT SANJEEV KUMAR TO CUSTODY PENDING SENTENCING**

---

**I. Introduction and Relevant Procedural History**

On January 7, 2026, following a three-and-a-half-week trial, a jury found Kumar guilty of adulteration and misbranding of single use devices, adulteration of hysteroscopes cleared for reprocessing, and health care fraud. *See* ECF No. 274. Following the guilty verdict, Judge Fowlkes, filling in for this Court, set Kumar's sentencing date for April 9, 2026. Judge Fowlkes permitted Kumar to remain on bond and denied the government's oral motion to remand but invited the United States to file a motion with this Court regarding detention pending sentencing. Defense counsel noted its objection to detention pending sentencing on the record and affirmed its objection in subsequent consultation.

**II. Legal Standard**

Under the Bail Reform Act of 1984, defendants at different stages of the criminal justice system face various levels of scrutiny regarding their detention or release into the community. *United States v. Ingle*, 454 F.3d 1082, 1084 (10th Cir. 2006). At the front end, and before a jury

1

has weighed in regarding their guilt, defendants ordinarily should be released, unless a judicial officer finds "that no condition or combination of conditions will reasonably assure the [defendant's] appearance as required and the safety of . . . the community." 18 U.S.C. § 3142(e). At the back end, however—after a jury has found the defendant guilty—"the presumption is that the defendant will be detained." *Ingle*, 454 F.3d at 1084; *United States v. Vance*, 851 F.2d 166, 170 (6th Cir. 1988) ("[I]n enacting section 3143 of the Bail Reform Act of 1984, the committee endeavored to eliminate the presumption in favor of bail, and to create a presumption against post conviction release." (quotation omitted)).

The general rule for defendants like Sanjeev Kumar, who have been convicted but not yet sentenced, is set forth in 18 U.S.C. § 3143(a)(1). That statute provides, in relevant part, as follows:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any person or the community if released . . . ."

18 U.S.C. § 3143(a)(1) (emphasis added).

The reason for this presumption in favor of post-conviction detention is straight forward: "Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal. The conviction, in which the defendant's guilt has been established beyond a reasonable doubt, is presumably correct in law." *Vance*, 851 F.2d at 170 (quotation omitted). As the Sixth Circuit has made clear, this statute imposes a stiff burden on convicted defendants who nevertheless seek release. *Id*. at 169. Unlike ordinary detention determinations under 18 U.S.C. § 3142, "Section 3143 creates a presumption that a defendant who has been convicted . . . may not be released pending his appeal or sentencing unless he shows by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of . . .

2

the community." *Id*. (quotation omitted).

**III.    Analysis**

Kumar has not overcome the presumption in favor of post-conviction detention because he has not shown by clear and convincing evidence that he does not pose a flight risk. This Court is in the best position to assess Kumar's detention given the lengthy prison sentence he faces, his vast financial resources, and his disrespect for the judicial system, which he displayed throughout these proceedings in refusing to answer administrative investigative demands and providing dishonest explanation of his conduct to his employees and the jury. As such, his detention until sentencing is required. *See* 18 U.S.C. § 3143(a)(1); *Vance*, 851 F.2d at 170 (reversing district court's grant of bond where defendant failed to overcome burden of proof).

    A.    Kumar's Potential Sentence Shows He Poses a Risk of Flight

The length of a potential sentence certainly bears on a defendant's risk of flight. Courts often weigh the potential sentence a defendant faces heavily in making post-conviction detention determinations. *See United States v. Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009) (affirming district court's denial of Madoff's motion for pre-sentencing release based on age and length of potential sentence); *United States v. Rankin*, 289 F.Supp.3d 846, (S.D. Ohio October 5, 2017) (finding considerable sentencing exposure bore on risk of flight).

So too, here. Kumar faces considerable sentencing exposure given his forty convictions, and he has done nothing to overcome the risk of flight that this sentencing exposure has created. The voluntary surrender of his passport does not overcome the statutory presumption in favor of detention. *See, e.g., United States v. Bonilla*, 388 F. App'x 78, 80 (2d Cir. 2010) (affirming district court's detention order "even though [defendant] offered some evidence to challenge the statutory presumption of flight" based on surrender of his passport); *United States v. Jinwright*, No. 3:09-

3

cr-00067, 2010 WL 2926084, at *5 (W.D.N.C. July 23, 2010) (same; voluntary surrender of passport did not overcome presumption that convicted defendant posed a flight risk). As in *Bonilla* and *Jinwright*, Kumar has strong ties to at least one other country. While he was naturalized in 2023, his fraud spans through his naturalization period, which makes his citizenship unsound. His wife is not a United States citizen and has moved his family out of the state. Thus, he is a risk of flight. Moreover, as this Court is aware, defendants can avoid the court's jurisdiction—and their impending imprisonment—by fleeing both within the United States and without. Thus, the surrender of Kumar's passport, while relevant, does not prove by clear and convincing evidence that he will not pose a risk of flight.

The Court need look no further than *United States v. Anyanwu et al.*, 2:24cr20211. In that case, brothers Stanley Anyanwu and Vitalis Anyanwu were convicted after trial of bank fraud and money laundering conspiracy in April of 2025. *Id.* at ECF 91. Sentencing was scheduled for July 18, 2025. *Id. at* ECF 92. On July 7, 2025, this Court received Release Status Reports as to both defendants reporting continued compliance. *Id.* at ECF 106, 107. On July 9, this Court granted the United States motion to continue sentencing as to both defendants and sentencing was reset to August 5, 2025. *Id.* at ECF 110. On the morning of August 5, 2025, Stanley Anyanwu was sentenced to 87 months imprisonment and was permitted to self-surrender. *Id.* at ECF 121. In the afternoon, Vitalis Anyanwu failed to appear for his scheduled sentencing and it was later learned that he had left the United States and fled to another continent before anyone involved in the case realized that he was no longer in the United States. *Id.* at ECF 122. This Court issued an arrest warrant for Stanley Anyanwu and he was arrested August 8, 2025, in Austin, Texas and sent to BOP custody. *Id.* at ECF 135.

In this case, Kumar is facing much steeper penalties than either Anyanwu brother. The United States assesses Kumar's guideline range to be limited only by the statutory maximum he faces in each count, which would be 1,944 months of imprisonment.

### B. Kumar's Vast Financial Holdings Show He Poses a Risk of Flight

As courts routinely recognize, defendants who have significant financial means have the ability to flee and thereby pose an increased risk of flight. *E.g., Madoff*, 316 F. App'x at 59 ("[T]he district court's finding that [Madoff] has the means—and therefore the ability—to flee was not clear error."); *United States v. Khanu*, 370 F. App'x 121, 121-22 (D.C. Cir. 2010) (affirming post-conviction detention order due, in part, to defendant's "extensive financial resources" and concurrent risk of flight); *United States v. Poulsen*, 521 F. Supp. 2d 699, 704 (S.D. Ohio 2007) ("When one considers further the apparently substantial resources that [the defendant] has available, which could be used to finance his flight, the conclusion that he poses at least some risk of absconding becomes−no pun intended−inescapable."). In the post-conviction setting, a stiff prison sentence coupled with substantial financial resources usually proves fatal to a defendant's efforts to secure his release. Two cases from other district courts prove the point. For example, in *United States v. Jinwright*, the defendant was convicted of multiple counts of filing false tax returns and other federal tax offenses. 2010 WL 2926084, at *1. The court rejected the attempt to be released from pre-sentencing detention after agreeing with the government that the defendant posed a risk of flight because he "(1) has the financial resources to flee, (2) has extensively traveled internationally, and (3) faces a drastic change of lifestyle upon his commitment to the United States Bureau of Prisons." *Id*. at *5.

Likewise, in *United States v. Miell*, a magistrate from the Northern District of Iowa ordered a defendant who had been convicted of filing false tax returns detained pending sentencing because

he "had failed to carry his burden of demonstrating by clear and convincing evidence that he is not a flight risk." No. CR07-101-MWB, 2009 WL 1956451, at *1 (N.D. Iowa July 6, 2009). The defendant appealed to the district court, which affirmed the magistrate's post-conviction detention order. *Id*. at *2. In so doing, the court relied on the fact that, as with Kumar "the federal sentencing guidelines will recommend a term of imprisonment . . . . [and] Defendant Miell has the type of substantial wealth which could finance a flight from justice." *Id*. Those two factors working in tandem doomed the defendant's effort to overcome the statutory presumption in favor of post-conviction detention outlined in § 3143(a)(1), just as they do here. *Id*.

Here, Kumar moved $3.2 million dollars the day after the search warrant was executed at Poplar Avenue Clinic.[1] A check from a Renasant bank account for Poplar Avenue Clinic was deposited at Guaranty Bank and Trust. Kumar's wife later called the bank and asked that check be cancelled. Another check was issued and deposited in the same amount to his wife's personal account. His financial holdings are not limited to his practice at Poplar Avenue Clinic, though those amounts are vast, having garnered over $12 million from Medicare and TennCare alone during the criminal period in the indictment. Trial Exhibit 147.

      C.      <u>Kumar's Disregard for the Judicial System Shows He Poses a Risk of Flight</u>

As the Northern District of Ohio concluded in *United States v. Dimora*, post-conviction detention is especially warranted where, as here, the defendant's conduct "did not involve a momentary lapse in judgment," but instead involved "fraudulent, dishonest, and obstructive conduct which included falsifying evidence to thwart the [federal agents'] investigation" that lasted "over a number of years." 2012 WL 1409396, at *3 (collecting cases). That is exactly the case with Kumar. His health care fraud scheme, which involved fraudulent, dishonest, and

---

[1] Evidence of this financial transaction was turned over in discovery at Bates USA-0004363-64.

obstructive conduct, was far from a momentary lapse in judgment. Instead, as the jury found, this scheme stretched all the way from the purchase of the first hysteroscope in September of 2019 until the date of the search warrant, April 16, 2024. Not only was his criminal conduct for many years deceptive, Kumar himself was deceptive in his defense in attempting to avoid accountability.

Immediately after the search warrant, Kumar changed reprocessing practices in his clinic. That included telling at least one advanced practitioner to stop doing hysteroscopies and telling her that he did not know the devices were single use. He attempted to intimidate his medical assistant when she was set to testify before the Grand Jury. At trial, Kumar took the witness stand and spent more than seven hours explaining away all his criminal conduct. Just a few notable instances of Kumar's claims rejected by the jury include the following: he stood up on the stand and pulled out a portable, hand held light source that he claimed he used with the Olympus hysteroscopes to conduct hysteroscopies without a tower; he claimed that single use Endosee cannula devices with "working" or "works" written on them were test devices used to make sure the Endosee screen worked and were not being held for patient care, despite also offering evidence that the screens for those devices would have an error if a used cannula was connected; and he described staff were "elated" to have learned how to reprocess devices, when the testimony of staff was that there were very limited attempts to reprocess devices in between patient care until after the search warrant. The jury's determination of guilt necessarily rejected Kumar's testimony.

Additionally, Kumar held a press conference immediately after the guilty verdict where he continued to deny any wrongdoing. *Memphis doctor Dr. Sanjeev Kumar speaks to media after he was found guilty of 40 federal charges*, ABC24 Memphis (accessed January 13, 2026, 3:03 PM), https://www.youtube.com/watch?v=8Mnb9Fz-qCg. In that press conference, he said "I did the right thing, actually" with regard to his treatment of patients and "we are confident we are on the

right side of the scientific facts." Lastly, it also appears that Kumar is engaged in a misinformation campaign through the @TheMemphisReport Instagram account which according to open source was an account created in October of 2025 in India. This is extremely concerning conduct and makes him completely unreliable and untrustworthy.

In *United States v. Anita Louise Jackson*, the defendant was similarly situated, having faced many of the same charges as an ear, nose, and throat doctor, for mass marketing to elderly patients a "sinus spa" and then conducting unnecessary in-office balloon sinuplasty with reused single use equipment, while billing as if she was conducting medically appropriate procedures. W.D.N.C. 5:21-cr-00259. Jackson testified at length in her own defense. When the jury found her guilty, she was remanded to custody after arguments regarding detention. *Id*. at ECF 123. The persuasive arguments largely focused on her deception throughout the case and specifically her testimony on the witness stand. *Id*. at ECF 169, Pages 43-44. Judge James Dever III found "it fundamentally comes down to an issue of trust to abide by conditions." *Id*. at ECF 169, Page 44, lines 18-19.

## Conclusion

Accordingly, for the foregoing reasons, the government respectfully requests the Court to revoke Kumar's bond and order him detained pending sentencing.

Respectfully submitted,

D. Michael Dunavant
United States Attorney
Western District of Tennessee

By:    /s/ Lynn Crum
       LYNN CRUM
       Assistant United States Attorney
       167 N. Main St., Suite 800
       Memphis, TN 38103
       Telephone: (901) 544-4231

## CERTIFICATE OF SERVICE

I, Lynn Crum, Assistant United States Attorney, do hereby certify that a copy of the foregoing pleading was forwarded by electronic means via the Court's electronic filing system to the attorneys for the defendant.

This 13th day of January, 2026.

                                                                /s/ Lynn Crum
                                              Assistant United States Attorney