**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**VS.**                     **Criminal No. 25-cr-20032-SHL**

**SANJEEV KUMAR,**

      **Defendant.**

---

**UNITED STATES' POSITION REGARDING DRAFT PRESENTENCE REPORT**

---

The United States of America files its Position Regarding the Draft Presentence Report ("PSR") and notifies the Court of its position pursuant to Local Criminal Rule 32.1(d) and United States Sentencing Commission Guidelines Manual ("USSG") § 6A1.2.

1.     The United States has reviewed the PSR in this case, dated March 16, 2026. RE-329, PSR.

2.     The United States has several requested corrections, objections, and additions as noted below. Paragraphs and numbers refer to the PSR and are responded to after identification.

3.     Paragraph 4. The jury found Kumar guilty of counts 38 and 45. As a result, this paragraph should be corrected as follows: "On January 7, 2026, the jury found the defendant guilty of counts 1 through 33, 35, 38, 40, 41, and 44 through 46 of the second superseding indictment. They were unable to reach a verdict as to counts 34, 36, 37, 39, 42, and 43. The Court declared a mistrial as to counts 34, 36, 37, 39, 42, and 43."

4.     Paragraph 90. The data is incorrectly described as consisting of only the claims for hysteroscopy codes. The hysteroscopy claims for Medicare are reflected in Trial exhibit 147, USA-

1

0093384. The total billed amount is $2,369,525.00.

5.      Paragraph 91. The TennCare claims amount listed in this paragraph also includes the entire billing claims amount for Poplar Avenue Clinic and not just those specifically related to hysteroscopy services. The hysteroscopy claims for TennCare are reflected in Trial exhibit 138, USA-0093301. The total billed amount is $39,476,701.40.

6.      Paragraph 98. According to the billing data, reflected in Trial exhibit 147, USA-0093293 there are at least 5,160 victims in this case. This accounts only for Medicare and Medicaid patients, but at least one private-pay patient provided testimony in this case as a victim and there was ample evidence that there were other private-pay patients. Over one thousand victims self-reported following the FBI Request for Victims press release and have been identified as having at least one hysteroscopy over the charged time span at Poplar Avenue Clinic. Trial exhibit 147, USA-0093293 details the correct amount for all claims of hysteroscopies to Medicare and TennCare. That amount, with crossover claims excluded, is $37,387,836.80.

7.      Paragraph 103. There are several instances where the defendant willfully attempted to obstruct or impede the administration of justice related to his offense of conviction.

a.  Kumar attempted to intimidate or otherwise unlawfully influence witness Gayla Cheathem. *See* ECF 203, PageID 1908-09.

b.  Kumar testified over the course of two days in this case. He perjured himself repeatedly during this testimony. Some particulars include:

i.  Kumar testified the towers were positioned in Cidex containers so that the staff could tell whether the towers were "alive or dead" due to construction. ECF 257, PageID 6570.

ii.  Kumar testified that staff members were "elated that they learned a new skill" after

2

being trained on cleaning and described that the staff would "divvy up the tasks, and some will do precleaning." *Id*. at PageID 6579.

iii. Kumar testified that he never told Huda Alaeddin to perform an endometrial biopsy on every patient or every new patient. *Id*. at PageID 6478-79.

iv. Kumar testified that he never pulled a device out of Cidex and reused it on a patient. ECF 260, PageID 6904.

v. Kumar testified that "working" was written on Endosee cannulas to serve as test cannulas. *Id*. at PageID 6918-19.

vi. Kumar testified that graspers in Cidex under the sink were "basically trash." *Id*. at PageID 6919.

vii. Kumar testified that he never would have reused a single-use grasper on a patient. *Id*. at PageID 6920.

c. Kumar denied reusing single use instruments at Poplar Avenue Clinic when interviewed by Kristie Marr, the investigator with Tennessee Department of Health.

d. Kumar staged Poplar Avenue Clinic at some point between April of 2024 and Dr. Amy Garcia's October 2025 visit and presented it to her as if that were how he operated Poplar Avenue Clinic during the timeframe he has been convicted of criminal conduct. She then introduced photos and rendered an expert opinion based on the staged clinic with the understanding that it was consistent with how the office operated prior to the interruption by law enforcement.

e. Kumar provided materially false information to the probation officer in respect to her investigation. Specifically, he told the probation officer that he closed Poplar Avenue Clinic in February 2025 because "he did not feel safe after the media released

3

information about his legal matters." PSR, para. 150. In fact, Kumar agreed to close his clinic to secure his release from custody on March 4, 2025. A mere two weeks later, on March 17, 2025, he filed a motion to modify the conditions of his release whereby he sought to reopen the clinic. After a two-day hearing, that motion was granted on April 14, 2025.

8.      Paragraph 108. If the Court concludes that the defendant is only responsible for a loss amount as it relates to hysteroscopy claims, that amount would be $37,387,836.80, which would increase the offense level by 22 pursuant to USSG § 2B1.1(b)(L).

9.      Paragraph 109. As noted previously, there are at least 5,160 victims in this case, so the case involved 10 or more victims and the 2-level increase pursuant to USSG § 2B1.1(b)(2)(A)(i) should apply.

10.      Paragraph 110. The correct amount for all claims of hysteroscopies to Medicare and TennCare is $37,387,836.80. The application of a four-level increase remains appropriate.

11.      Addition. Kumar should be subject to an enhancement under USSG § 2B1.1(b)(9)(C). That enhancement applies a two-level increase where "the offense involved … (C) a violation of any prior … administrative… process not addressed elsewhere in the guidelines." *Id*. Testimony at trial from Dr. Poulomi Nandy established that Kumar should have sought clearance from the FDA through the 510(k) premarket notification process before modifying the instructions for use of these medical devices by attempting to reprocess and reuse the single use devices. Medical device manufacturers [1] are required to engage in the premarket notification

---

[1] Medical device manufacturers, include the definition in 21 CFR 820.3(b), establishing that a manufacturer is "any person who . . . processes a finished device." As Kumar and his staff at Poplar Avenue Clinic were processing finished devices (a finished device is any device that is suitable for use or capable of functioning, whether or not it is packaged, labeled, or sterilized, 21 CFR 820.3(a)), he is classified as a device manufacturer under the FDCA.

regulatory process if they intend to change or modify a device to the extent that its safety or effectiveness could be affected. See 21 C.F.R. 807(a)(3). The evidence at trial established that Kumar directed his staff to reprocess single use devices that were previously cleared for single use only. This deviation from the previously established indications for use was significant enough that Kumar circumvented the 510(k) regulatory process by engaging in his own attempted reprocessing of single use devices without a new 510(k) clearance from FDA. Violating the 510(k) process by significantly changing or modifying previously cleared devices' indications for use is conduct that is not otherwise addressed in the guidelines.

12. Paragraph 112. Kumar should be subject to an additional two-level increase under USSG § 3A1.1(b)(2). Kumar preyed upon women in their most vulnerable position to put money in his pocket. The patients who testified at trial are a small subset of the massive population of vulnerable victims, which includes at least 5,160. None of the patients wanted to talk about their gynecologic care and many exhibited low health literacy about their care. Kumar even testified that there were multiple patients with learning disabilities or "other barriers" who would not understand what was going on, even after he explained, so he would leave the room and allow the staff under him to provide education. ECF 257, PageID 6563-54. Their need for medical treatment, and Kumar's insistence that they needed to be checked for cancer, obliterated their ability to help themselves or detect or prevent harm. They trusted Kumar and were vulnerable to his persistence that they needed hysteroscopies, repeatedly, even when they were getting no results for years and some had more than ten performed. Even the two patients who testified for the defense were unknowing victims in this case as to adulterated devices at least, but also at least one unnecessary hysteroscopy. One had already been diagnosed with cancer when Kumar subjected her to, by her

own admission, at least one additional hysteroscopy before he finally performed her requested hysterectomy. Kumar knew of their vulnerability and seized on it to obtain their "consent" for unnecessary, invasive procedures performed with adulterated devices.

13.    Addition. Kumar should be subject to the four-level increase for his Aggravating Role, USSG § 3B1.1(a). In this case, Kumar completely controlled a massive women's health clinic and the way in which it operated. He hired employees who had no experience and trained them to do exactly what he directed them to do. The evidence presented at trial was that Kumar trained the medical providers under him to do hysteroscopies far more often than they felt were medically indicated. Additionally, the adulteration of devices was an endeavor he started at the beginning of clinic growth and continued training those under him to use adulterated devices throughout the operation of Poplar Avenue Clinic. The trial evidence showed that none of the subordinates developed the scheme, nor would they have any incentive or reason to do so. He would not allow device representatives to view exam rooms to potentially uncover his scheme.

The operation was extensive, with at least 5,160 distinct patients receiving at least 15,094 hysteroscopy procedures during the four-and-a-half-year period covered by this case. Trial exh. 147, USA-0093293. Over the same period, at best only 159 new hysteroscopes were purchased. *See* Trial exh. 157. For context, Kumar's hired hysteroscopy expert, Dr. Amy Garcia, who prided herself as being at the forefront of in-office hysteroscopy testified that she had completed just 3,500 procedures in office over a twenty-year period. *See* ECF 251, PageID 5720-21.

14.    Paragraph 114. There are several reasons a two-level increase for obstruction or impeding justice pursuant to USSG § 3C1.1 should apply as outlined in paragraph 7 of this position paper, detailing additions to Paragraph 103 of the PSR.

15.    Paragraph 151. It appears that there is an internal discrepancy in this paragraph as

the end date says 2019, but the last sentence says that the defendant closed the clinics in February 2025.

16.    Paragraph 171. Restitution is due and owing to Medicare and Medicaid for hysteroscopy procedures, and any other attendant medical procedure billed for the same visit. This is because Medicare and Medicaid will not pay for any medical procedures if one procedure is deemed unnecessary. As testimony at trial established, Medicare and Medicaid will not deem a procedure necessary if it is not performed in accordance with FDA regulations.

Medicare is owed $941,934.64 in restitution.

Medicaid is owed $4,939,908.64 in restitution.

Additional restitution claims are likely to be made by individual victims. Less than one third of the potential victims have been identified and restitution should be left open for those victims and any other victims who may come forward with a claim.

17.    The United States estimates the sentencing hearing will take an entire day.

18.    The United States will make a final sentencing recommendation in accordance with the guideline calculation and the factors outlined in 18 U.S.C. § 3553(a).

Respectfully submitted,

D. Michael Dunavant
United States Attorney

By:    /s/ Lynn Crum
Lynn Crum (CA #322077)
Assistant United States Attorney
167 N. Main Street, Suite 800
Memphis, TN 38103
Telephone: (901) 544-4231
lynn.crum@usdoj.gov

7

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was forwarded via the Court's CM/ECF electronic filing system, which served all attorneys for the defendant.

This 6th day of April, 2026.

 /s/ Lynn Crum      
Assistant United States Attorney

**CERTIFICATE OF CONSULTATION**

I hereby certify that on March 30, 2026, I sent the foregoing pleading to probation and defense counsel via e-mail. I also requested any position from defense counsel via e-mail on April 6, 2026. Defense counsel has not responded.

This 6th day of April, 2026.

 /s/ Lynn Crum      
Assistant United States Attorney
