**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 2:25-cr-20032-SHL** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SANJEEV KUMAR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S MOTION TO SET RESTITUTION**

The United States by and through the United States Attorney for the Western District of Tennessee and undersigned counsel moves the Court to set the amounts of restitution payable to victims of the defendant's convicted conduct in this case.

**BACKGROUND**

On day 22 of trial, the jury returned a verdict of guilty on Counts 1-33, 35, 38, 40-41, and 44-46 of the Second Superseding Indictment. RE-274, Jury Verdict. A two-day sentencing hearing was held on July 7 and 8, 2026. RE-419, Minutes; RE-420, Minutes. The Court imposed a total term of imprisonment of 240 months. RE-420, Minutes. The Court left restitution open for 90 days with a claim submission deadline of September 25, 2026, and a restitution hearing on October 2, 2026. *Id*. On September 11, 2026, the defendant moved to continue the restitution hearing. RE-439, Motion. The Court converted the October 2 restitution hearing to a motion hearing to consider the defendant's motion to continue.

## RESTITUTION CALCULATION

Although the government anticipates it will receive some additional patient claims for restitution, it has at this time mostly settled its position on restitution and in the interest of communicating its position to the defendant and the Court in a timely manner, hereby files this motion in advance of the restitution hearing to be set. Based on the claims received to date, the government requests, subject to the addition of late-coming claims, restitution in this matter in the amount of $5,564,848.91. The breakdown is as follows:

| **Recipient** | **Amount** |
|---|---|
| Medicare | $818,694.81 |
| TennCare | $4,743,305.86 |
| Sealed Patient Claims | $2,848.24 |
| **Total** | $5,564,848.91 |

The offenses of conviction that drive restitution in this case are the healthcare fraud violations at Counts 38, 40-41, and 44-46, all violations of 18 U.S.C. § 1347. Restitution is mandatory for identifiable victims who have suffered pecuniary loss pursuant to 18 U.S.C. §§ 3363A(a)(1), (c)(1)(A)(ii) and (c)(1)(B). “In the case of an offense that involves as an element a scheme,” a victim is “any person directly harmed by the defendant’s criminal conduct in the course of the scheme.” 18 U.S.C. § 3663A(a)(2). The government bears the burden of establishing the amount of loss sustained by a victim as a result of the offense by preponderance of the evidence. 18 U.S.C. § 3664(e).

Medicare and TennCare suffered direct pecuniary harm as a result of the

defendant's conduct in Counts 38, 40-41, and 44-46. In Counts 38, 40-41, and 44-45, the defendant was found guilty of healthcare fraud tied to certain dates of service. In Count 46, the defendant was found guilty of a healthcare fraud scheme tied to false attestations in claims for reimbursement for hysteroscopy services from September of 2019 to April of 2024. Based on this broader date range, restitution for Count 46 subsumes restitution derived from the other counts of conviction.

**A. Medicare**

Evidence at trial established that during the Count 46 time frame, all hysteroscopies, save for those new from supplier packages, were performed with adulterated hysteroscopes. This was inconsistent with the defendant's attestations to Medicare and TennCare during that time. The government anticipates establishing at the restitution hearing that pursuant to 42 C.F.R. § 405.207(a), Medicare would not have paid hysteroscopy claims performed with adulterated devices. Nor would Medicare have paid certain attendant codes for "services furnished in preparation for the use of a noncovered device, [or for] services furnished contemporaneously with and necessary to the use of a noncovered device." *Id*. The government contends that in addition to the hysteroscopy codes themselves, the attendant codes that would not have been paid by Medicare are those for pelvic/uterine imaging; pap smear collection; urine, pregnancy, and lab testing, and evaluation and management (E&M).

As noted during the sentencing hearing, the government has credited the defendant with 200 devices in supplier packaging during the Count 46 time frame. The government has factored this credited number of hysteroscope units into its calculations

for the proposed restitution as to Medicare and TennCare. For Medicare, the government reduced its request for restitution by the product of 32[1] credited devices multiplied by the per-hysteroscopy average cost for Medicare including attendant codes. Based on this general framework, at the hearing, the government anticipates establishing through the testimony of Dan Coney and based on the evidence in the case, the pecuniary losses to Medicare directly related to the defendants conduct in Count 46 were $818,694.81.

**B. TennCare**

While 42 C.F.R. § 405.207(a) does not apply to TennCare on its face, statutes and regulations in Tennessee law have comparable provisions. Moreover, service contracts with the TennCare Managed Care Organizations (MCOs) have adopted all applicable Medicare rules, regulations, and CMS instructions. Therefore, as to TennCare, the government proposes the same framework for calculating restitution tied to Count 46 conduct as proposed for Medicare.

TennCare does not cover services or procedures using a "device that lacks FDA approval except when medically necessary as defined by TennCare." Tenn. Comp. R. & Regs. 1200-13-14-.10(1)(f)(1). The testimony at trial established that the devices used were not approved by the FDA because they were adulterated. Nor was there a basis to consider the use of adulterated devices as medically necessary. *See generally* T.C.A. § 71-5-144. Moreover, each of the MCO contracts signed by defendant that covered the

1 The ratio of TennCare to Medicare procedures was 84% TennCare to 16% Medicare; therefore, of the 200 given units, the government has assigned 32 units as Medicare units.

relevant billing in this case adopted 42 C.F.R. § 422.504(i)(4)(v), which requires that "[a]ll contracts or written arrangements must specify that the related entity, contractor, or subcontractor must comply with all applicable Medicare laws, regulations, and CMS instructions."[2] As with Medicare, the government has applied the credited number of hysteroscope units into its calculations for TennCare by reducing its request for restitution to TennCare by the product of 168[3] credited devices multiplied by the per-hysteroscopy average cost for TennCare including attendant codes. At the restitution hearing, the government anticipates establishing through the testimony of Dan Coney and based on the evidence in the case, that the pecuniary losses to TennCare directly related to the defendant's conduct in Count 46 were $4,743,305.86.

**C. Sealed Patient Claims**

As to individual patient claims, the government has reviewed all claims received to date. At this time, only two claims appear to meet the criteria set out by the Mandatory Victims Restitution Act (MVRA). The first claim, submitted to the Court as Sealed Exhibit A, is for $528.24 in insurance copays tied to hysteroscopy and attendant procedures performed during the Count 46 timeframe. Had this victim known Poplar Avenue Clinic was using adulterated hysteroscopes, she would not have consented to any part of the

---

2 Subsection 504 applies to Medicare Advantage Organizations (i.e., Medicare Part C). Medicare Part C was not at issue in this case; however, the TennCare MCOs expressly adopted this provision into their contracts and defendant signed contracts adopting this provision as it applied to his TennCare billing.

3 The ratio of TennCare to Medicare procedures was 84% TennCare to 16% Medicare; therefore, of the 200 given units, the government has assigned 168 units as TennCare units.

visits. As to the second claim, submitted to the Court as Sealed Exhibit B, this victim was a hysteroscopy patient during the Count 46 timeframe and suffered emotionally from the possibility of exposure to unsanitary devices. As a result, she spent $2,320 on counseling. The two claims combine for $2,848.24. The government notes that the Court set a claims cutoff date of September 25, 2026. RE-420, Minutes. For this reason, the government anticipates that more requests may be received that qualify for restitution under the MVRA. The government will address these additional claims fully at the restitution hearing to be set.

**CONCLUSION**

Wherefore, the United States respectfully requests that the Court set restitution in this case for Medicare in the amount of $818,694.81, for TennCare in the amount of $4,743,305.86, and for individual patients to be identified at the restitution hearing in amounts to be determined at that time.

Respectfully submitted,

D. MICHAEL DUNAVANT
United States Attorney

BY: s/ *Scott P. Smith*
Scott P. Smith (TN 33551)
Assistant U.S. Attorney
167 N. Main, Room 800
Memphis, Tennessee 38103
Telephone: (901) 544-4231

**CERTIFICATE OF CONSULTATION**

I, Scott P. Smith, Assistant United States Attorney for the Western District of Tennessee, hereby certify that I have consulted with counsel for the defendant, Hilary LoCicero, by email on today's date regarding the contents of this motion. Counsel for the defendant opposes this motion.

This 20th day of September, 2026.

s/ *Scott P. Smith*
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I, Scott P. Smith, Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing pleading was filed by electronic means via the court's electronic filing system to counsel for the defendant.

This 20th day of September, 2026.

s/ *Scott P. Smith*
Assistant United States Attorney